UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LESTER LEE,<br><br>    PLAINTIFF<br><br>v.<br><br>BROOKSIDE PARK CONDOMINIUM, INC., METROPOLIS (aka MCM, INC.), RAMMY AZOULAY AND LAMONT SAVOY<br><br>    DEFENDANTS | Case No. 8:24-cv-01205-TJS |

**DEFENDANTS BROOKSIDE PARK CONDOMINIUM, INC., METROPOLIS (aka MCM, INC.), AND RAMMY AZOULAY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendants **BROOKSIDE PARK CONDOMINIUM, INC., METROPOLIS (aka MCM, INC.), AND RAMMY AZOULAY** (collectively "Brookside"), by and through undersigned counsel, hereby respectfully move for summary judgment. This case presents outrageous facts in which Plaintiff sought an accommodation to have two Pit Bulls in his rental condominium. However, plaintiff admittedly kept more than 2 pit bulls in his unit, his pit bull killed another Brookside resident's dog and even bit plaintiff himself, and the dogs barked, urinated and defecated and provided a well-documented health hazard for his Brookside neighbors. Not a single document was supplied supporting the need for two pit bulls, which are outlawed under County ordinances and Brookside's Bylaws. Further, not a single supporting document has been produced in discovery justifying the need for two pit bulls. The dogs posed a clear danger to the Brookside community because of vicious tendencies. They also presented a health hazard because they were consistently not properly cared for and pooped and peed and damaged

neighbor's property. It was reasonable as a matter of law to deny the requested accommodation. Accordingly, this court should enter summary judgment in favor of Brookside.

I. Statement of Facts

Brookside Park Condominiums is about a 500-unit condominium located in Oxon Hill, Maryland, very close to Indian Head Highway. The property is set up as condominiums, but many of the properties are rental units. The Rules and Bylaws of Brookside prohibit pit bulls. Exhibit 1; Affidavit of Robert Haddad. Prince George's County ordinances prohibit pit bulls. Exhibit 2. The Bylaws require that all dogs be registered with Brookside. Exhibit 3. Metropolis and Rammy Azoulay are the management company and its individual manager.

Plaintiff in this case, Sgt. Lester Lee, is an Army Veteran. Sgt. Lee first moved into Brookside in 2019. When he moved in, he already owned 2 pit bulls. (Lee depo., pp 37-38, 54-55.) He did not register the dogs with Brookside. (Lee depo., pp 36, 40).

Shortly thereafter, the unit changed hands and Sgt. Lee moved into 564 Wilson Bridge Drive, Unit D-2. He lived in this unit for six years. (Lee depo., pp 31-32). This is the unit at issue in this case. Sgt. Lee testified that he owned two pit bulls, Moma and Cashmir. (Lee depo., p 35, 37). He did not register them with Brookside (Lee depo., pp 36,40).

In his deposition, Sgt. Lee admitted that over the course of his tenancy, he kept other pit bulls in his unit, which he described as "baby sat" other pit bulls, but he stated that he never had more than 3 pit bulls at one time. (Lee depo., p 40, 43, 67). In other words, he had more than two pit bulls living with him.

On June 12, 2020, Brookside sent a violation letter to Sgt. Lee advising him that his dogs were urinating and defecating on the balcony. Exhibit 4.

On or about June 4, 2021, Sgt. Lee's pit bull attacked another dog in Brookside. (Lee depo., pp 44-48, 67, 68). Sgt. Lee checked on the other dog that night and learned that it had died. Sgt. Lee testified incredibly that he thought the other dog had died of a heart attack. In any event, because of this incident, Sgt. Lee surrendered a pit bull named Ghost to be destroyed by the Alexandria Animal Shelter. Exhibit 5, Lee depo., p 68).

Sgt. Lee testified that one night, he stepped on his dog Cashmir. Cashmir bit him requiring stitches. (Lee depo, pp 97-98).

There is a long series of complaints and emails from the resident who lived below Sgt. Lee, Ms. Latrenda Hicks, about urine and feces emanating from Sgt. Lees balcony and onto her balcony and through her ceiling. Exhibit 6; Affidavit of Robert Haddad. She lives in the unit below Sgt. Lee. Complaints about dog urine from Sgt. Lee's dogs by Ms. Hicks began as early as 6/26/23. Exhibit 6. There are a steady stream of complaints and emails from her including 1/2/24 (poop and cotton her balcony), 2/17/24 (mess on her balcony), 4/6/24 (Caved in ceiling of Bill Sanders), 5/2/24 (pictures of dog poop on her balcony), 5/2/24 horrible smell, 6/10/24 (urine dripping into Hicks' unit), 8/9/24 (Hicks ceiling collapsed had to move to a hotel)5/24/24, 8/1/24, and 8/8/24. Exhibit 6. Ms. Hicks frequently encountered dog urine and poop on her balcony, and her ceiling collapsed when Mr. Lee left the water on for his dogs. There appeared to be urine on her unit ceiling coming from Mr. Lee's unit above.

Mr. Ricky Blanco complained about odor, barking and Sgt. Lee's dogs off leash. Exhibit 7.

On February 21, 2024, Brookside sent a violation letter to Mr. Savoy, the unit owner, about Sgt. Lee about not cleaning up after his pets. Exhibit 8.

On March 7, 2024, Brookside sent a violation letter to Mr. Savoy (the owner of Mr. Lee's unit) indicating that his tenant had pit bulls residing in his unit in violation of the Condominium Declaration and Rules, the Prince George's County Code §3-185.01 and the Rules of Brookside, which specifically provided that "no Pit Bull dogs are permitted on the property at any time." Exhibit 9.

Thereafter, on April 1, 2024, Sgt. Lee wrote the Brookside Board of Directors asking for an accommodation under the Fair Housing Act and the American with Disabilities Act. Exhibit 10.  He claimed to have a psychiatric disability but did not provide any medical reports.  No supporting documentation whatsoever was provided, nor has plaintiff answered discovery in this case and provided any documentation.  Requests for admission were served in August 2024 and never answered.  A motion to compel is pending.

 In his accommodation request, plaintiff contended that he needed a psychiatric service animal which was an eight-year-old Staffordshire Bull Terrier (pit bull) Moma.  He contended that Moma helps minimize his symptoms of fear of crowds and helped his emotional well-being. Additionally, he requested an accommodation for a six-year-old Pit Bull Terrier named Cashmere as an emotional support animal.  He contended that Cashmere could revive him if he blacked out. Sgt. Lee did not provide a single supporting document.  This was critical because in his deposition, Sgt. Lee contended that Moma could anticipate seizures, call 911 on a pad and search his home for intruders and that Cashmere saved his life when he was electrocuted and placed paws on his chest. Lee depo., pp 11-12.   These assertions are hard to believe and completely unsubstantiated.

 In his deposition, Sgt. Lee inconsistently claimed in his complaint and in his deposition that both MaMa and Cashmere were service animals. (Lee depo., pp 35, 38).  However, in his

4

accommodation letter of 4/1/24 to Brookside, he contended says that Cashmere is an emotional support dog.

Mr. Savoy texted a denial of the request for an accommodation to Sgt. Lee.

On July 20, 2024, Brookside wrote to Sgt. Lee denying his request for a special accommodation. Exhibit 11. The reason for the denial was that Sgt. Lee kept more than two pit bulls, that the dogs had strong odors and made too much noise, that his dogs attacked and killed another dog in the community, that his dogs ran unleashed, that there was no rental license for the apartment and he would not allow an inspection of his unit, and the dogs were not registered with Brookside. It was the understanding of the Board that Sgt. Lee had been breeding and selling Pit Bull Terriers out of the apartment for several years. *See* Affidavit of Robert Haddad. Additionally, the Board relied on the fact there had been numerous documented complaints of Sgt. Lee's dogs defecating and urinating in the balcony of his unit and feces and urine is dripping and damaging the units below. *See* attached photographs and Affidavit of Robert Haddad; that there had been numerous complaints about the stench of dog urine as a result of the large number of pets in the small unit; that there had been noise complaints, that Brookside relied on the police record of the dogs randomly attacking and killing another pet in violation of Brookside's Bylaws; and the dogs had also been repeatedly off leash. Additionally, Mr. Lee would not make his unit available for inspection.

Plaintiff filed this lawsuit on or about April 24, 2024.

Thereafter, on or about October 28, 2024, Prince George's Inspector D. McLaurin inspected plaintiff's apartment. He found it unfit for human habitation and ordered plaintiff to leave. There was no furniture in it except a torn-up couch and three caged dogs. Exhibit 12. It did not appear that anyone was living there as there were no beds, no toiletries in the bathroom,

the kitchen appliances were full of mold and there were no beds. McLaurin depo., pp 18, 23. Subsequently, Mr. Lee moved out and he no longer lives in the unit where he lived at the time of the events in this case. *See* Affidavit of Robert Haddad.

II. <u>There is No Genuine Issue of Fact that it was Reasonable to Deny this Request for an Accommodation for Health and Safety Reasons.</u>

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 295 (4th Cir.2010). The Fourth Circuit has affirmed the granting of summary judgment in the context of housing discrimination claims. *Scoggins v. Lees Crossing Homeowners Association*, 718 F.3d 262, 269 (4th Cir. 2013) ("We conclude that the plaintiffs have not presented facts sufficient to create an issue for trial whether Jacob could operate an ATV within Lee's Crossing without creating a danger to the residents of the community."); *Cf. Williams v. Giant Food Inc.*, 370 F.3d 423, 433 (4th Cir.2004) (plaintiff's subjective belief about her abilities, absent sufficient objective corroboration, cannot defeat summary judgment).

The FHA makes it unlawful, *inter alia*, to discriminate in the sale or rental of housing or otherwise to make housing unavailable to a buyer or renter because of that buyer's or renter's handicap or the handicap of certain persons associated with the buyer or renter." *Bryant Woods Inn, Inc. v. Howard Cty., Md*., 124 F.3d 597, 602–03 (4th Cir. 1997) (citing 42 U.S.C. §§ 3601, 3604(f)). The statute requires an accommodation for covered persons if the accommodation "is (1) reasonable and (2) necessary (3) to afford handicapped persons equal opportunity to use and enjoy housing." Id. at 603. A reasonable accommodation does not require "changes, adjustments, or modifications to existing programs that would be substantial, or that would constitute fundamental alterations in the nature of the program." *Id*. at 604.

6

The accommodation must provide "direct amelioration of a disability's effect." *Id*. FHAA forbids discrimination against any person because of a handicap or disability in the provision of services in connection with a dwelling. 42 USC §3601-3631. The FHAA defines "discrimination" in relevant part as "a refusal to make reasonable accommodations in rules, polices, practices, or services, when such accommodations may be necessary to afford such person equivalent opportunity to use and enjoy a dwelling. 46 USC §3604(f)(3)(B).

In determining whether a proposed accommodation is reasonable under the FHAA, the court considers among other things the extent to which the accommodation would undermine legitimate purposes and effects of existing regulations and the benefits of the accommodation were provided to the Plaintiff.

In *Scroggins, supra*, plaintiff sought an accommodation from a homeowner's association so that their 22-year old wheelchair-bound son could use an ATV in the community, even though community rules prohibited the use of an ATC. The court stated as follows:

> In enacting the FHAA, Congress made clear that the health and safety of other persons are relevant factors in determining whether a person or entity violated the FHAA. See 42 U.S.C. § 3604(f)(9) ("Nothing in this subsection requires that a dwelling be made available to an individual whose tenancy would constitute a direct threat to the health or safety of other individuals.") (emphasis added). We join other courts that have recognized this principle, and hold that the potential for personal injury is a relevant consideration in examining whether a modification or accommodation request was reasonable. *See Dadian v. Village of Wilmette*, 269 F.3d 831, 840–41 (7th Cir.2001) (analyzing 42 U.S.C. § 3604(f)(9) and observing that a defendant may, in certain circumstances, deny a plaintiff's accommodation request if that request poses a direct threat to safety of others) ; *Howard v. City of Beavercreek*, 108 F.Supp.2d 866, 875 (S.D.Ohio 2000) (holding that defendant was not required by the FHAA to grant plaintiff permission to construct a six foot fence to alleviate the effects of post-traumatic stress disorder, because the fence posed a threat to pedestrian and vehicular traffic), aff'd on other grounds, 276 F.3d 802 (6th Cir.2002); *Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1503–04 (10th Cir.1995) (observing that the FHAA permits "reasonable restrictions on the terms or conditions of housing [to disabled individuals] when justified by public safety concerns," so long as those concerns are not based on "blanket stereotypes" about persons with disabilities).

7

The court noted that without question, the plaintiffs had established that use of an ATV would make it easier for their son to travel on the unpaved roads of Lee's Crossing. Nevertheless, the court reasoned such benefit to plaintiff's son is outweighed substantially by the potential danger that use of the ATV could cause to the residents of the community. The defendants produced overwhelming evidence showing that the use of an ATV as a general matter within Lee's Crossing, and plaintiff's sons use of such a vehicle in particular, present a significant threat to their son's own safety as well as to the safety of the other residents of the community. There was evidence that the ATV did not conform to motor vehicle safety standards, should not be used on streets, that the Virginia Code prohibited their use on streets, and using an ATV is physically demanding.

The present case presents much more egregious and immediate safety risks than those present in *Scroggins*. Unlike in *Scroggins*, the safety and health risks posed by the dogs had already occurred when the request for accommodation was received. Critically, plaintiff's dog had already killed another dog in the neighborhood and had even bitten plaintiff requiring stitches. These aggressive pit bull dogs posed a risk to community.

In addition to the aggressiveness, the dogs posed health hazards to the community by plaintiff's repeated failure to clean up feces and urine from the dogs. Plaintiff admitted that he kept more than two pit bulls in his unit.

Plaintiff contends that the dogs made him feel safer, but this benefit is greatly outweighed by the safety and health risks the dogs posed to Brookside. Plaintiff has not shown how another less aggressive breed of dog could not have benefited him. In fact, plaintiff testified that he has now purchased two bull dogs in lieu of pit bulls (Cashmere died in the summer of 2024). Lee depo., p 49.

In the present case, the presence of two pit bulls violated the condominium governing documents and Prince George's County ordinances, plaintiff admittedly had more than two pit bulls in a two bedroom apartment, and the dogs had exhibited violent tendencies and posed a health and safety risk.

### III. Conclusion

For all of the foregoing reasons, it is respectfully requested that summary judgment be entered in favor of Brookside.

Respectfully submitted,

*/s/Anthony D. Dwyer*
Anthony D. Dwyer (415575)
ECCLESTON & WOLF, P.C.
Baltimore-Washington Law Center
7240 Parkway Drive, 4th Floor
Hanover, MD 21076-1378
(410) 752-7474 (phone)
(410) 752-0611 (fax)
E-mail: dwyer@ewva.com
*Attorney for Defendants Brookside Park Condominium, Inc., Metropolis (aka MCM, Inc.), and Rammy Azoulay*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of March 2025, copies of the foregoing **DEFENDANTS BROOKSIDE PARK CONDOMINIUM, INC., METROPOLIS (aka MCM, INC.), AND RAMMY AZOULAY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** were served by first-class mail, postage prepaid to:

> Richard Bruce Rosenthal, Esq.
> 545 E. Jericho Turnpike
> Huntington Station, NY 11746
> 631.629.8111 (Phone
> richard@thedoglawyer.com
> *Pro Hac Vice*

>                             */s/Anthony D. Dwyer*
>                             Anthony D. Dwyer (415575)