# Rules and Regulations
# Brookside Park Condominium, Inc.

Order: FWSCD39GF
Address: 573 Wilson Bridge Dr Apt C1
Order Date: 12-03-2021
Document not for resale
HomeWiseDocs



## RULES AND REGULATIONS

### PURPOSE

This edition of The Brookside Park Condominiums, Inc., Rules and Regulations is effective February 1, 2004, and replaces/supersedes Rules and Regulations, Effective March 6, 1987, and Parking Rules and Regulations published August 5, 1991 and Rules and Regulations published September 1, 1992. This stated Purpose and the following stated policy regarding Enforcemnt, Fines and Reporting Violations Of Condominium Rules is part of the Condomninium's Rules and Regulations.

Rules and Regulations published in this document were drafted and approved with the health, safety and property values of owners and tenants considered.

Each rule was adopted under the provisions of the Maryland Condominium Act, Section 11-111. In addition, they were adopted in accordance with the Brookside Park Condominium, Inc., By-Laws. These Rules and Regulations supplement the By-Laws. Parking Rules and Regulations (contained herein) were coordinated with, and a copy is on file with the Prince George's County Vehicle Audit Agency and the Prince George's County Fire Marshall.

The fines, as stipulated in these Rules and Regulations, shall be applied to any breach of the Master Deed or the By-Laws even if not specifically made a part of these Rules and Regulations.

Unit owners are responsible for the conduct of their tenants, guests and invitees in their unit. Unit owners may be fined and other sanctions imposed for violations of these Rules and Regulations, the By-Laws, Master Deed, Prince George's County Codes, or state laws. Furthermore, all tenants are responsible for the conduct of their guests, occupants, and invitees. All adults, be it unit owner or tenant, are responsible for the conduct of their children. If the children or unit owners or tenants violate these Rules and Regulations, the By-Laws, or the Master Deed, the fines and other sanctions available to the Board of Directors will be imposed on the adults. Adults must supervise their children at all times on the common and limited common areas and in the units at Brookside Park Condominiums.

Each owner who is renting their unit shall have the tenant sign a statement (see Enclosure 1) that the tenant has received a copy of the Master Deed, By-Laws and Rules and Regulations, and a copy of this statement shall be filed with the Brookside Park Condominiums, Inc., office. Each rental lease must be on file with the Brookside Park Condominium Management Office and each lease must include the standard Brookside Park Condominiums, Inc. lease addendum signed by all parties.

## ENFORCEMENT

The Board of Directors has the necessary and legal power and authority to insure compliance with and to enforce the Brookside Park Condominiums, Inc., Master Deed, By-Laws and these Rules and Regulations. The Board of Director's may authorize upon written request, identifying

Order: FWSCD39GF
Address: 573 Wilson Bridge Dr Apt C1
Order Date: 12-03-2021
Document not for resale
HomeWiseDocs

specific hardships, a waiver or variance of designated provisions of these Rules and Regulations, in its sole discretion, on a case-by-case basis.

The Property Manager is authorized to initiate legal action to enforce the Brookside Park Condominiums, Inc., Master Deed, By-Laws and these Rules and Regulations.

The Property Manager shall regularly report to the Board of Directors any and all violations.

The Board of Directors cannot at all times enforce every rule and regulation. Many rule violations are subjective and cannot be independently corroborated by management. The Board of Directors may exercise it's good faith business judgment and decline to enforce violations, especially if the violations are minor or technical or do not adversley affect the enjoyment of the residents to their units.

In the event any Rule or Regulation is found to be void, unenforceable or illegal, the rest of the Rules and Regulations shall still be in effect and enforceable. Violations of these Rules and Regulatins must be reported to be enforced. The failure of the Board of Direcrors to enforce violations will not constitue a waiver of any Rule or Regulation.

The unit owner is responsible for ensuring that their tenant(s) have thorough knowledge of the Master Deed, By-Laws, and Rules and Regulations, and are responsible for the acts of their tenant(s). Unit owners, their tenants and occupants must use and maintain the units and common elements  of the Condomninium in accordance with all applicable public laws, ordinances and regulations.

The By-Laws provide that the Board of Directors has the right to suspend the rights and privileges of all occupants of units for violation of the Master Deed, By-Laws, and Rules and Regulations. The rights and privileges, which may be suspended include, but are not limited to, the cut-off of utility services, loss of parking privileges, loss of the use of the swimming pool or any other penalty determined to be appropriate by the Board of Directors. If the Board of Directors determines that the Master Deed, By-Laws or Rules and Regulations has been violated, it reserves the right to exercise the termination or suspension of rights, privileges or services as may be provided for in the By-Laws, whether or not a fine is imposed.

The unit owner shall be assessed any costs and expenses levied by the Board of Directors for violation of the Master Deed, By-Laws and these Rules and Regulations; and to bring any unit, unit owner or tenant into compliance with these Rules and Regulations.

Further, the unit owner shall be assessed any costs and expenses, including reasonable attorney's fees, incurred by the Corporation to enforce compliance with these Rules and Regulations, and to collect costs, expenses or fees assessed by the Board of Directors. This assessment shall constitute a lien against the unit if unpaid within thirty (30) days after demand.

Order: FWSCD39GF
Address: 573 Wilson Bridge Dr Apt C1
Order Date: 12-03-2021
Document not for resale
HomeWiseDocs

## FINES

The Board of Directors may levy a fine for each occurrence of a violation of the Master Deed, By-Laws, or Rules and Regulations. Unless otherwise provided for in these Rules and Regulations, the amount of the fine shall be a maximum of $2,000.00 per violation, plus any costs incurred by the Association due to the breach of these rules and regulations. If the violation is continuing in nature, the fine may be imposed as a flat fee or may be established as a per diem fine of up to $100.00 per day until the owner cures the violation.

## REPORTING VIOLATIONS OF CONDOMINIUM RULES

Management shall keep a record of all reported violations of rules and regulations. Any resident may report an initial violation of condominium rules at any time, in writing. Upon doing so, you must furnish your name, address and telephone number. All violations reported must be in writing. Your name will not be used in initially notifying the offending party of their violation of the rules, but will be considered confidential by Management. It is the responsibility of Management to provide a written response within ten (10) working days. The written response may either be a communication to the party committing the alleged violation to cease and desist from the violatin or to the complaining party explaining that the complaint does not allege a violation that the Board of Directors can remedy. Failure by Management to timely respond to a complaint will not constitute a waiver by the Board of Directors of it's right to remedy a violation of the Condominium's Declaration, By-laws or Rules and Regulations. Members may request in writing that the Board of Directors review the response by Management to an alleged rule violation. The Board of Directors may in it's discretion, but is not required, to review the response by management. It is reasonable to assume that should an alleged violator be summoned to a condominium hearing, the violator would be able to meet and respond to those persons accusing him or her of the violation. For this reason, any complainant who reports a violation, must be able to attend a hearing in the event the violation continues and the Board of Directors calls for a hearing to impose penalties or fines under the Maryland Condominium Act.

Order: FWSCD39GF
Address: 573 Wilson Bridge Dr Apt C1
Order Date: 12-03-2021
Document not for resale
HomeWiseDocs

## TABLE OF CONTENTS

| Section | Paragraph | Contents | Page |
|---|---|---|---|
| I | | **GENERAL** | **5** |
| | 1. | Unit Leases | 5 |
| | 2. | Disturbing Noises | 5 |
| | 3. | Minimum Carpeting Requirements | 6 |
| | 4. | Trash and Garbage | 6 |
| | 5. | Use of Patios and Balconies | 6 |
| | 6. | Public Halls and Entrance Foyers | 7 |
| | 7. | Windows | 8 |
| | 8. | Glazing & Replacement of Windows | 8 |
| | 9. | Packing Boxes, Crates and Moving Trucks | 8 |
| | 10. | Play Areas | 9 |
| | 11. | Pets | 9 |
| | 12. | Washing Machines and Dryers | 10 |
| | 13. | Congregating | 10 |
| | 14. | Curfew | 11 |
| | 15. | Radios in Common Areas | 11 |
| | 16. | Car Washing | 11 |
| | 17. | Vehicle Maintenance | 12 |
| | 18. | Signs and Business Solicitation | 12 |
| | 19. | Mailboxes | 13 |
| | 20. | Use of Storage Areas | 13 |
| | 21. | Damage to Common Areas | 13 |
| | 22. | Occupants in Condo Units | 14 |
| | | **Reporting Violations of Condominium Rules** | **3** |
| II | | **SWIMMING POOL** | **15** |
| III | | **ILLEGAL DRUG USE** | **18** |
| IV | | **PARKING RULES AND REGULATIONS** | **20** |
| | 1. | Purpose | 20 |
| | 2. | Application | 20 |
| | 3. | Parking Permits | 20 |
| | 3.a. | Permanent Parking Permits | 21 |
| | 3.b. | Permanent Visitor's Parking Permit | 22 |
| | 3.c. | Temporary Visitor's Parking Permit | 22 |
| | 3.d. | Non-Resident Owner's Parking Permit | 23 |

Order: FWSCD39GF
Address: 573 Wilson Bridge Dr Apt C1
Order Date: 12-03-2021
Document not for resale
HomeWiseDocs

## TABLE OF CONTENTS

| | | |
|---|---|---|
| 3.e. | Contractor's Parking Permit | 23 |
| 4. | Lost or Stolen Parking Permit | 23 |
| 5. | Acquisition of New, Additional, or Replacement Vehicle | 24 |
| 6. | Military Personnel | 24 |
| 7. | Visitor's Parking | 24 |
| 8. | Handicapped Parking | 25 |
| 9. | Parking and Park Areas, | 25 |
| 10. | Towing | 27 |
| 11. | Abusive or Threatening Behavior | 27 |

**Enclosure 1 -**      **LEASE ADDENDUM**      **28**

Order: FWSCD39GF
Address: 573 Wilson Bridge Dr Apt C1
Order Date: 12-03-2021
Document not for resale
HomeWiseDocs

## SECTION I

### GENERAL

1. UNIT LEASES

All leases shall be in writing and shall state that they are subject to the Declaration, By-laws and Rules and Regulations enacted by the Board of Directors. Units shall be used for residential purposes only. All leases must contain the Brookside Park Condominium, Inc. standard Lease Addendum, signed by the landlord and all of the tenants, attached as "Enclosure 1". The owner of a leased unit is required to submit a copy of the original lease, along with a copy of a Lease Addendum (copy attached as Enclosure 1), approved by the Board of Directors, to the Brookside Park office within 10 days of date of lease. Rental amounts on the original lease may be "blanked out" at the option of the Lessor.

If the required documents are not received in the Brookside Park Office within the 10 days time period stated above, the owner shall be notified by letter to comply and the tenant will not be eligible to receive parking permits, pool passes or any other privileges accorded to residents at Brookside Park Condominiums.

Failure to comply with the letter - Owner shall be assessed a fine of $50 for each 10-day period of non-compliance, until the documents are received and acknowledged by the management office.

2. DISTURBING NOISES

Each owner and tenant is entitled to quiet enjoyment of their property; therefore, no other resident shall make or permit noise in their unit to extend beyond the walls, floors or ceilings of the unit, which will disturb or annoy any other occupant of any other unit in Brookside. Owners with tenants will be equally liable for acts of their tenants, which interfere with the rights, comforts or convenience of other owners and/or tenants. Any and all Prince George's County noise ordinances are incorporated by reference herein and any violation thereof shall constitute a violation of these rules and regulations. Noise violations are subjective and the Board of Directors may not be able to determine if a violation has occurred.

> **1st Offense:** Warning letter from Property Manager.
>
> **2nd and Subsequent Offenses** - Owner (and tenant, if applicable) shall be requested to appear before the Board of Directors.  Fine(s) shall be levied by the Board in accordance with this publication.

3. MINIMUM CARPETING REQUIREMENTS

In order to minimize noise caused by walking, the owner will install necessary carpeting or rugs that will cover a minimum of eighty (80) percent of the total floor space of each room in

**URGENT - PLEASE READ**

The Board of Directors shall levy a fine for each occurrence of a violation of the Master Deed, By-Laws, or Rules and Regulations Unless otherwise provided for in these Rules and Regulations, the amount of the fine shall be a maximum of $2,000.00 per violation, plus any costs incurred by the Association due to the breach of these rules and regulations. If the violation is continuing in nature, the fine may be imposed as a flat fee or may be established as a per diem fine of up to $100.00 per day until the owner cures the violation

the unit except the kitchen and bathroom. Ground floor owners ("A" units) will have the option of installing carpets, rugs or maintaining the hardwood flooring only.

> **1st Offense:** Warning letter from Property Manager.

> **2nd and Subsequent Offenses -** Owner (and tenant, if applicable) shall be requested to appear before the Board of Directors. Fine(s) shall be levied by the Board in accordance with this publication.

4. TRASH AND GARBAGE

All refuse shall be placed in plastic bags, sealed and deposited with care in trash dumpsters located in the outside dumpster enclosures located near every building. Non-perishable items (bulk-trash) which will not fit inside the dumpsters shall be placed in the large dumpster designated for bulk trash at the far south side of the property. Parents shall be responsible for trash not placed in the proper containers by their children. Littering on Brookside Park property will not be tolerated. In addition to the requirements of this rule all residents must comply with any public laws applicable to the handling and disposal of trash, refuse and garbage.

Trash left outside of the enclosures will be investigated by Management or any other designated official and reported for proper action.

> **1st Offense:** Warning letter from Property Manager. Any and all costs for the proper disposal of the trash may be assessed back to the unit owner for each occurrence.

> **2nd and Subsequent Offenses -** Owner (and tenant, if applicable) shall be requested to appear before the Board of Directors. Fines shall be levied by the Board in accordance with this publication.

5. USE OF PATIOS AND BALCONIES

The occupants must keep the patio or balcony clean of debris. Patios or balconies are not to be used as storage areas. Nothing shall be shaken or thrown from the balcony or patio.

Nothing shall be placed upon or suspended from the outside of the balcony railings. The hanging or placing of laundry is not permitted. Patios or balconies may not be used for airing personal items (bedding, clothing, etc.). Patios or balconies may be used for storing patio furniture and plants only. Plant watering must be controlled to avoid water spills. Plants shall not be placed on balcony railings. It is the responsibility of each resident to be considerate and to coordinate with their neighbors when sweeping and washing their balcony. Should you not comply with this, and an accident occurs, each unit owner and/or resident causing the accident shall be held liable. No coverings of any kind shall be affixed to the patios and

**URGENT - PLEASE READ**

The Board of Directors shall levy a fine for each occurrence of a violation of the Master Deed, By-Laws, or Rules and Regulations Unless otherwise provided for in these Rules and Regulations, the amount of the fine shall be a maximum of $2,000.00 per violation, plus any costs incurred by the Association due to the breach of these rules and regulations   If the violation is continuing in nature, the fine may be imposed as a flat fee or may be established as a per diem fine of up to $100.00 per day until the owner cures the violation.

balconies or laid upon the patio or balcony floors. Patio and balcony windows and doors and the window and door systems may not be penetrated.

It is unlawful to store any motor vehicles or any other gasoline-powered equipment on patios, in storage bins, in a unit, or any balcony attached thereto. Failure to comply, upon conviction, could result in a fine of $1,000 and/or six (6) months in jail (Prince George's County Code).

The use of charcoal-burning, other fuel-burning or electric cooking equipment on any balcony or patio is prohibited unless such cooking equipment is at least thirty (30) feet from every part of the building, including contiguous patios and balconies. Failure to comply, upon conviction, could result in a fine of $1,000 and/or six (6) months in jail (Prince George's County Code).

**1st Offense:** Warning letter from Property Manager.

**2nd and Subsequent Offenses:** - Owner (and tenant, if applicable) shall be requested to appear before the Board of Directors. Fines shall be levied by the Board in accordance with this publication.

6. PUBLIC HALLS AND ENTRANCE FOYERS

Bundles, refuse or articles of any description shall not be left in the foyers, stairwells or hallways. All occupants are responsible for maintaining the foyers. The housekeeping staff will keep glass and doors cleaned. Residents with locks on outside foyer doors must supply the office a key in case of an emergency and are responsible for the maintenance and upkeep (cleanliness) of the foyers that are locked.

**1st Offense:** Warning letter from Property Manager.

**2nd and Subsequent Offenses** - Owner (and tenant, if applicable) shall be requested to appear before the Board of Directors. Fines shall be levied by the Board in accordance with this publication.

7. WINDOWS

No articles shall be shaken from windows. No articles shall be hung or placed on the outside of windows. Sheets, blankets and the like shall not be used as window curtains except on a temporary basis (15 days maximum).

Windows must be covered with white blinds and/or white lined curtains or draperies. This rule provides for an attractive uniform appearance throughout the community. Venetian blinds must be in working order. Broken tapes, cords, crooked slats, etc., must be adjusted or repaired or the entire blind replaced. The window or window system may not be penetrated.

**URGENT - PLEASE READ**

The Board of Directors shall levy a fine for each occurrence of a violation of the Master Deed, By-Laws, or Rules and Regulations. Unless otherwise provided for in these Rules and Regulations, the amount of the fine shall be a maximum of $2,000.00 per violation, plus any costs incurred by the Association due to the breach of these rules and regulations. If the violation is continuing in nature, the fine may be imposed as a flat fee or may be established as a per diem fine of up to $100.00 per day until the owner cures the violation.

**1st Offense:** Warning letter from Property Manager.

**2nd and Subsequent Offenses -** Owner (and tenant, if applicable) shall be requested to appear before the Board of Directors. Fines shall be levied by the Board in accordance with this publication.

8.  GLAZING AND REPLACEMENT OF WINDOWS

Broken glass in any window or door will be immediately replaced at the owner's expense. No patched or broken glass shall be permitted. No plywood or other wood covering shall be permitted. Also, discoloration of glass or use of colored glass is not permitted in windows or doors.

**1st Offense:** Warning letter from Property Manager.

**2nd and Subsequent Offenses -** Owner (and tenant, if applicable) shall be requested to appear before the Board of Directors. Fines shall be levied by the Board in accordance with this publication.

9.  PACKING BOXES AND CRATES AND MOVING TRUCKS

Occupants moving into or away from Brookside shall be responsible for the removal from the premises of furniture, packing crates, barrels, boxes or debris connected with the move. Moving vans and/or trucks shall not be driven or parked on grassy areas or on sidewalks or curbs.

**Each Violation:** The owner of the unit will be charged the cost to repair any damage to common elements, including, but not limited to, sidewalks, curbs, grass areas, drainage pipes, etc. In addition, the owner will be charged the cost of disposing of any moving boxes, furniture or other debris left by any tenant moving into or out of the property.

10. PLAY AREAS

Resident children and guests are permitted to play only in designated playground areas. Playtime is permitted from dawn until dusk. No one shall play nor congregate in stairwells, foyers, hallways, basements, streets, parking areas, laundry and storage areas or entrances to buildings.

**1st Offense:** Warning letter from Property Manager.

**2nd and Subsequent Offenses -** Owner (and tenant, if applicable) shall be requested to appear before the Board of Directors. Fines shall be levied by the Board in accordance with this publication.

**URGENT - PLEASE READ**

The Board of Directors shall levy a fine for each occurrence of a violation of the Master Deed, By-Laws, or Rules and Regulations. Unless otherwise provided for in these Rules and Regulations, the amount of the fine shall be a maximum of $2,000.00 per violation, plus any costs incurred by the Association due to the breach of these rules and regulations. If the violation is continuing in nature, the fine may be imposed as a flat fee or may be established as a per diem fine of up to $100.00 per day until the owner cures the violation.

11. <u>PETS</u>

Pets shall not be permitted upon the condominium common areas unless accompanied by a responsible adult owner of the animal using a "pooper scooper" to deposit animal feces into a plastic bag for disposal with the trash and garbage. Pets must be carried or on a leash at all times while on common areas. No more than <u>ONE (1)</u> cat and or <u>ONE (1)</u> dog may be maintained within a unit.

Any member who keeps or maintains any pet upon any portion of the condominium project shall be deemed to have indemnified and agreed to hold the Corporation, each of its members and the Managing Agent free and harmless from any loss, claim or liability of any kind or character whatsoever arising by reason of keeping or maintaining such pet within the condominium property.

The owners are responsible for complying with all existing Maryland and Prince George's County laws, statutes and regulations regarding the keeping of domestic pets. All pets shall be registered with the Association and shall otherwise be registered and inoculated as required by law.

No pet shall be chained or tied to a stake, tree, or other similar item. No pet shall be allowed on balconies unattended at any time.

No pit bull dogs are permitted on the property at any time. Any owner or tenant found to be keeping a pit bull dog in their unit or on the common property will be considered in violation of these rules and regulations and will be reported to the Prince George's County Police for enforcement and removal of the dog.

<u>**Pets running loose**</u>:     Prince George's County Animal Control will be notified immediately, and requested to take the pet into custody.

<u>**Other Offenses**</u>:

> **1st Offense:** Warning letter from Property Manager.

> **2nd and Subsequent Offenses** - Owner (and tenant, if applicable) shall be requested to appear before the Board of Directors. Fines shall be levied by the Board in accordance with this publication.

**URGENT - PLEASE READ**

The Board of Directors shall levy a fine for each occurrence of a violation of the Master Deed, By-Laws, or Rules and Regulations. Unless otherwise provided for in these Rules and Regulations, the amount of the fine shall be a maximum of $2,000.00 per violation, plus any costs incurred by the Association due to the breach of these rules and regulations. If the violation is continuing in nature, the fine may be imposed as a flat fee or may be established as a per diem fine of up to $100.00 per day until the owner cures the violation.

Page 10 of 31

12.  WASHING MACHINES AND DRYERS

For your convenience, washing machines and dryers are provided in the laundry rooms by Management. No privately owned machines are permitted in the buildings. The laundry rooms are open for use 7 days a week. Operating times are from 8 A.M. to 10 P.M. The laundry rooms shall not be used except during these hours, as you will disturb the rest of the residents. Doors are to be kept locked.  Each resident has been issued a laundry room access card that will enable them to use the facility during the posted times.  This card also serves as the payment method to use the washing machines and dryers. Additional cards may be purchased at the on-site maintenance/management office.   Each owner and tenant is responsible for these access cards.  Any vandalism or rules violations reported with the use of these cards will be charged to the owner of the unit for which the card is assigned.

**1st Offense:** Warning letter from Property Manager.

**2nd and Subsequent Offenses -** Owner (and tenant, if applicable) shall be requested to appear before the Board of Directors. Fines shall be levied by the Board in accordance with this publication.

13.  CONGREGATING

Congregating, loitering, or "hanging around" Brookside Park is not allowed. Sidewalks, stairwells, pool areas and the bus stop will be kept clear at all times with the exception of the waiting period for a bus (school or commercial) or car pool.  No child shall be left unattended when waiting for a school bus or anywhere on the property, if the child is under eight(8) years of age.  Children under the age of eight(8) must be attended by a responsible person who is at least 16 years of for the safety of the children.  No person shall interfere with the right of ingress and egress by residents and their guests over the Condominium's common areas.

**1st Offense:** Warning letter from Property Manager.

**2nd and Subsequent Offenses -** Owner (and tenant, if applicable) shall be requested to appear before the Board of Directors. Fines shall be levied by the Board in accordance with this publication.

14. CURFEW

Children under 17 years of age shall be accompanied by an adult if outside and on the common areas during a period ending 5:00 A.M. and beginnning after 11:59 P.M. on Friday and Saturday nights and 10:00 P.M. on all other nights.  Security (off-duty Prince George's County police) will challenge young persons for identification, and if found to be under 18 years of age, they will be considered to be in violation of this rule.  Security will enforce the Prince George's County Curfew Law and the following actions shall be taken.

**1st Offense:** Warning letter from Property Manager.

**URGENT - PLEASE READ**

The Board of Directors shall levy a fine for each occurrence of a violation of the Master Deed, By-Laws, or Rules and Regulations. Unless otherwise provided for in these Rules and Regulations, the amount of the fine shall be a maximum of $2,000.00 per violation, plus any costs incurred by the Association due to the breach of these rules and regulations.  If the violation is continuing in nature, the fine may be imposed as a flat fee or may be established as a per diem fine of up to $100.00 per day until the owner cures the violation.

**2nd and Subsequent Offenses -** Owner (and tenant, if applicable) shall be requested to appear before the Board of Directors. Fines shall be levied by the Board in accordance with this publication.

15. <u>RADIOS IN COMMON AREAS</u>

Hand-held or portable radios, tape and disc players are allowed to be played on the Common Elements only if headphones are used. Vehicle radios may be played if the noise level is contained within the vehicle.

**1st Offense:** Warning letter from Property Manager.

**2nd and Subsequent Offenses -** Owner (and tenant, if applicable) shall be requested to appear before the Board of Directors. Fines shall be levied by the Board in accordance with this publication.

16. <u>CAR WASHING</u>

The washing of cars on Brookside property is strictly prohibited. This includes using buckets or other means to transport water, soap or other chemicals from the building to the vehicle.

**1st Offense:** Warning letter from Property Manager.

**2nd and Subsequent Offenses -** Owner (and tenant, if applicable) shall be requested to appear before the Board of Directors. Fines shall be levied by the Board in accordance with this publication.

17. <u>VEHICLE MAINTENANCE</u>

No vehicle repairs or extraordinary maintenance is permitted on Brookside premises. Also, changing oil is strictly prohibited. No vehicle shall be permitted to remain on jack stands; blocks or other devices while not attended and no vehicle may remain inoperable over night for any reason. The following types of maintenance work are permissible:

|     |                            |
|-----|----------------------------|
| a.  | Changing lights            |
| b.  | Changing flat tires        |
| c.  | Changing belts             |
| d.  | Changing air filters       |
| e.  | Checking oil and/or water levels |
| f.  | Adding coolant fluid       |

**URGENT - PLEASE READ**

The Board of Directors shall levy a fine for each occurrence of a violation of the Master Deed, By-Laws, or Rules and Regulations. Unless otherwise provided for in these Rules and Regulations, the amount of the fine shall be a maximum of $2,000.00 per violation, plus any costs incurred by the Association due to the breach of these rules and regulations. If the violation is continuing in nature, the fine may be imposed as a flat fee or may be established as a per diem fine of up to $100.00 per day until the owner cures the violation.

**1st Offense:** Warning letter from Property Manager. If there is any damage to pavement or other common property, any and all costs required to repair or replace the damaged elements will be charged to the unit owner responsible.

**2nd and Subsequent Offenses** - Owner (and tenant, if applicable) shall be requested to appear before the Board of Directors. Fines shall be levied by the Board in accordance with this publication.

18. SIGNS AND BUSINESS SOLICITATION

No signs of any description may be displayed, with the exception of Article X, Section 2(F) of the Condominium By-Laws. Residents are prohibited from placing signs of any description, with the exception of Article X, Section 2(F) of the Condominium By-Laws.

**1st Offense:** Warning letter from Property Manager.

**2nd and Subsequent Offenses** - Owner (and tenant, if applicable) shall be requested to appear before the Board of Directors. Fines shall be levied by the Board in accordance with this publication.

There will be no flyers, posters or such materials allowed on the Common Elements soliciting business of any kind. Vendors (on foot or in vehicles), and door-to-door solicitation are prohibited, and individuals conducting such solicitation may be charged with trespassing. Owners or renters who observe persons conducting door-to-door solicitation are urged to call the Brookside office (301-567-5000) and furnish a description of the individual(s) to the Brookside Park Office staff. On the weekends, when the office is closed, owners and renters are urged to contact the Prince George's County Police to report trespassers or leave the information on the Brookside Park Office answering machine.

19. MAILBOXES

It is the owner's responsibility to place nametags in the proper slots in the mailbox doors. There will be no writing of names with pencil or markers on or around the mailbox doors. By regulations, the United-States Post Office is forbidden to leave mail in an unidentified mailbox or in one that is broken. Arrangements must be made by the resident to repair the box before the postman will once again deposit mail in it.

In the event that the condominium makes repairs to mailboxes, the cost will be assessed to the unit, along with any fines that the Board of Directors determines to be appropriate.

20. USE OF STORAGE AREAS

The Condominium's common elements contain storage areas that are made available purely as a gratuitous accommodation, without charge, to the unit owners. The Condominium will not be liable for damage to items maintained in the storage areas. Unit owners are advised not to

**URGENT - PLEASE READ**

The Board of Directors shall levy a fine for each occurrence of a violation of the Master Deed, By-Laws, or Rules and Regulations. Unless otherwise provided for in these Rules and Regulations, the amount of the fine shall be a maximum of $2,000.00 per violation, plus any costs incurred by the Association due to the breach of these rules and regulations. If the violation is continuing in nature, the fine may be imposed as a flat fee or may be established as a per diem fine of up to $100.00 per day until the owner cures the violation.

maintain any items of value in the storage areas. The Condominium will not provide any specific services designed for security of the storage areas or keep these areas protected from any casualty loss such as theft, water or fire damage. The storage areas must be kept clean and free of obstruction. All storage items shall be kept totally within the storage bin with no protrusions. No items shall be stored outside of the bin. All bins shall be marked with the occupant's unit number or the contents can be declared abandoned and cleared by Management. No more than one bin per unit is to be occupied.

County fire regulations limit the use of the storage bins to trunks, suitcases and boxes. This regulation is STRICTLY enforced by Management and by County Authorities. Management is not responsible for loss or damage of articles stored in storage lockers. Under no circumstances is the storage unit to be used for old newspapers, rags, gasoline engines, mechanical parts or combustible materials. All items must be stored in compliance with all County, State or Federal life safety codes and fire safety codes.

## 21. DAMAGE TO COMMON AREAS

No owner, tenant, guest, children or pets shall damage, deface or litter Brookside's buildings, grounds, trees, shrubs, parking areas, hallways, stairs, laundry and storage rooms, foyers or other common areas or equipment. The unit owner will be responsible for all damage to common areas.

> **1st and Subsequent Offenses:** - Owner (and tenant, if applicable) will be charged the full cost of repairs or renovations required to correct the damage and shall be requested to appear before the Board of Directors. Fines shall be levied by the Board in accordance with this publication in addition to the cost of repairs.

## 22. OCCUPANTS IN CONDO UNITS

The number of occupants per condominium unit shall be consistent with County Codes and State regulations. One person for the first 150 square feet and 100 square feet per person thereafter. This equates to 2 people maximum per one bedroom, 4 people maximum per two (2) bedroom and 6 people maximum per three (3) bedroom. These standards are subject to change by the Prince George's County Government.

> Violation: Appropriate County Authority will be notified for enforcement of Prince George's County Code. The Board of Director's may requested that the owner and tenants, if applicable appear before the Board of Directors of a hearing. Fines shall be levied by the Board in accordance with this publication.

**URGENT - PLEASE READ**

The Board of Directors shall levy a fine for each occurrence of a violation of the Master Deed, By-Laws, or Rules and Regulations. Unless otherwise provided for in these Rules and Regulations, the amount of the fine shall be a maximum of $2,000.00 per violation, plus any costs incurred by the Association due to the breach of these rules and regulations. If the violation is continuing in nature, the fine may be imposed as a flat fee or may be established as a per diem fine of up to $100.00 per day until the owner cures the violation.

Page 14 of 31

## SECTION II

## SWIMMING POOL

### Rules and Regulations

The following Rules and Regulations are for the protection and benefit of all. Failure to comply with these rules shall be considered sufficient cause for any action deemed necessary by management, including exclusion from the pool.

If any unit owner or resident of Brookside Park believes that his or her suspension of use of the pool facilities was improper, the only remedy is to file a complaint, in writing, with the Board of Directors. The Board will review actions taken by the lifeguard or property manger to suspend or limit persons from using the pool area.

**POOL AREA IS THE AREA ENCLOSED BY THE POOL HOUSE, CHAIN LINK FENCE AND ENTRANCE GATE.    THE DECK IS THE CONCRETE AREA SURROUNDING THE POOL.**

1.  The lifeguards are responsible for the strict enforcement of these rules and regulations. The lifeguard has authorization to temporarily deprive any owner, tenant, or guest of the use of this facility. The Property Manager is to be notified within 24 hours if an individual is deprived of pool use in excess of one day.

    In the event the lifeguards believe that there are conditions in the pool area that constitute a danger and that they cannot ensure the safety of the residents using the pool, the lifeguards are given the authority to close the pool. These conditions may include, but not be limited to the weather, physical defects in the pool area, or violent-prone or inappropriate conduct of the persons using the pool, which the lifeguards cannot control, or any other reason in their discretion.

2.  All persons using the pool or pool area do so at their own risk and sole responsibility. The Council of Unit Owners/Management do not assume responsibility for any accident or injury in connection with such use.

3.  Residents are entitled to two (2) guests per unit. Guests must be accompanied at all times by an adult person carrying a valid resident pass for the unit. Any additional guest passes can be purchased for $3.00 each. These passes are only valid for the date of purchase. All lost passes (resident or guest) can be replaced at a cost of $25 each.

4.  Pool passes and Guest Passes are to be obtained from the Brookside Park Office. No Pool or Guest Passes will be issued at the pool.

5.  Pool and Guest Passes will be surrendered to the lifeguard or gate attendant upon entering the pool area. Passes will be returned to their owner when leaving the pool area. Passes of

**URGENT - PLEASE READ**

The Board of Directors shall levy a fine for each occurrence of a violation of the Master Deed, By-Laws, or Rules and Regulations. Unless otherwise provided for in these Rules and Regulations, the amount of the fine shall be a maximum of $2,000.00 per violation, plus any costs incurred by the Association due to the breach of these rules and regulations.  If the violation is continuing in nature, the fine may be imposed as a flat fee or may be established as a per diem fine of up to $100.00 per day until the owner cures the violation.

those temporarily deprived of the pool facilities shall be picked up at the Brookside Park office.

6.  Owners or renters of an owner agree to save harmless the Council of Unit Owners and/or Management from any and all liabilities and action of whatever nature by any guest or guests of the owner or tenant growing out of the use of the swimming pool or swimming pool area.

7.  Lessees or Owners will be held responsible for all actions of their guest(s).

8.  The cost of any property damage will be charged to the responsible party.

9.  Management will not be responsible for loss or damage to any personal property of any kind.

10. All long hair is to be worn in a ponytail or under a bathing cap.

11. All children 12 and under **MUST** be accompanied by an adult (18 or older) to enter the pool area.

12. Running, pushing, wrestling, ball playing, spitting, spouting of water, horseplay, or any action considered to be unsafe or unhealthy will not be permitted in the pool area, which includes the shower rooms.

13. If a diving board is available, only one person may be on the diving board at a time. Diving is permitted straight away from the board **ONLY**. Dives are to be standing dives **ONLY**. In the interest of the majority, and at the sole discretion of the Head Lifeguard, the diving board may be closed.

14. No inner tubes, water rings, or other artificial floating devices may be used in the main pool, except for instructional purposes with an approved water safety instructor. No toys or other play equipment may be used in the main pool.

15. No pets are allowed within the pool area.

16. No wheeled vehicles are allowed in the pool area with the exception of wheelchairs for handicapped individuals.

17. No street footwear will be permitted on the concrete apron surrounding the pool. No one in street clothes is permitted in the pool area.

18. Admission to the pool area shall be refused to all persons having any infectious disease, sore or inflamed eyes, colds, nasal or ear discharges, or any communicable disease of any kind. Persons with excessive sunburn, open sores, or bandages of any kind  will   not   be permitted in the pool.

**URGENT - PLEASE READ**

The Board of Directors shall levy a fine for each occurrence of a violation of the Master Deed, By-Laws, or Rules and Regulations. Unless otherwise provided for in these Rules and Regulations, the amount of the fine shall be a maximum of $2,000.00 per violation, plus any costs incurred by the Association due to the breach of these rules and regulations. If the violation is continuing in nature, the fine may be imposed as a flat fee or may be established as a per diem fine of up to $100.00 per day until the owner cures the violation.

19. No alcohol will be permitted in the pool area.

20. No food, glass bottles, plates, or facemasks, etc., will be permitted in the pool area.

21. Except in an emergency, only lifeguards will be allowed in the pool office.

22. No radios (except with earphones with volume turned low), televisions or tape/disc players of any type will be permitted on the pool deck. Life Guards may have a radio or tape/disc player in the Lifeguard Office, but the volume will be kept to a level to be heard in the Lifeguard Office only.

23. The pool will be open Seven days a week during the hours 12 Noon to 8 PM.

24. The pool may be closed at any time due to either mechanical breakdown or other operational difficulties, and at the sole discretion of the Head Lifeguard.

25. The pool may be closed due to weather, at the discretion of the Head Lifeguard.

26. All bathers **MUST SHOWER** before entering the pool.

27. No one over the age of 12 will be allowed to use the Wading Pool, unless supervising a younger child.

All persons use this facility in compliance with all the above rules and regulations. Any person may be barred from the pool or pool area at the discretion of the Head Lifeguard for any violation of these rules and regulations, or for any other reason or reasons, which in his judgment constitutes a hazard to others or to the management.

The Board of Directors/Managing Agent reserves the right to refuse entry or deny pool privileges to anyone at its sole discretion. Furthermore, pool privileges may be revoked for any unit that is more than sixty (60) days delinquent in any payment due the Condominium.

In addition to any other enforcement procedures contained in the pool rules, fines may be levied against units where residents, guests, invitees and children violate these rules.

     **1st Offense:** Warning letter from Property Manager.

     **2nd and Subsequent Offenses** - Owner (and tenant, if applicable) shall be requested to appear before the Board of Directors. Fines shall be levied by the Board in accordance with this publication.

**URGENT - PLEASE READ**

The Board of Directors shall levy a fine for each occurrence of a violation of the Master Deed, By-Laws, or Rules and Regulations. Unless otherwise provided for in these Rules and Regulations, the amount of the fine shall be a maximum of $2,000.00 per violation, plus any costs incurred by the Association due to the breach of these rules and regulations. If the violation is continuing in nature, the fine may be imposed as a flat fee or may be established as a per diem fine of up to $100.00 per day until the owner cures the violation.

## Section III

## ILLEGAL DRUG USE

Article X, Section 2, the By-Laws, provides that:

> "(a) No noxious or offensive trade or activity shall be carried on within the project (the condominium) or within any condominium unit situated thereon, nor shall any be done therein or thereon which may be or become an annoyance to the neighborhood or the other owners."

The Board of Directors has determined that the use of controlled dangerous substances as defined in the Maryland Criminal Code in the common areas, limited common areas or in units, constitutes a noxious and offensive activity and an annoyance to the neighborhood and other owners. The violation of the By-Laws by any unit owner, guest, invitees or any group of persons to possess, administer, store or conceal a controlled dangerous substance or controlled paraphernalia as defined in the Maryland Criminal Code violates Article X, Section 2(d) of the By-Laws. Controlled dangerous substances include, but are not limited to cocaine, marijuana and heroin. Controlled dangerous paraphernalia includes, but is not limited to all equipment, products and materials of any kind which are used, intended for use, or designed for use, in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, of otherwise introducing into the human body a controlled dangerous substance. Upon written request, the Brookside Park Office will provide copies of the above-cited sections of the Maryland Criminal Codes to any unit owner or tenant.

| | |
|---|---|
| **First offense** | **$1,000 fine,** |
| **Second and all subsequent offenses** | **$2,000 fine per offense** |

In addition to the fines to be imposed, the Board of Directors reserves the right to seek any other remedy provided in law or in equity, including, but not limited to bringing an action to abate a nuisance pursuant to Maryland Real Property Article, Section 14-120. The Board of Directors will refer complaints of violations of the Maryland illegal drug laws to the Prince George's County Police and other appropriate authorities. The parents of minors involved in use, possession, or distribution of controlled dangerous substances or controlled dangerous paraphernalia, will be referred to the appropriate juvenile authorities.

The Board of Directors may make a determination that this rule and regulation has been violated based upon the observation of neighbors, management staff, maintenance personal and security Personnel of conduct and activity consistent with-illegal drug use and related drug offenses. In addition, the Board of Directors may consider the reputation of a unit as a place where persons assemble for violating the controlled dangerous substance laws of the State of Maryland to determine that the By-Laws have been violated.

**URGENT - PLEASE READ**

The Board of Directors shall levy a fine for each occurrence of a violation of the Master Deed, By-Laws, or Rules and Regulations. Unless otherwise provided for in these Rules and Regulations, the amount of the fine shall be a maximum of $2,000.00 per violation, plus any costs incurred by the Association due to the breach of these rules and regulations. If the violation is continuing in nature, the fine may be imposed as a flat fee or may be established at a per diem fine of up to $100.00 per day until the owner cures the violation.

In the event the Board of Director's determines that this rule and regulation have been violated, or in the event that any resident is convicted of committing a felony or misdemeanor against any person, property or animal including, but not limited to inhumane activity, the Board of Director's may order the removal of that individual from the property. In the event the owner does not remove the offending individual, or in the event the offending individual is the owner or one of their relatives, the Board of Director's may impose, in addition to the sanctions and fines listed in these rules and regulations, any and all costs for additional Security. This may include the hourly cost of off-duty police officers who may be assigned to watch and monitor all activity related to the offending unit or individuals at times and days to be determined at the sole discretion of the off-duty police officers to insure that the residents and property of Brookside Park are not affected by these offenders.

**URGENT - PLEASE READ**

The Board of Directors shall levy a fine for each occurrence of a violation of the Master Deed, By-Laws, or Rules and Regulations. Unless otherwise provided for in these Rules and Regulations, the amount of the fine shall be a maximum of $2,000.00 per violation, plus any costs incurred by the Association due to the breach of these rules and regulations. If the violation is continuing in nature, the fine may be imposed as a flat fee or may be established as a per diem fine of up to $100.00 per day until the owner cures the violation.

## Section IV

## PARKING RULES AND REGULATIONS

1.    PURPOSE:

It is the purpose of these Parking Rules and Regulations to:

a.    Protect resident (owner/tenant) parking privileges.

b.    Prevent abandoned, wrecked, junk, inoperable and/or unregistered vehicles from taking up limited parking spaces on Brookside Park property.

c.    Prevent the parking of any motor vehicle not registered in the State of Maryland, except as may be referred to hereinafter, from parking upon Brookside Park Condominium property.

d.    Prevent the parking of any motor vehicle not registered with the Brookside Park Condominium, Inc., to a current resident (owner and/or tenant of record) or a guest of a current resident from parking upon Brookside Park Condominium property.

2.    APPLICATION:

These rules and regulations are applicable to all motor vehicles parked or driven on Brookside Park Condominiums, Inc., property. Although motorcycles are not required to display parking permits, the owners are required to comply with the remaining elements of these parking rules and regulations and make sure that they do not operate the motorcycle in such a way as to create a nuisance. No motorcycle may be parked on any patio, balcony, grass area, sidewalk or in any building at any time.

3.    PARKING PERMITS:

Any permit or sticker found to be used by other than the registered permit holder or on any vehicle for which the permit was not assigned will be forfeited and declared null and void with no further warning or notice. These vehicles will be immediately towed and the permit will be confiscated.

Any permit issued to a vehicle other than its intended type due to misrepresentation or false statements on the application or other false documentation will be void and the vehicle subject to immediate towing without further notice.

Delinquent owners will loose parking privileges. Any parking permit or visitor pass will be declared null and void and any vehicle displaying such pass or permit will be immdediately towed and impounded at the sole risk and expense of the vehicle owner if the unit to which the

**URGENT - PLEASE READ**

The Board of Directors shall levy a fine for each occurrence of a violation of the Master Deed, By-Laws, or Rules and Regulations. Unless otherwise provided for in these Rules and Regulations, the amount of the fine shall be a maximum of $2,000.00 per violation, plus any costs incurred by the Association due to the breach of these rules and regulations. If the violation is continuing in nature, the fine may be imposed as a flat fee or may be established as a per diem fine of up to $100.00 per day until the owner cures the violation.

passes were assigned is more than 60 days delinquent in in the payment of any fees, charges or fines assessed against the unit.

All motor vehicles, with the exception of motorcycles, parking on Brookside Park property, except as may be referred to hereinafter, shall display one of the following Parking Permits:

a.  **PERMANENT PARKING PERMIT**: Issued to the actual resident (Owner or tenant) of Brookside Park Condominiums upon presentation of valid Maryland Driver's License and Maryland Vehicle Registration reflecting a Brookside Park address. Renters must present a copy of a current lease, in compliance with the requirements of these Rules and Regulations for the unit in which he/she resides.  A maximum of two  (2) Permanent Parking Permits (one "A" permit and one "B" permit) are available to each unit upon presentation of above documentation. The <u>Permanent Parking Permit</u> shall be displayed in the inside, left, rear passenger window.

    A resident of Brookside Park Condominium who desires to register a vehicle not owned by the resident must present a notarized letter from the owner, containing the following:

        Name of individual authorized to use the vehicle,
        Brookside Park address of the individual authorized to use the vehicle,

        Make of vehicle, Model of vehicle, Year of vehicle,
        Vehicle Identification Number (VIN), and State License Number.
        An authorization for the vehicle to be used by this resident
        A statement as to the reason this vehicle is being used by this resident.

    The Board of Director's reserves the right to review these requests and make a determination on a case-by-case basis on the issuing of permits.

Vehicles displaying an "A" permit will be allowed to park in any marked spaces located on the property with the exception of reserved spaces for handicapped, disabled or elderly individuals with special need, or visitor spaces, when designated for that use.

Vehicles displaying a "B" permit will be allowed to park in any marked spaces located on the property with the exception of spaces reserved for vehicles with "A" permits, reserved spaces for handicapped, disabled or elderly individuals with special need, or visitor spaces, when designated for that use.

The parking spaces will be allocated so that the "A" permit required spaces will be as close to the buildings as possible, allowing one "A" space for each residence in that area.  All remaining spaces will be available for second vehicles displaying an "A" or "B" permit, a permanent visitor pass or a temporary visitor pass.  All visitors, whether using a permanent visitor pass or temporary pass must not park in any "A" permit required spaces.

---

**URGENT - PLEASE READ**

The Board of Directors shall levy a fine for each occurrence of a violation of the Master Deed, By-Laws, or Rules and Regulations. Unless otherwise provided for in these Rules and Regulations, the amount of the fine shall be a maximum of $2,000.00 per violation, plus any costs incurred by the Association due to the breach of these rules and regulations.  If the violation is continuing in nature, the fine may be imposed as a flat fee or may be established as a per diem fine of up to $100.00 per day until the owner cures the violation

Any vehicle that does not have a valid pass, may only park in the designated visitor spaces during the hours when the on-site maintenance/management office is not open. These hours are prominently posted on signs adjacent to the visitor spaces and all visitor spaces will be marked "VISITOR" on the pavement for each of these spaces. Any vehicle parked in the visitor spaces without a pass when the office is open or any vehicle displaying a permit and parking in the visitor spaces will be subject to towing. Visitor spaces are only for transient guests, not residents or long term visitors.

b.   **PERMANENT VISITOR'S PARKING PERMIT**: Issued to the actual resident (owner or tenant) of Brookside Park Condominiums. One Permanent Visitor's Parking Permit shall be issued to each unit. The Permanent Visitor's Parking Permit shall not be used on a vehicle owned by a resident of Brookside Park Condominiums, nor on any vehicle for a period of time exceeding two (2) calendar weeks. The Permanent Visitor's Parking Permit shall be hung on vehicle's rear view mirror at all times that the vehicle is on Brookside Park property. Any resident who is "visiting" or on the property for 30 calendar days, whether or not the days are consecutive, is considered a resident and not eligible for visitor passes.

c.   **TEMPORARY VISITOR'S PARKING PERMIT**: Shall be available to residents of Brookside Park Condominiums for a fee of $2 each from the Brookside Park Condominiums, Inc., office, 500 Wilson Bridge Drive, Oxon Hill, MD, during normal business hours. It shall be valid for twenty-four (24) hour periods, only, and shall be displayed by hanging it on the rear view mirror of the vehicle facing the windshield. The number of Temporary Visitor's Parking Permits issued to any one unit shall not exceed ten (10) for any one day period. To exceed the limitation of ten (10) Visitor's Parking Permits, resident must request, in writing, prior approval of the Board of Directors, with justification.

d.   **NON-RESIDENT OWNER'S PARKING PERMIT**: Issued to non-resident owners of units at Brookside Park Condominiums. One Non-Resident Owner's Parking Permit shall be issued to each non-resident owner regardless of number of units owned. The non-resident owner may instruct the Brookside Park office, in writing, to issue this parking permit to an agent. The Non-Resident Owner's Parking Permit shall be a Permanent Visitor's Parking Permit with "NRO" printed on the front using black marker, or pre-printed with this designation. This permit shall be hung on vehicle's rear view mirror at all times that the vehicle is on Brookside Park property. All vehicles displaying a Non-Resident Owner permit can park in spaces as if it were a "B" type permit as described in paragraph (a) above.

e.   **CONTRACTOR'S PARKING PERMIT**: Issued to contractors performing work on Brookside Park Property either for individual unit residents or for Brookside Park Condominiums, Inc. The Contractor's Parking Permit shall be a Permanent Visitor's Parking Permit with "CONTR" printed on the front using black marker or pre-printed with this designation. This permit shall be hung on vehicle's rear view mirror at all times that the contractor is on Brookside Park property. Individual residents are responsible for notifying the Brookside Park office (301-567-5000) that the contractor is going to be picking up the permit at the office. The contractor shall leave a deposit of $20 when picking up the permit.

---

**URGENT - PLEASE READ**

The Board of Directors shall levy a fine for each occurrence of a violation of the Master Deed, By-Laws, or Rules and Regulations. Unless otherwise provided for in these Rules and Regulations, the amount of the fine shall be a maximum of $2,000.00 per violation, plus any costs incurred by the Association due to the breach of these rules and regulations. If the violation is continuing in nature, the fine may be imposed as a flat fee or may be established as a per diem fine of up to $100.00 per day until the owner cures the violation.

The permit must be returned by the contractor to the Brookside Park office on date and at time that he coordinates with the Brookside Park Staff. If the Contractor's Parking Permit is not returned at time and date specified, the deposit shall be forfeited and the contractor's Parking Permit shall be declared invalid. Contractors may park in spaces, as if it were an "A" type permit between the hours of 7:00am and 6:00pm. Any contractors working after those hours would be required to park in the "B" designated spaces. No contractor permits will be allowed to park overnight without express written permission of the Board of Director's or their Managing Agent.

4.    LOST OR STOLEN PARKING

    a.    Lost parking permit shall be replaced at cost of $50.00. The lost parking permit shall be declared invalid (void), and any vehicle displaying a parking permit with this number shall be subject to immediate towing from Brookside Park property at owner's expense.

    b.    Stolen parking permit shall be replaced on presentation of a copy of the official Prince George's County Police stolen vehicle or stolen item report. There will be no cost for this replacement. The stolen parking permit shall be declared invalid (void), and any vehicle displaying a parking permit with this number shall be subject to immediate towing from Brookside Park property at owner's expense.

5.    ACQUISITION OF NEW, ADDITIONAL, OR REPLACEMENT VEHICLE:

If a resident acquires a new, additional or replacement vehicle, a new parking permit must be applied for in accordance with paragraph 1, above. Pending permanent registration, upon presentation of Temporary Maryland Registration, the Brookside Park Staff shall issue a Temporary visitor's Parking Permit for the acquired vehicle for a period not to exceed 30 days. The Permanent Parking Permit on the vehicle to be replaced shall be declared invalid (void). Any vehicle displaying a parking permit with that number shall be subject to immediate towing from Brookside Park property at owner's expense.

6.    MILITARY PERSONNEL:

Maryland State Laws provide that military personnel on active duty may continue to maintain their vehicle registration and driver's license with their home of record.

Active duty military personnel residing at Brookside Park Condominiums shall be issued parking permits upon presentation of a valid driver's license from home of record, a valid vehicle registration from home of record, and military identification reflecting status as "Active Duty."

7.    VISITOR'S PARKING:

The Board of Directors has designated an area at the south end of Wilson Bridge Drive and some limited number of spaces along the main drive for Wilson Bridge Drive for visitors arriving during non-business office hours. Visitors may park in the identified area during the period 5:00

**URGENT - PLEASE READ**

The Board of Directors shall levy a fine for each occurrence of a violation of the Master Deed, By-Laws, or Rules and Regulations. Unless otherwise provided for in these Rules and Regulations, the amount of the fine shall be a maximum of $2,000.00 per violation, plus any costs incurred by the Association due to the breach of these rules and regulations. If the violation is continuing in nature, the fine may be imposed as a flat fee or may be established as a per diem fine of up to $100.00 per day until the owner cures the violation.

PM to 11:00 AM on weekdays, and 5:00 PM, Friday, to 11:00 AM, Monday, on weekends. This parking area has been designated for the convenience of those visitors that arrive unexpectedly after the Brookside Office has closed and who do not have a parking permit for Brookside Park Condominiums. Vehicles must be removed from this parking area by 11:00 AM, as specified above. The resident who is entertaining the visitor must then obtain a <u>Temporary Visitor's Parking Permit</u>. This parking area is for limited use and the same vehicle shall not be parked in this area for more than one night or one weekend, without an appropriate Brookside Park parking permit. Vehicles owned by a resident of Brookside Park Condominiums must have appropriate Brookside Park Parking Permit. Vehicles parked in the Visitor's Parking area that do not meet the above requirements shall be towed from Brookside Park property at owner's expense.

8.    <u>HANDICAPPED PARKING</u>:

    a.    Requester must submit a copy of a doctor's certificate and/or a copy of the State of Maryland handicapped-parking permit with a cover letter explaining the need to the Board of Directors for their consideration.

    b.    Board of Directors will consider all the information presented and will grant or deny request.

    c.    If request is granted, an agent of the Board of Directors will designate a parking space and will see that it is so marked.

    d.    Requester will be notified of the Board's action.

    e.    Renewal of Handicapped parking spaces must be made in July of each year.

    f.    Parking in parking spaces reserved for Handicapped Individuals shall be towed at the Owner's expense.

    g.    Illegal parking in parking spaces designated for Handicapped Parking shall be towed at the owner's expense and/or referred to the Prince George's County Police for enforcement. The County fine for illegal parking in these spaces is currently $250.

9.    <u>PARKING AND PARK AREAS</u>:

    a.    Unrestricted parking areas are for motorized vehicles (cars, vans, motorcycles and trucks) with less than one (1) ton gross weight only.

    b.    Parking is prohibited in the following areas:
        (1)    Fire lanes-designated by painted curbs and/or signs
        (2)    In front of fire hydrants
        (3)    On sidewalks within complex

<u>**URGENT - PLEASE READ**</u>

The Board of Directors shall levy a fine for each occurrence of a violation of the Master Deed, By-Laws, or Rules and Regulations. Unless otherwise provided for in these Rules and Regulations, the amount of the fine shall be a maximum of $2,000.00 per violation, plus any costs incurred by the Association due to the breach of these rules and regulations. If the violation is continuing in nature, the fine may be imposed as a flat fee or may be established as a per diem fine of up to $100.00 per day until the owner cures the violation.

(4)    On any grass areas within complex
(5)    Balconies and terraces
(6)    Other areas identified with "No Parking" sign or a yellow curb.
(7)    In front of or blocking access to dumpsters

**Vehicles parked in unauthorized areas will be towed from the premises without notice and at the owner's expense.**

c.    Vehicles must have current license plates and be in good operating condition. No junk, wrecked, disabled or abandoned vehicles are allowed to be parked within the complex. Vehicles in violation shall be towed without notice and at the owner's expense.

d.    Boats, Trailers, Campers, Recreational Vehicles, House Trailers, Camping Trailers, and Tractor/Trailers are strictly prohibited from parking on Brookside premises, without the express written permission of the Board of Director's or their Managing Agent. These vehicles shall be towed at the owner's expense. Any resident that owns this type of vehicle may apply for permission to park in areas that will be designated by the Board of Director's on a case-by-case basis. There will only be a limited number of these types of parking spaces available.

e.    Commercial trailers or heavy commercial trucks (vehicles exceeding 3/4 ton capacity or 10,000 pounds gross vehicle weight) are strictly prohibited from parking on Brookside Park property.

f.    Vehicles that are less than ¾ ton capacity or under 10,000 pounds gross vehicular weight, but used for commercial purposes such as vehicles with any signs or lettering on them that advertise a specific company name, location, phone number or slogan (other than a 4-door sedan type taxicab, with prior approval of the Board of Director's), ladder or equipment racks, commercial use tags or trucks designed for commercial use such as large vans with no rear windows, modified pick-up trucks, crew cabs, tandem or dual rear wheel vehicles must obtain a special commercial vehicle parking permit with the prior approval of the Board of Director's and can only park in spaces that will be designated for these vehicles. Any resident that owns this type of vehicle may apply for permission to park in areas that will be designated by the Board of Director's on a case-by-case basis. There will only be a limited number of these types of parking spaces available.

g.    Vehicles shall be parked in designated spaces and shall not be parked in more than one space. A vehicle taking up more then one parking space shall be subject to being towed from Brookside Park property at owner's expense.

**URGENT - PLEASE READ**

The Board of Directors shall levy a fine for each occurrence of a violation of the Master Deed, By-Laws, or Rules and Regulations. Unless otherwise provided for in these Rules and Regulations, the amount of the fine shall be a maximum of $2,000.00 per violation, plus any costs incurred by the Association due to the breach of these rules and regulations. If the violation is continuing in nature, the fine may be imposed as a flat fee or may be established as a per diem fine of up to $100.00 per day until the owner cures the violation.

h.  A safe driving speed, not to exceed fifteen (15) miles per hour, shall be maintained at all times on Brookside premises.

Violators will be ticketed.

i.  Parking is on a first-come, first-served basis.

10.  <u>TOWING</u>:

The Board of Directors, Brookside Park Condominiums, Inc., has contracted with a towing company to enforce the provisions of these rules and regulations. Any vehicle not complying with the provisions of these rules and regulations and identified as being illegally parked or not properly registered shall be towed to an impoundment lot operated by a towing company under agreement negotiated at the discretion of the Brookside Park Board of Directors. It will then be incumbent upon the owner to arrange for the release of an impounded vehicle through payment of such towing and impoundment charges as may be legally assessed by the towing company. This practice is in compliance with Maryland State Law and no liability shall accrue to Brookside Park Condominiums, Inc., the Board of Directors, the Management Agent for Brookside Park or the towing company effecting removal.

Vehicles identified by the Prince George's County Police as being abandoned or junk or as not displaying legal and valid Maryland License Plates may also be towed by the Prince George's County Vehicle Audit Agency to an impoundment lot, at owner's expense.

If your vehicle is not in the parking space where you left it, it is recommended that you contact the Prince George's County Police (Telephone: 301-567-4933 or 911). All vehicles towed by either the Brookside Park contracted towing company or by the Prince George's County Vehicle Audit Agency contracted towing company must be reported to the Prince George's County Police, who will be able to tell you if your vehicle was towed and where it may be claimed.

11.  <u>ABUSIVE OR THREATENING BEHAVIOR</u>:

Any owner, resident or their guests who is abusive to the staff, management, members of the Board of Director's or their committees by use of language, threats, refusal to leave the office when asked or other behavior deemed threatening or inappropriate when enforcement action is taken, will loose the right to park on Brookside Park property.  All permits, stickers and passes issued to that unit will be immediately revoked.  The Owner of the unit must request reinstatement of these privileges in a written request for a hearing before the Board of Director's.

<u>URGENT - PLEASE READ</u>

The Board of Directors shall levy a fine for each occurrence of a violation of the Master Deed, By-Laws, or Rules and Regulations. Unless otherwise provided for in these Rules and Regulations, the amount of the fine shall be a maximum of $2,000.00 per violation, plus any costs incurred by the Association due to the breach of these rules and regulations. If the violation is continuing in nature, the fine may be imposed as a flat fee or may be established as a per diem fine of up to $100.00 per day until the owner cures the violation.

Page 26 of 31

## BROOKSIDE PARK CONDOMINIUM, INC.

### LEASE ADDENDUM

This agreement shall be an addendum to the lease dated _____
between _____ hereafter referred to
as Lessor and _____ hereafter referred to as
Lessee for the premises known as _____ Wilson Bridge Drive, Unit No. _____, Oxon Hill,
Maryland 20745. In the event of any conflict between this addendum and the aforesaid lease, the
terms of this Addendum will control. All of the undersigned parties desire that the Lessee shall at
all times abide by the Master Deed, By-Laws and Rules and Regulations of the Brookside Park
Condominiums, Inc., hereafter referred to as the Condominium and it is their intent that the
Board of Directors of the Condominium shall have full authority to enforce the Condominium
Documents and its rules and regulations. The parties therefore agree as follows:

1.    The Master Deed, By-Laws and Rules and Regulations of the Condominium now and
      hereafter enacted by the Board of Directors, shall be a material part of the lease. The
      Lessor and Lessee shall comply with all of the requirements or these documents.

2.    In the event of a breach by the Lessor or Lessee of any of the documents listed in
      Paragraph 1, above, the Condominium shall have all rights and remedies available under
      law to enforce the requirements of these documents, including but not limited to
      injunctions, assessing monetary fines against the unit in an amount as determined by the
      Board of Directors which may be recorded in the land records of the Prince George's
      County Circuit Court, filing for money damages and filing for eviction in summary
      proceedings. The Board may assess a separate fine for each violation and for each day a
      violation occurs.

3.    Before the Condominium association exercises its rights pursuant to paragraphs A and
      B, below, the Lessor will be given a 15 (fifteen) day notice and an opportunity to appear
      before the Board of Directors to show cause why the Condominium should not exercise
      its powers pursuant to paragraphs A and B, below.  If a Lessor requests a hearing during
      the 15 (fifteen) day notice period, the Board, except in an emergency situation, will take
      no action until after the hearing date. The parties agree that this hearing will be
      conducted pursuant to Real Property Article Section 11-113. The Lessor will have all
      rights afforded by this Section and as amended.

      A.    The Lessor hereby irrevocably grants to the Condominium a Power of Attorney to
            send all notices to the Lessee and Lessor, as the Board of Directors so directs in its
            discretion, that the Lessee has violated the Master Deed, By-Laws and/or Rules
            and Regulations of the Condominium. The Condominium, pursuant to this
            irrevocable Power of Attorney, is further authorized to retain counsel to file for
            eviction in the District Court of Prince George's County pursuant to any notice
            given to the lessee under this Power of Attorney. If the Board

Order: FWSCD39GF
Address: 573 Wilson Bridge Dr Apt C1
Order Date: 12-03-2021
Document not for resale
HomeWiseDocs

of Directors determines that the Lessee(s) has materially violated the Master Deed, the By-Laws, and/or the Rules and Regulations, it may terminate the lease upon a 30-day written notice to the Lessee(s) and process to evict the leesee(s) for breach of lease, pursuant to the terms of the paragraph. The Lessor will reimburse the Condominium all reasonable expenses and attorneys fees incurred to enforce this or any other provisions of this Addendum, the Master Deed, By-Laws or Rules and Regulations. This obligation by the Lessor shall constitute a lien on the subject unit as provided by applicable Maryland Law.

B.  The Lessor grants the Condominium, by its agents and officers, full and irrevocable Power of Attorney to endorse, negotiate and deposit in the Condominium's account, rent checks, money orders or other payments issued by the Lessee, which shall be credited to pay any delinquent condominium fees and/or other delinquent charges due from the Lessor to the Condominium after unsuccessful attempts were made to collect said fees or charges from the Lessor. The Lessor assigns his rights to the rents to pay these arrearages. Any additional monies collected will be remitted to the Lessor. Pursuant to this paragraph, the Condominium may demand payment from the lessee(s) upon 30-day written notice to the Lessor and Lessee(s) that monies are due.

4.  The 15-day notice to the Lessor, pursuant to paragraph 3, shall be mailed certified, return receipt requested to:

_____

_____

_____

5.  If the Condominium issues to the Lessee, notice for eviction, pursuant to paragraph 3.A., above, the Condominium, under its own, is authorized to file as plaintiff in the Prince George's County District Court an action in summary ejectment for breach of lease, tenant holding over, or other appropriate action.

6.  In the event that the Landlord fails to pay all Condominium Fees, Assessments or charges as they become due, and the account is more than 60 days delinquent in any fees or charges, then the managing agent may send a demand letter to the owner with a copy to the tenant. This letter will advise the owner and tenant that there is a delinquency in the condominium fees, charges or assessments that is greater than 60 days old, and all parking passes and permits along with any pool passes, laundry room access cards or other privileges will be suspended after 30 days from the date of this notice. In the event that the delinquency continues for more than 30 days, the managing agent will send a certified letter to the owner and the tenant advising them that the parking privileges and other services will be suspended and the permits will be declared invalid. The tenant's vehicles

Address: 573 Wilson Bridge Dr Apt C1
Order Date: 12-03-2021
Document not for resale
HomeWiseDocs

will be subject to towing after 5 days from the date of the certified letter. In the event that the owner still fails to bring the account current, the Condominium Association, through the managing agent may send a certified letter to the owner and the tenant advising the tenant that all future rental payments are to be paid directly to Brookside Park Condominiums, Inc. until such time as the account is again current and in good standing. The landlord agrees that in the event this action is taken, and the tenant, in good faith is paying the full amount of rent due to Brookside Park Condominiums, Inc., that the landlord will credit these payments to the rental account as if the money was paid directly to the landlord, and the landlord will not take any retaliation or action against the tenant(s).

7.  If any paragraph is determined to be unenforceable, the rest of this addendum shall survive and be in effect between parties.

_____        _____
Date                                       Lessor

_____        _____
Date                                       Lessee

                                               **Brookside Park** Condominiums, Inc.

_____
Date                           By: _____

Additional copies of this Lease Addendum are available from the Brookside Park Office.

Order: FWSCD39GF
Address: 573 Wilson Bridge Dr Apt C1
Order Date: 12-03-2021
Document not for resale
HomeWiseDocs

## POLICY IN REGARDS TO SELF HELP

1.    The unit owners shall maintain the unit and limited common elements appurtenant to the unit in good order and repair and free of debris in accordance with the Condominium's By-Laws.  The unit owners must also comply with any architectural or other standards and policies approved by the Board of Directors that pertains to the exterior of the units.

2.    The Board of Directors may authorize self help to enforce the unit owner's obligations to maintain the unit and the limited common elements appurtenant to the unit and to abate any violation of the Condominium's Declaration, By-Laws and these Rules and Regulations.

3.    Any costs incurred by the Condominium to perform maintenance or repairs to a unit or the limited common elements appurtenant to the unit or to abate a violation of the Declaration, By-Laws or these Rules and Regulations, including but not limited to administrative fees and reasonable attorneys fees, shall be assessed against the unit and the unit owner.  These costs shall be collected in the same manner as unpaid assessments to the extent authorized by the Association's Declaration and By-Laws.

Order: FWSCD39GF
Address: 573 Wilson Bridge Dr Apt C1
Order Date: 12-03-2021
Document not for resale
HomeWiseDocs

## BROOKSIDE PARK CONDOMINIUMS, INC.

### PET REGISTRATION FORM

DATE COMPLETED: _____

RESIDENT'S NAME: _____

ADDRESS: _____

_____

TELEPHONE:  HOME NUMBER: (_____) _____

       WORK NUMBER: (_____) _____

       WORK NUMBER: (_____) _____

EMERGENCY NUMBER:

       CELLULAR- (_____) _____

       CELLULAR- (_____) _____

EMAIL: _____

-----------------------------------------------------------------

| PET(S) NAME | BREED | WEIGHT | AGE | COLOR | DOG/CAT |
|-------------|-------|--------|-----|-------|---------|
| 1._____ | _____ | _____ | ____ | _____ | _____ |
| 2._____ | _____ | _____ | ____ | _____ | _____ |
| 3._____ | _____ | _____ | ____ | _____ | _____ |
| 4._____ | _____ | _____ | ____ | _____ | _____ |
| 5._____ | _____ | _____ | ____ | _____ | _____ |
| 6._____ | _____ | _____ | ____ | _____ | _____ |

PLEASE INCLUDE COPIES OF ALL VACCINATIONS AND LICENSE FORMS FROM YOUR PET'S
VETERINARIAN AND/OR COUNTY ANIMAL CONTROL PERMITS THAT ARE APPLICABLE TO THE
ABOVE PETS.

Order: FWSCD39GF
Address: 573 Wilson Bridge Dr Apt C1
Order Date: 12-03-2021
Document not for resale
HomeWiseDocs

This document is currently either not available or not applicable for this association.

****REMAINDER OF PAGE LEFT INTENTIONALLY BLANK.****

Order: FWSCD39GF
Address: 573 Wilson Bridge Dr Apt C1

BYL

# SECTION III

# BY-LAWS

# FOR

# BROOKSIDE PARK CONDOMINIUM, INC.

## WILSON BRIDGE CONDOMINIUM

### MASTER DEED

THIS MASTER DEED made this 7th day of November, 1972, in Prince Georges County, Maryland, by RAJO, INC., a corporation organized and existing under the laws of the State of Maryland, hereinafter sometimes referred to as the "Grantor", and First Virginia Mortgage and Real Estate Investment Trust, holder of a note secured by a Deed of Trust recorded in Liber 4130 at Folio 701 among the land records of Prince Georges County, Md.

WITNESSETH THAT WHEREAS, the Grantor is the owner, in fee simple, of that certain real property located in Prince Georges County, Maryland, described in Exhibit "A" attached hereto and made a part hereof, and sometimes hereinafter referred to as the "Property"; and

WHEREAS, the Grantor is the owner of the apartment buildings and related improvements now erected on the Property and desires to, and by these presents does hereby, submit the said Property, together with the improvements now erected thereon into a horizontal property regime pursuant to the provisions of The Horizontal Property Act of the State of Maryland (Article 21, Sec. 117A, et seq., of the Annotated Code of Maryland - (1957) for the sale of condominiums, subject to the terms, covenants, restrictions and conditions herein contained; and

WHEREAS, the Grantor has heretofore filed, on the 4th day of December, 1972, in the office of the Clerk of the Circuit Court of Prince Georges County, Maryland, the Master Plat of the Wilson Bridge Condominium prepared by Oyster, Imus and Associates, Inc., Civil Engineers, Land Planners and Land Surveyors, dated November 1, 1972, (hereinafter referred to as the "Master Plat"), which is recorded in Condominium Plat Book No. WWB2 at Plat 12, et seq., and

WHEREAS, First Virginia Mortgage and Real Estate Investment Trust joins herein for the purpose of evidencing its consent hereto.

NOW, THEREFORE, for valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Grantor hereby declares that all of the Property described in Exhibit "A" attached hereto, together with all improvements heretofore constructed thereon, and all appurtenances thereto, shall be held, conveyed, divided or subdivided, leased, rented and occupied, improved, hypothecated or encumbered, subject to the covenants, restrictions, uses, limitations, obligations, easements, equitable servitudes, charges and liens (hereinafter sometimes referred to as "covenants and restrictions") hereinafter set forth, including the provisions of the By-Laws of Wilson Bridge Condominium, Inc., (hereinafter referred to as the "Corporation") attached hereto as Exhibit "B" and incorporated herein, all of which are declared and agreed to be in aid of a plan for the improvement of said property, and the division thereof into condominiums and shall be deemed to run with and bind the land, and shall inure to the benefit of and be enforceable by the Grantor, its successors and assigns, and any person acquiring or owning an interest in said Property and improvements.

FIRST: Definitions. Unless the context shall plainly require otherwise, the following words when used in this Master Deed and/or any and all exhibits hereto shall have the following meanings:

(a) "unit" or "condominium unit" means an enclosed space consisting of one or more rooms occupying all or part of one or more floors in buildings of one or more floors or stories. Each of the units is assigned a number on the Master Plat.

(b) Unit Boundaries shall be as follows:

(i) The lower boundary of each unit shall be the horizontal plane of the underside of the finished flooring of such unit and the upper boundary of each unit shall be the horizontal plane of the top side of the gypsum board or other finish ceiling of such unit.

(ii) Vertical: The vertical boundaries of each unit shall be the vertical planes of the back sides of the gypsum board or other finish walls which separate the unit from another unit or from common elements.

(iii) Mechanical Rooms: The boundaries of each unit include a mechanical room as shown on the Master Plat.

(iv) As Built Boundaries: All boundaries shall be physical, as built boundaries.

(c) "condominium project" means the property subject to the Master Deed.

(d) "condominium" means the ownership of single units in the condominium project with common elements.

(e) "owner" or "co-owner" means any person, corporation, trust or other legal entity, or any legal combination thereof, which owns a condominium unit within the condominium project, provided, however, that any person, corporation, trust or other legal entity, or any combination thereof, which holds such interest solely as security for the payment of a debt or performance of an obligation shall not be an owner.

(f) "council of co-owners" means all of the co-owners as defined above, in association.

(g) "common elements" means both general common elements and limited common elements, as hereinafter defined.

(h) "value" shall mean that value set forth on Exhibit "C" attached hereto.

SECOND: Condominium Property and Description of Condominium Units. The condominium property is as described in Exhibit "A" and the description of the condominium units, including the area description, location and other data necessary for its identification, is as shown on the Master Plat.

THIRD: Common Elements. The common elements shall consist of the entire condominium project except for such portions or parts of the project which are within the boundaries of the units and the common elements shall include, but not be limited to:

(a)  The land on which the buildings within the condominium project are erected;

(b)  Common elements so designated on the Master Plat;

(c)  All foundations, columns, girders, beams, joists, supports and the structural components of all load bearing partitions within any of the units;

(d)  Roofs, halls, corridors, lobbies, stairs, stairways and entrances to and exit from the buildings;

(e)  All streets, curbs, driveways, sidewalks, walks, parking areas, lawn and garden areas, play areas, trees, shrubbery, swimming pool, bath house and office;

(f)  All space devoted to the lodging or use of a superintendent or manager or other person or persons employed in connection with the operation of the condominium project;

(g)  All central and appurtenant installations for services such as power, light, telephone, gas, hot and cold water, sanitary and storm sewer (including all pipes, ducts, wires, cables, and conduits used in connection with any of the foregoing, whether located in common area or in units);

(h)  All patios and balconies, provided, however, that each unit owner whose unit has an entrance way to a patio or balcony shall have an easement for the exclusive use thereof;

(i)  All other parts of the condominium project and all apparatus and installations existing in the buildings or on the property for common use or necessary or convenient to the existence, maintenance, or safety of the condominium project.

The common elements shall be of two types
(a)  Limited Common Elements, which bear the notation "L.C." on the Master Plat.  Limited Common Elements shown as trash rooms, storage rooms, water heater rooms, and laundry rooms on the Master Plat are reserved for the use of the owners of the condominium units in the particular building where these limited common elements are located.  Limited common elements shown as foyers on the master plat are reserved for the use of the owners of the condominium units which have entrances into such foyers.  Limited common elements shown as patios and balconies on the Master Plat are each reserved for the exclusive use of the owner of the condominium unit to which the patio or balcony attaches.

(b)  All common elements which are not limited common elements are general common elements.

FOURTH:  (A)  Undivided Interest in Common Elements, Etc.  Each condominium unit shall have the same incidents as real property and the owner of any condominium unit shall hold the same in fee simple and shall have a common right to a share, with the other co-owners, of an undivided fee simple interest in the common elements equivalent to the percentage representing the value of his unit to the total value of the Property. The total value of the Property and of each condominium unit, and according to those basic values, the percentage appertaining to each condominium unit in the expenses of and rights in the common elements is set forth in Exhibit "C" attached hereto and by this reference made a part hereof.  The percentage of the undivided interest in the common elements herein established shall not be changed without the unanimous consent of the co-owners.  The undivided interest in the common elements shall not be separated from the condominium unit to which it appertains and shall be deemed conveyed or encumbered with the unit even though such interest is not expressly mentioned or described in the conveyance or other instrument.

(B)  Market Value.  The value herein established for any condominium unit is for the purposes of establishing pro rata interests in the common elements and shall not fix the market value of the condominium unit and shall not prevent the owner of any condominium unit, including the Grantor, from establishing a different circumstantial value for such condominium unit.

FIFTH:  Covenant Against Partition.  The common elements shall remain undivided.  No owner of any condominium unit or any other person shall bring any action for partition or division thereof except as may be provided for in Article 21, Sec 121 (b), Annotated Code of Maryland (1957), or as may otherwise provided under the law of the State of Maryland.

SIXTH:  Easements.  Easements are reserved through each of the units and the common elements for the benefit of any and all other units as may be required for electrical lines and conduit, heating, air conditioning and ventilating ducts and lines, water lines, drain pipes and other appurtenances to such utility systems in order to adequately serve each of such units.  Easements are further reserved in and through the common elements, for the benefit of each unit, for the maintenance of such air conditioning apparatus and equipment as may be necessary for the use of each unit.  Easements are reserved through units for the maintenance of load bearing partitions as shown on the Master Plat.

SEVENTH:  Rights of Washington Suburban Sanitary Commission.  In the event that any sewer or water use charge, or sewer or ad valorem tax, imposed pursuant to the Washington Suburban Sanitary Commission District Act or any regulations adopted pursuant thereto, or otherwise, is not paid by the association of co-owners, or by one or more of the co-owners, the Washington Suburban Sanitary Commission shall have the right, within the time provided by that Act or the regulations of said Commission, to terminate sewer and water service to all of the condominium units.

EIGHTH:  (A)  Construction and Enforcement.  The provisions hereof shall be liberally construed to effectuate the purpose of creating a uniform plan for the development and operation of a condominium project.  Enforcement of these covenants and restrictions shall be by any proceeding at law or in equity against any person or persons violating or attempting to violate any covenant or restriction, either to restrain or enjoin violation or to recover damages, or both, and against any condominium unit to enforce any lien created hereby; and the failure or forbearance by the Corporation of the owner of any condominium unit to enforce any covenant or restriction herein contained shall in no event be deemed a waiver of the right to do so thereafter.

There shall be and there is hereby created and declared to be a conclusive presumption that any violation or breach or any attempted violation or breach of any of the within covenants or restrictions cannot be adequately remedied by action at law or by recovery damages.

(B)  Encroachments.  If any portion of the common elements now encroaches upon any condominium unit, or if any condominium unit now encroaches upon any other condominium unit or upon any portion of the common elements, as a result of the construction of any building, or if any such encroachment shall occur hereafter as a result of settlement or shifting of any building, or otherwise, a valid easement for the encroachment and for the maintenance of the same so long as the building stands, shall exist.  In the event such building, condominium unit, any adjoining condominium unit, or any adjoining common elements, shall be partially or totally destroyed as a result of fire or other casualty or as a result of condemnation or eminent domain proceedings, and then reconstructed, encroachments of parts of the common elements upon any condominium unit or of any condominium unit upon any other condominium unit or upon any portion of the common elements, due to such reconstruction, shall be permitted, and valid easements for such encroachments and the maintenance thereof shall exist so long as the building shall stand.

(C)  Severability.  Invalidation of any one of these covenants or restrictions by judgment, decree or order shall in no way affect any other provision hereof, each of which shall remain in full force and effect.

IN WITNESS WHEREOF, the said RAJO, INC., has on the 7th day of November, 1972, caused these presents to be executed by Ralph A. Wells, its President, attested by Joan G. Wells, its Secretary, and its corporate seal to be hereunto affixed; and hereby appoints Ralph A. Wells, as its true and lawful attorney in fact to acknowledge and deliver these presents as the act and deed of said RAJO, INC.

Attest: - Corporate Seal                                RAJO, INC.

Joan Gavin Wells          /s/                 By  Ralph A. Wells          /s/
Secretary                                               President

AND IN WITNESS WHEREOF, First Virginia Mortgage and Real Estate Investment Trust, caused these presents to be executed by First Advisors, Inc., its agent.

                                                FIRST ADVISORS, Inc.

                                                By:  D. Joseph Snyder          /s/
                                                      Vice President

ATTEST:  Ronald Locke          /s/
         Assistant Secretary              (SEAL)

STATE OF VIRGINIA

COUNTY OF FAIRFAX, TO-WIT:

I, Robert B. Hood, Jr., a Notary Public for the State and County Aforesaid, whose commission expires on the 16th day of October, 1976, do certify that Ralph A. Wells and Joan G. Wells, his wife, whose names are signed to the foregoing and hereunto annexed deed, bearing date on the 7th day of November, 1972, have this day acknowledged the same before me in my County aforesaid as the act and deed of said Corporation, and made oath that the Corporate Seal thereunto affixed is the true Corporate Seal of said Corporation and has been thereunto affixed by due authority.

GIVEN under my hand this 7th day of November, 1972.

                                        Robert B. Hood, Jr.          /s/
                   (SEAL)                 Notary Public

STATE OF VIRGINIA
COUNTY OF FAIRFAX, TO-WIT:

I, Helen Blake, a Notary Public for the State and County aforesaid, whose commission expires on the 30th day of November 1972, do certify that D. Joseph Snyder and Ronald Locke, Vice President and Assistant Secretary respectively of First Advisors, Inc., agent for First Virginia Mortgage and Real Estate Investment Trust, an unincorporated Virginia real estate investment trust, whose names are signed to the foregoing and hereunto annexed deed, bearing date on the 7th day of November, 1972, have this day acknowledged the same before me in my County aforesaid as the act and deed of said Corporation, and made oath that the Corporate Seal thereunto affixed is the true Corporate Seal of said Corporation and has been thereunto affixed by due authority,

GIVEN under my hand this 1st day of December, 1972.

                                        Helen H. Blake          /s/
                   (SEAL)                 Notary Public


                          EXHIBIT A

             TO WILSON BRIDGE CONDOMINIUM MASTER DEED

All that piece or parcel of land, together with the improvements, rights, privileges and appurtenances to the same belonging, situate in the State of Maryland, County of Prince George's, described as follows, to wit:

A subdivision known as "Parcel 'A', WILSON BRIDGE APARTMENTS" as per plat thereof recorded among the land records of Prince George's County, Maryland, in Plat Book WWW 47, Plat 50, in the 12th Election District of said County, (containing 25.3577 acres of land).

EXHIBIT  B

BY-LAWS

WILSON BRIDGE CONDOMINIUM, INC.

ARTICLE  I

Name and Location

Section 1.  Name and Location.  The name of this Corporation is WILSON BRIDGE CONDOMINIUM, INC.  Its principal office is located 6701 Leyte Drive, Oxon Hill Maryland,  20021

ARTICLE  II

Definitions

Section 1.  Master Deed.  "Master Deed" as used herein means that certain Master Deed made the   7th day of   November    , 1972, by RAJO, INC., a Maryland corporation, pursuant to Article 21,  Sec. 117A through and including Sec. 142, Annotated Code of Maryland (1957), by which certain described premises (including land) are submitted to a condominium property regime and which Master Deed is recorded among the Land Records of Prince George's County, Maryland, immediately prior hereto and to which these By-Laws are appended as Exhibit "B".

Section 2.  Other Definitions.  Unless it is plainly evident from the context that a different meaning is intended, all other terms used herein shall have the same meaning as they are defined to have in the Master Deed or in Article 21, Sec. 117A, Annotated Code of Maryland (1957).

ARTICLE  III

Membership

Section 1.  Members.  Every person, group of persons, corporation, trust or other legal entity, or any combination thereof, which owns a condominium unit within the condominium project shall be a member of the Corporation, provided, however, that any person, corporation, trust or other legal entity, or any combination thereof, which holds such interest solely as security for the performance of an obligation shall not be a member.

Each member shall be entitled to cast a percentage vote equal to the percentage of his undivided interest in the Common Elements as fixed in Exhibit C of the Master Deed.  Where a member owns more than one condominium unit, he shall be entitled to vote the sum of the percentage interests which he owns in the undivided interests in the Common Elements.  Where the ownership of any one condominium unit is in more than one person, such multiple owners shall vote the percentage vote attributable to that condominium unit as they, among themselves, agree.

Section 2.  Lien.  The Corporation shall have a lien on the outstanding regular memberships in order to secure payment of any sums which may become due from the holders thereof to the Corporation for any reason whatsoever.

Section 3.  Liquidation Rights.  In the event of any voluntary or involuntary dissolution of the Corporation, each member of the Corporation shall be entitled to receive out of the assets of the Corporation available for distribution to the members an amount equal to that proportion of such assets which the value of his condominium unit bears to the value of the entire project, said values to be those set forth on Exhibit "C" attached to the Master Deed.

Section 4.  Membership Certificates.  A membership certificate in the form prescribed by the Board of Directors shall be issued to the owner or owners of each unit.  Each membership certificate shall state thereon the name or names of the member, the unit number for which it is issued, and the percentage of the undivided interest in the common elements appertaining to such unit.  Upon the transfer of title to any unit, the former owner of the unit shall surrender this membership certificate to the corporation and a new certificate shall be issued to the new owner.  Every membership certificate shall be signed by the President or Vice President and the Secretary or an Assistant Secretary of the Corporation and shall be sealed with the corporate seal.  If a membership certificate shall be lost or destroyed, a new certificate shall be issued upon the member making affidavit of that fact to the Board of Directors.

ARTICLE  IV

Meeting of Members

Section 1.  Place of Meetings.  Meetings of the membership shall be held at the principal office or place of business of the Corporation or at such other suitable place convenient to the membership as may be designated by the Board of Directors.

Section 2.  Annual Meetings.  The first annual meeting of the members of the Corporation shall be held within ninety (90) days after ninety percent (90%) of the condominium units in the project have been sold and title to the same has been conveyed.  Thereafter, the annual meetings of the members of the Corporation shall be held on the 3rd Wednesday of April each succeeding year.  At such meeting there shall be elected by ballot of the members a Board of Directors in accordance with the requirements of Section 4 of Article V of these By-Laws.  The members may also transact such other business of the Corporation as may properly come before them.

Section 3.  Special Meetings.  It shall be the duty of the President to call a special meeting of the members as directed by resolution of the Board of Directors or upon a petition signed by members representing at least twenty-five percent (25%) of the total vote of the total membership having been presented to the Secretary.  The notice of any special meeting shall state the time and place of such meeting and purpose thereof.  No business shall be transacted at a special meeting except as stated in the notice unless by consent of four-fifths of the members present, either in person or by proxy; provided, however, that no such special meeting shall take place prior to the first annual meeting.

Section 4. Notice of Meetings. It shall be the duty of the Secretary to mail a notice of each annual or special meeting, stating the purpose thereof as well as the time and place where it is to be held, to each member of record, at his address as it appears on the membership book of the Corporation, or if no such address appears, at his last known place of address, at least fifteen (15) days, but not more than sixty (60) days, prior to such meeting. Service may also be accomplished by the delivery of any such notice to the member at his dwelling unit or last known address. Notice by either such method shall be considered as notice served. So long as First Virginia Mortgage and Real Estate Investment Trust or Arlington Mortgage Company are the holders of any mortgage or deed of trust on any condominium unit in the project, like notice of such meetings shall be given to said First Virginia Mortgage and Real Estate Investment Trust or Arlington Mortgage Company who shall have a right to send a representative to such meetings; provided, however, that such representative shall not be entitled to vote unless he is a member of the Corporation.

Section 5. Quorum. The presence, either in person or by proxy, of members representing at least fifty-one percent (51%) of the total votes (computed in accordance with the provisions of Section 7 of this Article IV), shall constitute a quorum for the transaction of business at all meetings of members. If the number of votes present at a meeting drops below the quorum and the question of a lack of a quorum is raised, no business may thereafter be transacted.

Section 6. Adjourned Meetings. If any meeting of members cannot be organized because a quorum has not attended, the members who are present, either in person or by proxy, may, except as otherwise provided by law, adjourn the meeting to a time not less than forty-eight (48) hours from the time the original meeting was called.

Section 7. Voting. The vote of the members representing fifty-one percent (51%) of the total votes present in person or by proxy, shall decide any questions brought before any meeting, unless the question is one upon which, by express provision of statute or of the Articles of Incorporation, or of the Master Deed or of these By-Laws, a different vote is required, in which case such express provision shall govern and control. No member shall be eligible to vote or to be elected to the Board of Directors who is shown on the books or management accounts of the Corporation to be more than thirty (30) days delinquent in any payment due the Corporation.

Section 8. Proxies. A member may appoint any other member as his proxy. Any proxy must be filed with the Secretary before the appointed time of each meeting.

ARTICLE V

Directors

Section 1. Number and Qualification. The affairs of the Corporation shall begoverned by the Board of Directors composed of a minimum of three (3) persons; provided, however, that by a vote of a majority of the Directors, the number of Directors may be increased to five (5). All Directors, subsequent to the initial Directors named in the Articles of Incorporation, shall be members of the Corporation.

Section 2. Powers and Duties. The Board of Directors shall have all the powers and duties necessary for the administration of the affairs of the Corporation and may do all such acts and things as are not by law or by these By-Laws directed to be exercised and done by the members. The powers and duties of the Board of Directors shall include, but not be limited to the following:

   (a) To provide for the care, upkeep and surveillance of the project and its common elements and services in a manner consistent with the provisions of these By-Laws and the Master Deed.

   (b) To establish and provide for the collection of assessments and/or carrying charges from the members and for the assessment and/or enforcement of liens therefor in a manner consistent with the provisions of these By-Laws and the Master Deed.

   (c) To provide for the designation, hiring and/or dismissal of the personnel necessary for the good working order of the project and for the proper care of the common elements and to provide services for the project in a manner consistent with the provisions of these By-Laws and the Master Deed.

   (d) To promulgate the enforce such rules and regulations and such restrictions on or requirements as may be deemed proper respecting the use, occupancy and maintenance of the project and the use of the common elements as are designated to prevent unreasonable interference with the use and occupancy of the project and of the common elements by the members, all of which shall be consistent with the provisions of these By-Laws and the Master Deed.

   (e) To authorize, in their discretion, of the payment of patronage refunds from residual receipts when and as reflected in the annual report.

Section 3. Management Agent. The Board of Directors shall employ for the corporation a management agent (the "Management Agent") at a rate of compensation established by the Board of Directors to perform such duties and services as the Board of Directors shall from time to time authorize in writing. The corporation shall not employ any new management agent without thirty (30) days prior written notice to the institutional holders of all first mortgages on the condominium units and the corporation shall not undertake "self-management" or otherwise fail to employ a professional management agent without the prior written approval of all of the institutional holders of such first mortgages.

Section 4. Election and Term of Office. The term of the Directors named in the Articles of Incorporation shall expire when their successors have been elected at the first annual meeting of the members. The terms of office of the directors elected at the first annual meeting shall be staggered. The term of the Director receiving the highest number of votes shall be three years; the term of the Director receiving the second highest number of votes shall be two years; and the term of the Director receiving the third highest number of votes shall be one year; provided however, if the number of directors to be elected is five, one Director shall be elected for a term of three years, two for terms of two years, and two for terms of one year, under the above formula. At subsequent elections, Directors shall be elected for terms of three years.

Section 5. Vacancies. Vacancies in the Board of Directors caused by any reason other than the removal of a Director by a vote of the membership shall be filled by vote of the majority of the remaining directors, even though they may constitute less than a quorum; and each person so elected shall be a Director until a successor is elected by the members at the next annual meeting to serve out the unexpired portion of the term.

Section 6. Removal of Directors. At a regular or special meeting duly called, any Director may be removed with or without cause by the affirmative vote of the majority of the entire regular membership of record and a successor may then and there be elected to fill the vacancy thus created.

- 2 -

**Section 7. Compensation.** No compensation shall be paid to Directors for their services as Directors. However, Directors may be reimbursed for expenses incurred in the performance of their duties.

**Section 8. Organization Meeting.** The first meeting of a newly elected Board of Directors shall be held within ten (10) days of election at such place as shall be fixed by the Directors at the meeting at which such Directors were elected, and no notice shall be necessary to the newly elected Directors in order legally to constitute such meeting, provided a majority of the whole Board of Directors shall be present.

**Section 9. Regular Meetings.** Regular meetings of the Board of Directors may be held at such time and place as shall be determined, from time to time, by a majority of the Directors, but at least four (4) such meetings shall be held during each fiscal year. Notice of regular meetings of the Board of Directors shall be given to each Director, personally or by mail, telephone or telegraph, at least three (3) days prior to the day named for such meeting.

**Section 10. Special Meetings.** Special meetings of the Board of Directors may be called by the president or by any two (2) Directors on three (3) days notice to each Director, given personally or by mail, telephone or telegraph, which notice shall state the time, place (as hereinabove provided) and purpose of the meeting.

**Section 11. Waiver of Notice.** Before or at any meeting of the Board of Directors, any Director may, in writing, waive notice of such meeting and such waiver shall be deemed equivalent to the giving of such notice. Attendance by a Director at any meeting of the Board of Directors shall be a waiver of notice by him of the time and place thereof. If all the Directors are present at any meeting of the Board of Directors, no notice shall be required and any business may be transacted at such meeting.

**Section 12. Quorum.** At all meetings of the Board of Directors a majority of the Directors shall constitute a quorum for the transaction of business, and the acts of the majority of the Directors present at a meeting at which a quorum is present shall be the acts of the Board of Directors. If at any meeting of the Board of Directors there be less than a quorum present, the majority of those present may adjourn the meeting from time to time. At any such adjourned meeting, any business which might have been transacted at the meeting as originally called may be transacted without further notice.

## ARTICLE VI

### Officers

**Section 1. Designation.** The principal officers of the Corporation shall be a President, a Vice President, a Secretary, and a Treasurer, all of whom shall be elected by the Board of Directors. The President shall be elected from among the members of the Board of Directors. All other officers shall be elected from among the members of the Corporation. The Directors may appoint assistant secretaries and assistant treasurers and such other officers as in their judgment may be necessary.

**Section 2. Election of Officers.** The officers of the Corporation shall be elected annually by the Board of Directors at the organization meeting of each new Board and shall hold office at the pleasure of the Board of Directors.

**Section 3. Removal of Officers.** Upon an affirmative vote of a majority of the members of the Board of Directors, any officer may be removed either with or without cause, and his successor elected at any regular meeting of the Board of Directors, or at any special meeting of the Board of Directors called for such purpose.

**Section 4. President.** The President shall be the chief executive officer of the Corporation. He shall preside at all meetings of the members and of the Board of Directors. He shall have all of the general powers and duties which are usually vested in the office of president of a corporation, including, but not limited to, the power to appoint committees from among the membership from time to time as he may, in his discretion, decide is appropriate to assist in the conduct of the affairs of the Corporation.

**Section 5. Vice President.** The Vice President shall take the place of the President and perform his duties whenever the President shall be absent or unable to act. If neither the President nor the Vice President is able to act, the Board shall appoint some other member of the Board to do so on an interim basis. The Vice President shall also perform such other duties as shall from time to time be imposed upon him by the Board of Directors.

**Section 6. Secretary.** The Secretary shall keep the minutes of all meetings of the Board of Directors and the minutes of all meetings of the members of the Corporation; he shall have custody of the seal of the Corporation; he shall have charge of the membership transfer books and of such other books and papers as the Board of Directors may direct; and he shall, in general, perform all duties incident to the office of Secretary.

**Section 7. Treasurer.** The Treasurer shall have responsibility for corporate funds and securities and shall be responsible for keeping full and accurate accounts of all receipts and disbursements in books belonging to the Corporation. He shall be responsible for the deposit of all monies and other valuable effects in the name, and to the credit, of the Corporation in such depositories as may from time to time be designated by the Board of Directors. He shall be bonded under a fidelity bond in such amount as may be determined by the Board of Directors.

## ARTICLE VII

### Management

**Section 1. Management and Common Expenses.** The Corporation shall manage, operate and maintain the condominium project and, for the benefit of the condominium units and the owners thereof, shall enforce the provisions hereof and may pay out of the common expense fund the following:

  (a) The cost of providing water, sewer, garbage and trash collection, electricity, gas and other necessary utility services for the common elements, including any swimming pool or other recreational facilities used by the condominium project, and for the condominium units.

  (b) The cost of fire and extended coverage insurance and public liability insurance on the project, the cost of such other insurance as the Corporation may elect and the cost of the Treasurer's fidelity bond.

  (c) The cost of the services of a person or firm to manage the project to the extent deemed advisable by the Corporation together with the services of such other personnel as the Board of Directors of the Corporation shall consider necessary for the operation of the project.

(d)  The cost of providing such legal and accounting services as may be considered necessary to the operation of the project.

(e)  The cost of painting, maintaining, repairing and snow removal of the common elements and such furnishings and equipment for the common elements as the Board of Directors determine are necessary and proper, and the Board of Directors shall have the exclusive right and duty to contract for such services and to acquire such equipment; provided, however, that nothing herein contained shall require the Corporation to paint, repair or otherwise maintain the interior of any condominium unit or any fixtures or equipment located therein.

(f)  The cost of any and all other materials, supplies, labor, services, maintenance, repairs, taxes, and assessments, or the like, which the Corporation is required to secure or pay for by law, or otherwise, or which in the discretion of the Board of Directors shall be necessary or proper for the operation of the common elements; provided, however, that if any of the afore-mentioned are provided or paid for the benefit of a particular condominium unit or units, the cost thereof may be specially assessed to the owner or owners thereof.

(g)  The cost of the maintenance or repair of any condominium unit except those costs described in subparagraph (i) hereinbelow, in the event such maintenance or repair is reasonably necessary in the discretion of the Board of Directors to protect the common elements or to preserve the appearance or value of the project or is otherwise in the interest of the general welfare of all owners of the condominium units; provided, however, that no such maintenance or repair shall be undertaken without a resolution of the Board of Directors and not without reasonable written notice to the owner of the condominium unit proposed to be maintained and provided, further, that the cost thereof shall be assessed against the condominium unit on which such maintenance or repair is performed and, when so assessed, a statement for the amount thereof shall be rendered to the then owner of said condominium unit, at which time the assessment shall become due and payable and a continuing lien and obligation of said owner in all respects as provided in Article VIII of these By-Laws.

(h)  Any amount necessary to discharge any lien or encumbrance levied against the project, or any portion thereof, which may, in the opinion of the Board of Directors, constitute a lien against any of the common elements rather than the interest of the owner of an individual condominium unit.

(i)  The cost of all material and labor incident to the maintenance and/or repair of all exterior paint and/or stain, roofs, exterior doors, and other items of exterior trim of all condominium units.

Section 2.  Management Agent.  The Corporation may delegate any of its duties, powers or functions to the Management Agent.  The Corporation and the Board of Directors shall not be liable for any omission or improper exercise by the Management Agent of any such duty, power or function so delegated.

Section 3.  Duty to Maintain.  It shall be the sole obligation and exclusive right of the Corporation to perform the exterior maintenance and/or repair set forth in Section 1 (i) above.  Except for those specific requirements imposed upon the Corporation, the owner of any condominium unit shall, at his own expense, maintain his condominium unit and keep any and all equipment therein situate, and its other appurtenances in good order, condition and repair and in a clean and sanitary condition, and shall do all redecorating, painting and the like which may at any time be necessary to maintain the good appearance of his condominium unit.  In addition to the foregoing, the owner of any condominium unit shall, at his own expense, maintain, repair or replace any plumbing fixtures, water heaters, heating and air-conditioning equipment, lighting fixtures, refrigerators, freezers, dishwashers, disposals, ranges and/or other equipment that may be in or appurtenant to such condominium unit.  The owner of any condominium unit shall also, at his own expense, maintain any common elements which may be appurtenant to such condominium unit in a clean, orderly and sanitary condition.

Section 4.  Access at Reasonable Times.  For the purpose solely of performing any of the repairs or maintenance required or authorized by these By-Laws, or in the event of a bona fide emergency involving illness or potential danger to life or property, the Corporation, through its duly authorized agents or employees, shall have the right to, after reasonable notice to the owner, enter any condominium unit at any hour considered to be reasonable under the circumstances.

Section 5.  Easements for Utilities and Related Purposes.  The Corporation is authorized and empowered to grant such licenses, easements and/or rights of way for sewer lines, water lines, electrical cables, telephone cables, gas lines, storm drains, underground conduits and/or such other purposes related to the provision of public utilities to the project or other similar projects as may be considered necessary and appropriate by the Board of Directors for the orderly maintenance, preservation of the health, safety, convenience and/or welfare of the owners of the condominium units.  The same may be granted only over those portions of the common elements upon which no building or structure has been erected.

Section 6.  Limitation of Liability.  The Corporation shall not be liable for any failure of water supply or other services to be obtained by the Corporation or paid for out of the common expense funds, or for injury or damage to person or property caused by the elements or from any pipe, drain, conduit, appliance or equipment.  The Corporation shall not be liable to the owner of any condominium unit for loss or damage, by theft or otherwise, of articles which may be stored upon any of the common elements.  No diminution or abatement of common expense assessments, as herein elsewhere provided, shall be claimed or allowed for inconvenience or discomfort arising from the making of repairs or improvements to the common elements or from any action taken by the Corporation to comply with any law, ordinance or with the order or directive of any municipal or other governmental authority.

## ARTICLE VIII

### Assessments and Carrying Charges

Section 1.  Annual Assessments and Carrying Charges.  Each member shall pay to the Corporation a monthly sum (hereinafter sometimes referred to as "carrying charges") equal to one-twelfth (1/12) of the member's proportionate share of the sum required by the Corporation, as estimated by its Board of Directors, to meet its annual expenses including, but in no way limited to, the following:

(a)  The cost of all operating expenses of the project and services furnished, including charges by the Corporation for facilities and services furnished by it.

(b)  The cost of necessary management and administration, including fees paid to any management agent.

(c)  The amount of all taxes and assessments levied against the Corporation or upon any property which it may own or which it is otherwise required to pay, if any.

- 4 -

(d)  The cost of fire and extended coverage insurance and public liability insurance on the project and the cost of such other insurance as the Corporation may effect.

(e)  The cost of furnishing water, sewer, electricity, heat, gas, garbage and trash collection and/or other utilities.

(f)  The cost of funding all reserves established by the Corporation, including, when appropriate, a general operating reserve and/or a reserve for replacements.

(g)  The estimated cost of repairs, maintenance and replacements of the project to be made by the Corporation. The Board of Directors shall determine the amount of the assessment annually, but may do so at more frequent intervals should circumstances so require.

The Board of Directors of the Corporation shall make reasonable efforts to fix the amount of the assessments against each member for each assessment period at least thirty (30) days in advance of such date or period, and shall, at that time, prepare a roster of the membership and assessments, applicable thereto which shall be kept at the office of the Corporation and shall be open to inspection by any owner upon reasonable notice to the Board. Written notice of the assessments shall thereupon be sent to the members. The failure of the Board of Directors to fix the said assessment, or to notify the members thereof before the expiration of any assessment period, shall not be deemed a waiver or modification in any respect of the provisions of this Article, or a release of any member from the obligation to pay the assessment, or any installment thereof, for that or any subsequent assessment period, but the assessment fixed for the preceding period shall continue until a new assessment is fixed. No member may be exempt himself from liability for assessments or carrying charges by a waiver of the use of enjoyment of any of the common elements or by abandonment of the condominium unit belonging to him. The proportionate share of each member of the sum required by the Corporation to meet its annual expenses, as mentioned in the first sentence of this Section 1 of this Article VIII, shall be computed by multiplying that member's percentage of undivided ownership in the common elements by the total annual expenses of the Corporation, as estimated by its Board of Directors.

Section 2.  Special Assessments.  In addition to the regular assessments authorized by this Article, the Corporation may levy in any assessment year a special assessment or assessments, applicable to that year only, for the purpose of defraying, in whole or in part, the cost of any construction or reconstruction, unexpected repair or replacement of a described capital improvement located upon the project, including the necessary fixtures and personal property related thereto, or for such other purpose as the Board of Directors may consider appropriate, provided that any such assessment shall have the assent of the members representing three-fourth (3/4) of the total votes of all the members of the Corporation. A meeting of the members shall be duly called for this purpose, written notice of which shall be sent to all members at least ten (10), but not more than thirty (30) days in advance of such meeting, which notice shall set forth the purpose of the meeting.

Section 3.  Reserve for Replacements.  The Corporation shall establish and maintain a reserve fund for replacement by the allocation and payment monthly to such reserve fund of an amount to be designated from time to time by the Board of Directors.  Such fund shall be conclusively deemed to be a common expense.  Such fund shall be deposited in a special account with a lending institution the accounts of which are insured by an agency of the United States of America or may, in the discretion of the Board of Directors, be invested in obligations of, or fully guaranteed as to principal by, the United States of America.  The reserve for replacements may be expended only for the purpose of effecting the replacement of the common elements and equipment of the project and for operating contingencies of a non-recurring nature.  The amounts required to be allocated to the reserve for replacements may be reduced or suspended by appropriate resolution of the Board of Directors, upon the accumulation in such reserve for replacements of a sum equal to ten percent (10%) of the full replacement value of the condominium project as such full replacement.

Section 3A.  Deposit of Annual Assessments and Carrying Charges.  The Corporation shall deposit the sums collected pursuant to Section 1, of this Article VIII in an escrow account at a convenient office of First Virginia Bank so long as First Virginia Mortgage and Real Estate Investment Trust shall be the holder of any Deed of Trust secured on the project. Value is annually determined by the Board of Directors for casualty insurance purposes.  The proportionate interest of any owner in any reserve for replacements shall be considered an appurtenance of his condominium unit and shall not be separately withdrawn, assigned or transferred or otherwise separated from the condominium unit to which it appertains and shall be deemed to be transferred with such condominium unit.

Section 4.  Non-Payment of Assessment.  Any assessment levied pursuant to these By-Laws, or any installment thereof, which is not paid on the date when due shall be delinquent and shall, together with interest thereon and the cost of collection thereof, as hereinafter provided, thereupon become a continuing lien upon the condominium unit or units belonging to the member against whom such assessment is levied and shall bind such condominium unit or units in the hands of the then owner, his heirs, devisees, personal representatives and assigns, all in accordance with the provisions of Article 21, Sec. 131, et seq., Annotated Code of Maryland, (1957).  The personal obligation of the member to pay such assessment shall, however, remain his personal obligation for the statutory period and a suit to recover a money judgment for non-payment of any assessment levied pursuant to these By-Laws, or any installment thereof, may be maintained without foreclosing or waiving the lien herein and by the aforesaid statute created to secure the same.

Any assessment levied pursuant to these By-Laws, or any installment thereof which is not paid within ten (10) days after it is due shall bear interest at the rate of eight percent (8%) per annum, and the Corporation may bring an action at law against the member personally obligated to pay the same, or foreclose the lien against the condominium unit or units then belonging to said member, in either of which events interest, costs and reasonable attorney's fees of not less than fifteen percent (15%) of the sum claimed shall be added to the amount of each assessment.

The corporation shall notify the holder of the first mortgage on any condominium unit for which any assessment levied pursuant to these By-Laws become delinquent for a period in excess of sixty (60) days and in any other case where the owner of such condominium unit is in default with respect to the performance of any other obligation hereunder for a period in excess of thirty (30) days, but any failure to give such notice shall not affect the validity of the lien for any assessment levied pursuant to these By-Laws.

Section 5.  Assessment Certificates.  The Corporation shall upon demand at any time furnish to any member liable for any assessment levied pursuant to these By-Laws (or any other party legitimately interested in the same) a certificate in writing signed by an officer of the Corporation, setting forth the status of said assessment, i.e., whether the same is paid or unpaid.  Such certificate shall be conclusive evidence of the payment of any assessment therein stated to have been paid.

- 5 -

<u>Section 6.  Acceleration of Installments.</u>  Upon default in the payment of any one or more monthly installments of any assessment levied pursuant to these By-Laws, or any other installment thereof, the entire balance of said assessment may be accelerated at the option of the Board of Directors and be declared due and payable in full.

<u>Section 7.  Priority of Lien.</u>  The lien established by this Article and by Article 21, Sec. 131, Annotated Code of Maryland (1957), shall have preference over any other assessments, liens, judgments, or charges of whatever nature, except the following:

(a)  General and special assessments for real estate taxes on the condominium unit; and

(b)  The liens of any deeds of trust, mortgage instruments or encumbrances duly recorded on the condominium unit prior to the assessment of the lien thereon or duly recorded on said lien after receipt of a written statement from the Board of Directors reflecting that payments on said lien were current as of the date of recordation of said deed of trust, mortgage instrument or encumbrance, all as hereinabove specifically provided.

<u>Section 8.  Subordination and Mortgage Protection.</u>  Notwithstanding any other provisions hereof to the contrary, the lien of any assessment levied pursuant to these By-Laws upon any condominium unit in the project shall be subordinate to, and shall in no way affect the rights of the holder of any indebtedness secured by any recorded mortgage or Deed of Trust upon such interest made in good faith, and for value received; provided, however, that such subordination shall apply only to assessments which have become due and payable prior to a sale or transfer of such condominium unit pursuant to a decree of foreclosure, or any other proceeding in lieu of foreclosure.  Such sale or transfer shall not relieve the purchaser at such sale or the condominium unit from liability for any assessments thereafter becoming due, nor from the lien of any such subsequent assessment, which said lien, if any, shall have the same effect and be enforced in the same manner as provided herein.

No amendment to this Section shall affect the rights of the holder of any such mortgage (or the indebtedness secured thereby) recorded prior to recordation of such amendment unless the holder thereof (or of the indebtedness secured thereby) shall join in the execution of such amendment.

<u>Section 9.  Additional Default.</u>  Any recorded first mortgage secured on a condominium unit in the project shall provide that any default by the mortgagor in the payment of any assessment levied pursuant to these By-Laws, or any installment thereof, shall likewise be a default in such mortgage or the indebtedness secured thereby but failure to include such provision in any such mortgage shall not affect the validity or priority thereof and the protection extended to the holder of such mortgage or the indebtedness secured thereby by reason of the provisions of this article shall not be altered, modified, or diminished by reason of such failure.

ARTICLE IX

SUPPLEMENTAL ENFORCEMENT OF LIEN

In addition to proceedings at law or in equity for the enforcement of the lien established by the Master Deed, these By-Laws, or by Article 21, Sec. 117A, et seq., Annotated Code of Maryland (1957), all of the owners of condominium units in the condominium project may be required by the Grantor or the Board of Directors, to execute bonds conditioned upon the faithful performance and payment of the installments of the lien established thereby and may likewise be required to secure the payment of such obligations by a Declaration in Trust recorded among the land records for Prince George's County, Maryland, granting unto a Trustee or Trustees appropriate powers to the end that, upon default in the performance of such bond said Declaration in Trust may be foreclosed by said Trustee or Trustees. Acting at the direction of the Management Agent or the Board of Directors.  In the event any such bonds have been executed and such Declaration in Trust is recorded, then any subsequent purchaser of a condominium unit in the condominium project shall take title subject thereto and shall assume the obligations therein provided for.

ARTICLE X

Use Restrictions

<u>Section 1.  Residential Use.</u>  All condominium units shall be used for private residential purposes exclusively, except for such temporary non-residential uses as may be permitted by the Board of Directors from time to time; provided, however that any owner of two or more condominium units in the project shall be permitted to use one or more of such units for model or sample apartments.

<u>Section 2.  Prohibited Uses and Nuisances.</u>

(a)  No noxious or offensive trade or activity shall be carried on within the project or within any condominium unit situate thereon, nor shall any be done therein or thereon which may be or become an annoyance to the neighborhood or the other owners.

(b)  There shall be no obstruction of any common elements.  Nothing shall be stored upon any common elements without the approval of the Board of Directors.  Vehicular parking upon common elements shall be regulated by the Board of Directors.

(c)  Nothing shall be done or maintained in any condominium unit or upon any common elements which will increase the rate of insurance on any condominium unit or common elements, or result in the cancellation thereof.  Nothing shall be done or maintained in any condominium unit or upon common elements which would be in violation of any law.  No waste shall be committed upon any common elements.

(d)  No structural alteration, construction, addition or removal of any condominium unit or common elements shall be commenced or conducted except in strict accordance with the provisions of these By-Laws.

(e)  The maintenance, keeping, boarding and/or raising of animals, livestock or poultry of any kind, regardless of number shall be and is hereby prohibited within any condominium unit or upon any common elements, except that this shall not prohibit the keeping of dogs or cats (weighing not more than fifteen (15) pounds) and/or caged birds as domestic pets provided they are not kept, or maintained for commercial purposes.

(f)  No signs of any character shall be erected, posted or displayed upon, in, from or about any condominium unit or common elements, provided, however, that one temporary real estate sign of customary and reasonable dimensions may be displayed upon, in or from any condominium unit placed upon the market for sale or rent.  The provisions of this subsection shall not be applicable to the institutional holder of any first mortgage which comes into possession of any

condominium unit by reason of any remedies provided for in the mortgage, foreclosure of any mortgage or any deed of trust or otherproceeding in lieu of foreclosure.

(g) Except as herein elsewhere provided, no junk vehicle or other vehicle on which current registration plates are not displayed, trailer, truck, camper, camp truck, house trailer, boat or the like, shall be kept upon any common elements, nor shall the repair or extraordinary maintenance of automobiles or other vehicles be carried out thereon. The Corporation may, in the discretion of its Board of Directors, provide and maintain a suitable area designated for the parking of such vehicles or the like.

(h) No part of the common elements shall be used for commercial activities of any character, except as authorized by the Board of Directors and in compliance with law.

(i) No clothes dryers or washing machines shall be installed or used within any of the units.

(j) No structure of a temporary character, trailer, tent, shack, barn or other outbuilding shall be maintained upon any common elements at any time.  Outdoor clothes dryers or clothes lines shall not be maintained upon any common elements at any time.

(k) No outside television or radio aerial or antenna, or other aerial or antenna, for reception or transmission, shall be maintained upon any condominium unit or upon any common elements without the prior written consent of the Board of Directors.

(l) There shall be no violation of any rules for the use of the common elements which may from time to time be adopted by the Board of Directors and promulgated among the membership by them in writing, and the Board of Directors is hereby and elsewhere in these By-Laws authorized to adopt such rules.

ARTICLE XI

Architectural Control

Section 1.  Architectural Control.  Except for the original construction of the condominium units situate within the project and any improvements to any common elements accomplished concurrently with said construction, and except for purposes of proper maintenance and repair or as otherwise in these By-Laws provided, it shall be prohibited to install, erect, attach, apply, paste, hinge, screw, nail, build, alter, remove or construct any lightings, shades, screens, awnings, patio covers, decorations, aerials, antennas, radio or television broadcasting or receiving devices, slabs, sidewalks, curbs, gutters, patios, porches, driveways, fences, walls, or to make any change or otherwise alter (including any alteration in color) in any manner whatsoever to the exterior of any condominium unit or upon any of the common elements within the project.

ARTICLE XII

Insurance

Section 1.  Insurance.  The Board of Directors shall obtain and maintain, to the extent available, at least the following:

(a) Casualty or physical damage insurance in an amount equal to the full replacement value of the condominium project, including the common areas, (as determined annually by the Board of Directors with the assistance of the insurance company affording such coverage), such coverage to afford protection against at least the following:

(i) Loss or damage by fire and other hazards covered by the standard extended coverage endorsement "agreed amount endorsement" and "condominium replacement cost endorsement" together with coverage for common expenses with respect to condominium units during any period of reconstruction;

(ii) such other risks as shall customarily be covered with respect to projects similar in construction, location, and use, including, but not limited to, vandalism, malicious mischief, windstorm, water damage, machinery explosion or damage, plate glass damage and such other insurance as the Board of Directors may determine.

(b) Public liability insurance in such amounts and in such forms as may be considered appropriate by the Board of Directors, including, but not limited to, water damage, legal liability, hired automobile, non-owned automobile, off-premises employee coverage and any and all other liability incident to the ownership and/or use of the condominium project or any portion thereof.

(c) Workmen's Compensation insurance to the extent necessary to comply with any applicable law.

(d) Such other policies of insurance, including insurance for other risks of a similar or dissimilar nature, as are or shall hereafter be considered appropriate by the Board of Directors.

(e) Treasurer's fidelity bond.

Section 2.  Limitations.  Any insurance obtained pursuant to the requirements of this Article shall be subject to the following provisions:

(a) All policies shall be written with a company or companies licensed to do business in the State of Maryland and holding a rating of "A+AAA" or better in Best's Insurance Reports.

(b) Exclusive authority to adjust losses under said policies shall be vested in the Board of Directors or its authorized representative.

(c) In no event shall the insurance coverage obtained and maintained pursuant to the requirements of this Article be brought into contribution, with insurance purchased by the owners of the condominium units or their mortgagees, as herein permitted, and any "no other insurance" or similar clause in any policy obtained by the Corporation pursuant to the requirements of this Article shall exclude such policies from consideration.

(d) All policies shall provide that such policies may not be cancelled or substantially modified without at least thirty (30) days prior written notice to the insured.

(e) All policies of casualty insurance shall provide that, notwithstanding any provisions thereof which give the carrier the right to elect to restore damage in lieu of making a cash settlement, such option shall not be exercisable without the prior written approval of the Board of Directors or when in conflict with the provisions of these By-Laws.

(f) All policies shall contain a waiver of subrogation by the insurer as to any and all claims against the Corporation, the Board of Directors, the owner of any condominium unit and/or their respective agents, employees or invitees, and of any defenses based upon co-insurance or invalidity arising from the acts of the insured.

<u>Section 3.  Individual Policies.</u>  The owner of any condominium unit (including the holder of any mortgage thereon) may obtain additional insurance at his own expense.  Such insurance shall be written by the same carrier as that purchased by the Board of Directors pursuant to this Article or shall provide that it shall be without contribution as against the same.  Such insurance shall contain the same waiver of subrogation provision as that set forth in Section 2 (f) of this Article.

<u>Section 4.  Insurance Trustee.</u>  So long as First Virginia Mortgage and Real Estate Investment Trust is the holder of any mortgage or Deed of Trust on any condominium unit in the project, said Trust shall have the right, at its option, to designate an insurance trustee and successor insurance trustees.  Such insurance trustees shall be entitled to a reasonable fee for services as such, and such fee shall be considered a common expense.  First Virginia Mortgage and Real Estate Investment Trust shall have the right to approve any insurance trust agreement entered into in order to affectuate an insurance trust.

ARTICLE  XIII

Casualty Damage - Reconstruction or Repair

<u>Section 1.  Use of Insurance Proceeds.</u>  In the event of damage or destruction by fire or other casualty the same shall be promptly repaired or reconstructed in substantial conformity with the original plans and specifications with the proceeds of insurance available for that purpose, if any.

<u>Section 2.  Proceeds Insufficient.</u>  In the event that the proceeds of insurance are not sufficient to repair damage or destruction by fire or other casualty, or in the event such damage or destruction is caused by any casualty not herein required to be insured against, then the repair or reconstruction of the damaged common elements shall be accomplished promptly by the Corporation at its common expense and the repair or reconstruction of any condominium unit shall be accomplished promptly by the Corporation at the expense of the owner of the affected condominium unit.  The ratable share of the expense of such repairs or reconstruction may be assessed and the lien for the same shall have all the priorities provided for in Article VIII of these By-Laws.

<u>Section 3.  Restoration Not Required.</u>  In the event more than two-thirds (2/3) of the entire project is substantially damaged or destroyed by fire or other casualty and members do not unanimously promptly resolve to proceed with repair or reconstruction, then and in that event the project shall be deemed to be owned in common by the owners of all of the condominium units in the same proportions as that previously established for ownership of appurtenant undivided interests in the common elements and the project shall be subject to an action for partition at the suit of the owner of any condominium unit or the holder of any lien thereon, in which event the net proceeds of sale, together with the net proceeds of any insurance paid to the Corporation or its members in common, shall be considered as one fund and shall be divided among the owners of all the condominium units in the same proportion as that previously established for ownership of appurtenant undivided interests in the common elements, after first paying out of the share of the owner of any condominium unit, to the extent such share is sufficient for the purpose, all liens upon said condominium unit, in the order of their priority.

ARTICLE  XIV

Fiscal Management

<u>Section 1.  Fiscal Year.</u>  The fiscal year of the Corporation shall begin on the first day of January every year, except that the first fiscal year of the Corporation shall begin at the date of incorporation.  The commencement date of the fiscal year herein established shall be subject to change by the Board of Directors should corporate practice subsequently dictate.

<u>Section 2.  Books and Accounts.</u>  Books and accounts of the Corporation shall be kept under the direction of the Treasurer in accordance with good accounting practices.  The same shall include books with detailed accounts, in chronological order, of receipts and of the expenditures affecting the project and its administration and shall specify the maintenance and repair expenses of the common elements and services and any other expenses incurred.  That amount of any assessment required for payment on any capital expenditures of the Corporation shall be credited upon the books of the Corporation to the "Paid-In-Surplus" account as a capital contribution by the members.

<u>Section 3.  Auditing.</u>  At the close of each fiscal year, the books and records of the Corporation shall be audited by an independent Certified Public Accountant whose report shall be prepared and certified in accordance with generally accepted auditing standards.  Based upon such report, the Corporation shall furnish its members with an annual financial statement including the income and disbursements of the Corporation.

<u>Section 4.  Inspection of Books.</u>  The books and accounts of the Corporation, and vouchers accrediting the entries made thereupon, shall be available for examination by the members of the Corporation, and/or their duly authorized agents or attorneys, during normal business hours and for purposes reasonably related to their interests as members.

<u>Section 5.  Execution of Corporate Documents.</u>  With the prior authorization of the Board of Directors, all notes and contracts shall be executed on behalf of the Corporation by either the President or Vice President; and all checks shall be executed on behalf of the Corporation by such officers, agents or other persons as are from time to time so authorized by the Board of Directors.

<u>Section 6.  Seal.</u>  The Board of Directors shall provide a suitable corporate seal containing the name of the Corporation, which seal shall be in the charge of the Secretary.  If so directed by the Board of Directors, a duplicate of the seal may be kept and used by the Treasurer or any assistant secretary or assistant treasurer.

- 8 -

## ARTICLE XIV

### Amendment

**Section 1.  Amendments.**  These By-Laws may be amended by the affirmative vote of members representing two thirds (2/3) of the total value of the project at any meeting of the members duly called for such purpose, effective only upon the recordation among the Land Records of Prince George's County, Maryland, of an amendment to the Master Deed setting forth such amendment to these By-Laws.  Amendments may be proposed by the Board of Directors or by petition signed by members representing at least twenty percent (20%) of the total value of the project.  A description of any proposed amendment shall accompany the notice of any regular or special meeting at which such proposed amendment is to be voted upon.

## ARTICLE XVI

### Compliance – Interpretation – Miscellaneous

**Section 1.  Compliance.**  These By-Laws are set forth in compliance with the requirements of Article 21, Sec. 117A through and including Sec. 142, Annotated Code of Maryland (1957).

**Section 2.  Conflict.**  These By-Laws are subordinate and subject to all provisions of the Master Deed and to the provisions of Article 21, Sec. 117A through and including Sec. 142, Annotated Code of Maryland (1957).  All of the terms hereof, except where clearly repugnant to the context, shall have the same meaning as in the Master Deed or the aforesaid statute.  In the event of any conflict between these By-Laws and the Master Deed, the provisions of the Master Deed shall control; and in the event of any conflict between the aforesaid Master Deed and Article 21, Sec 117A through and including Sec. 142, Annotated Code of Maryland (1957), the provisions of the statute shall control.

**Section 3.  Resident Agent.**  Mr. John P. Cooney, 1900 Gaither Street, Hillcrest Heights, Prince George's County, Maryland 20031, shall be designated as the person authorized to accept service of process in any action relating to two or more condominium units or to the common elements as authorized under Article 21, Sec. 133, Annotated Code of Maryland (1957).

**Section 4.  Severability.**  In the event any provision or provisions of these By-Laws shall be determined to be invalid, void or unenforceable, such determination shall not render invalid, void or unenforceable any other provisions hereof which can be given effect.

**Section 5.  Waiver.**  No restriction, condition, obligation or provision of these By-Laws shall be deemed to have been abrogated or waived by reason of any failure or failures to enforce the same.

**Section 6.  Captions.**  The captions contained in these By-Laws are for convenience only and are not a part of these By-Laws and are not intended in any way to limit or enlarge the terms and provisions of these By-Laws.

**Section 7.  Gender, etc.**  Whenever in these By-Laws the context so requires, the singular number shall include the plural and the converse; and the use of any gender shall be deemed to include all genders.

EXHIBIT C

4150   711                                    4150   712

| UNIT NO. | UNIT TYPE | UNIT VALUE | PERCENT OWNERSHIP OF COMMON ELEMENTS |
|---|---|---|---|

**Bldg. No. 1**

| 6356 A-1 | 32A Terr Cor | $21,250 | .19 |
| 6356 A-2 | 18A Terr Int | $18,950 | .16 |
| 6356 B-1 | 2CR Balc Cor | $23,250 | .19 |
| 6356 B-2 | 3RR Balc Int | $22,950 | .21 |
| 6356 C-1 | 22R Balc Cor | $23,250 | .19 |
| 6356 C-2 | 3BR Balc Int | $25,950 | .21 |
| 6354 A-1 | 18A Terr Int | $18,950 | .16 |
| 6356 A-2 | 18A Terr Int | $18,950 | .16 |
| 6356 B-1 | 18A Balc Int | $19,500 | .16 |
| 6376 B-2 | 3LR Balc Int | $22,050 | .19 |
| 6356 C-1 | 16R Terr Int | $19,500 | .16 |
| 6356 C-2 | 28R Balc Int | $22,550 | .19 |
| 6278 A-1 | 2LR Terr Int | $18,450 | .16 |
| 6377 A-2 | 16R Terr Int | $18,950 | .16 |
| 6263 B-1 | 28R Balc Int | $22,950 | .19 |
| 6360 B-2 | 3BR Balc Int | $22,950 | .21 |
| 6360 C-1 | 24R Balc Int | $22,950 | .19 |
| 6751 A-1 | 28R Balc Int | $22,950 | .19 |
| 6372 A-1 | 18A Terr Int | $18,950 | .16 |
| 6372 A-2 | 22A Terr Cor | $21,250 | .19 |
| 6352 B-1 | 2LR Balc Int | $22,950 | .19 |
| 6352 B-2 | 3BR Balc Int | $23,250 | .21 |
| 6352 C-1 | 2LR Balc Int | $22,050 | .19 |
| 6352 C-2 | 2LR Balc Int | $23,250 | .19 |

**Bldg. No. 2**

| 6340 A-1 | 32A Terr Cor | $21,250 | .19 |
| 6340 A-2 | 16A Terr Int | $18,950 | .16 |
| 6342 B-1 | 28R Balc Cor | $23,250 | .19 |
| 6343 C-1 | 3BR Balc Int | $25,950 | .21 |
| 6341 C-1 | 24R Balc Cor | $23,250 | .19 |
| 6341 C-2 | 3BR Balc Int | $25,950 | .21 |
| 6350 A-1 | 16A Terr Int | $18,950 | .16 |
| 6358 A-2 | 18A Terr Int | $18,950 | .16 |
| 6359 B-1 | 18A Balc Int | $19,500 | .16 |
| 6350 B-2 | 2TR Balc Int | $22,550 | .19 |
| 6350 C-1 | 18A Balc Int | $19,500 | .16 |
| 6350 C-2 | 22R Balc Int | $22,950 | .19 |
| 6351 A-1 | 18A Terr Int | $18,950 | .16 |
| 6351 A-2 | 18A Terr Int | $18,950 | .16 |
| 6352 B-1 | 2LA Balc Int | $22,950 | .19 |
| 6358 C-1 | 2LR Balc Int | $22,950 | .19 |
| 6354 A-1 | 18A Terr Int | $18,950 | .16 |
| 6354 B-1 | 18A Terr Int | $18,950 | .16 |
| 6354 B-2 | 32A Balc Cor | $21,250 | .19 |
| 6354 C-1 | 26A Balc Int | $22,950 | .19 |
| 6771 C-2 | 28R Balc Cor | $23,250 | .19 |

**Bldg. No. 3**

| 6742 A-1 | 32A Terr Cor | $21,250 | .19 |
| 6742 A-2 | 16A Terr Int | $18,950 | .16 |
| 6742 B-1 | 28R Balc Cor | $23,250 | .19 |
| 6742 B-2 | 3BR Balc Int | $25,950 | .21 |
| 6743 C-1 | 32A Balc Cor | $21,250 | .19 |
| 6741 C-2 | 24A Balc Int | $22,950 | .19 |
| 6742 A-1 | 18A Terr Int | $18,950 | .16 |
| 6742 C-1 | 18A Terr Int | $18,950 | .16 |
| 6742 C-2 | 32A Balc Int | $22,950 | .19 |

**Bldg. No. 3**

| 6712 C-2 | 18A Balc Int | $19,500 | .16 |
| 6711 C-2 | 32A Terr Cor | $22,950 | .19 |
| 6344 A-1 | 18A Terr Int | $18,950 | .16 |
| 6344 A-2 | 18A Balc Int | $19,500 | .16 |
| 6344 B-1 | 22R Balc Int | $22,950 | .19 |
| 6344 B-2 | 28R Balc Int | $22,950 | .19 |
| 6344 C-1 | 28R Balc Int | $22,050 | .19 |
| 6345 A-1 | 18A Terr Int | $18,950 | .16 |
| 6345 A-2 | 28R Terr Cor | $23,250 | .19 |
| 6345 B-1 | 28R Balc Cor | $23,250 | .19 |
| 6345 C-1 | 28R Balc Int | $22,950 | .19 |
| 6346 C-2 | 28R Balc Int | $23,250 | .19 |

**Bldg. No. 4**

| 6732 A-1 | 32A Terr Cor | $21,250 | .19 |
| 6732 A-2 | 18A Terr Int | $18,950 | .16 |
| 6732 B-1 | 28R Balc Cor | $23,250 | .19 |
| 6732 B-2 | 3BR Balc Int | $25,950 | .21 |
| 6732 C-1 | 32A Balc Cor | $21,250 | .19 |
| 6732 C-2 | 3BR Balc Int | $25,950 | .21 |
| 6734 A-1 | 18A Terr Int | $18,950 | .16 |
| 6734 A-2 | 18A Balc Int | $19,500 | .16 |
| 6734 B-2 | 28R Balc Int | $22,950 | .19 |
| 6734 C-1 | 18A Balc Int | $19,500 | .16 |
| 6734 C-2 | 28R Balc Int | $22,950 | .19 |
| 6736 A-1 | 18A Terr Int | $18,950 | .16 |
| 6736 A-2 | 18A Terr Int | $18,950 | .16 |
| 6736 B-1 | 28R Balc Int | $22,950 | .19 |
| 6736 B-2 | 28R Balc Int | $22,950 | .19 |
| 6736 C-1 | 28R Balc Int | $22,950 | .19 |
| 6733 A-1 | 18A Terr Int | $18,950 | .16 |
| 6733 A-2 | 18A Terr Int | $18,950 | .16 |
| 6738 B-1 | 28R Balc Cor | $23,250 | .19 |
| 6738 C-1 | 18A Terr Int | $18,950 | .16 |
| 6738 C-2 | 28R Balc Cor | $23,250 | .19 |

**Bldg. No. 5**

| 6730 A-1 | 32A Terr Int | $18,950 | .16 |
| 6730 A-2 | 28A Terr Cor | $23,250 | .19 |
| 6730 B-1 | 28R Balc Int | $22,950 | .19 |
| 6730 B-2 | 28R Balc Int | $23,250 | .19 |
| 6730 C-1 | 28R Balc Int | $22,950 | .19 |
| 6730 C-2 | 28R Terr Int | $21,250 | .19 |
| 6724 A-1 | 18R Terr Int | $18,950 | .16 |
| 6724 A-2 | 18A Terr Int | $15,950 | .16 |
| 6724 B-1 | 22A Balc Cor | $23,250 | .19 |
| 6724 B-2 | 3BR Balc Int | $25,950 | .21 |
| 6724 C-1 | 28R Balc Cor | $23,250 | .19 |
| 6724 C-2 | 3BR Balc Int | $25,950 | .21 |
| 6716 A-1 | 18A Terr Int | $18,950 | .16 |
| 6716 A-2 | 18A Balc Int | $19,500 | .16 |
| 6716 B-1 | 28R Balc Int | $22,950 | .19 |
| 6716 B-2 | 3BR Balc Int | $25,950 | .21 |
| 6716 C-1 | 18A Balc Int | $19,500 | .16 |
| 6716 C-2 | 28R Balc Int | $22,950 | .19 |
| 6728 A-1 | 18R Terr Int | $18,950 | .16 |
| 6728 B-1 | 28R Balc Int | $22,950 | .19 |
| 6728 C-1 | 18A Terr Int | $18,950 | .16 |
| 6778 C-2 | 3BR Balc Int | $22,950 | .19 |

| UNIT NO. | UNIT TYPE | UNIT VALUE | PERCENT OWNERSHIP OF COMMON ELEMENTS |
|---|---|---|---|

**Bldg. No. 6**

| 6716 A-1 | 32A Terr Cor | $21,250 | .16 |
| 6716 A-2 | 18A Terr Int | $18,950 | .16 |
| 6716 B-1 | 28R Balc Cor | $23,250 | .19 |
| 6716 B-2 | 3BR Balc Int | $24,950 | .21 |
| 6716 C-1 | 24R Balc Cor | $21,250 | .19 |
| 6716 C-2 | 3BR Balc Int | $25,950 | .21 |
| 6718 A-1 | 18A Terr Int | $18,950 | .16 |
| 6718 A-2 | 18A Terr Int | $18,950 | .16 |
| 6718 B-1 | 28R Balc Int | $22,950 | .19 |
| 6718 B-2 | 28A Balc Int | $22,950 | .19 |
| 6718 C-1 | 18R Balc Int | $19,500 | .16 |
| 6718 C-2 | 28R Balc Int | $22,950 | .19 |
| 6720 A-1 | 18A Terr Int | $18,950 | .16 |
| 6720 A-2 | 16A Terr Int | $18,950 | .16 |
| 6720 B-1 | 28R Balc Int | $22,950 | .19 |
| 6720 C-1 | 28R Balc Int | $22,050 | .19 |
| 6720 C-2 | 28R Balc Int | $22,950 | .19 |
| 6722 A-1 | 32A Balc Int | $18,950 | .16 |
| 6722 A-2 | 18R Terr Int | $18,950 | .16 |
| 6722 B-1 | 28A Balc Int | $22,950 | .19 |
| 6722 C-1 | 28R Balc Int | $22,950 | .19 |
| 6722 C-2 | 38R Balc Cor | $23,250 | .19 |

**Bldg No. 7**

| 6709 A-1 | 18A Terr Int | $19,950 | .16 |
| 6709 A-2 | 28R Terr Cor | $21,250 | .19 |
| 6700 B-1 | 28R Balc Int | $22,050 | .19 |
| 6700 B-2 | 32R Balc Cor | $21,250 | .19 |
| 6700 C-1 | 28R Balc Int | $22,960 | .19 |
| 6705 C-1 | 32A Balc Cor | $21,250 | .19 |
| 6700 A-1 | 16A Terr Int | $18,950 | .16 |
| 6702 A-2 | 18A Terr Int | $18,950 | .16 |
| 6702 B-1 | 28A Balc Int | $22,550 | .19 |
| 6702 B-2 | 22A Balc Int | $22,950 | .19 |
| 6702 C-1 | 28A Balc Int | $22,950 | .19 |
| 6702 C-2 | 28R Balc Int | $22,950 | .19 |
| 6704 A-1 | 18R Terr Int | $18,950 | .16 |
| 6704 A-2 | 18R Terr Int | $18,950 | .16 |
| 6704 B-1 | 18A Balc Int | $19,500 | .16 |
| 6706 B-1 | 32R Balc Int | $22,950 | .19 |
| 6706 C-1 | 18R Balc Int | $19,500 | .16 |
| 6706 C-2 | 28R Balc Int | $22,950 | .19 |
| 6706 A-1 | 18R Terr Int | $18,950 | .16 |
| 6706 A-2 | 18R Terr Int | $18,950 | .16 |
| 6706 B-2 | 38R Balc Int | $24,950 | .21 |
| 6706 C-1 | 28A Balc Cor | $23,950 | .19 |
| 6706 C-2 | 38R Balc Int | $24,950 | .19 |

**Bldg. No. 8**

| 6720 A-1 | 18R Terr Int | $18,950 | .15 |
| 6720 A-2 | 28R Terr Cor | $21,250 | .19 |
| 6720 B-1 | 28R Balc Int | $22,050 | .15 |
| 6720 B-2 | 28A Balc Int | $22,950 | .19 |
| 6720 C-1 | 28R Balc Int | $22,050 | .19 |
| 6720 C-2 | 28R Balc Int | $22,950 | .19 |
| 6710 A-1 | 18R Terr Int | $18,950 | .16 |
| 6710 A-2 | 18R Terr Int | $18,950 | .16 |
| 6710 B-1 | 22R Balc Int | $22,950 | .19 |
| 6710 B-2 | 38R Balc Int | $24,950 | .19 |
| 6710 C-1 | 28R Balc Int | $22,950 | .19 |

**Bldg. No. 8**

| 6712 A-1 | 18R Terr Int | $18,950 | .16 |
| 6712 A-2 | 18R Terr Int | $18,950 | .16 |
| 6712 B-1 | 18R Balc Int | $19,500 | .16 |
| 6712 B-2 | 28R Balc Int | $22,950 | .19 |
| 6712 C-1 | 18A Balc Int | $19,500 | .16 |
| 6714 A-1 | 28R Terr Int | $21,250 | .19 |
| 6714 A-2 | 18R Terr Int | $18,950 | .16 |
| 6714 B-1 | 28R Balc Cor | $23,250 | .19 |
| 6714 C-1 | 22A Balc Int | $22,950 | .19 |
| 6714 C-2 | 38R Balc Int | $25,950 | .21 |

**Bldg. No. 9**

| 6764 A-1 | 18R Terr Int | $19,950 | .15 |
| 6764 A-2 | 28R Terr Cor | $22,250 | .19 |
| 6764 B-1 | 28R Balc Int | $22,950 | .19 |
| 6764 B-2 | 28R Balc Int | $22,950 | .19 |
| 6764 C-1 | 28R Balc Int | $22,950 | .19 |
| 6764 C-2 | 38R Balc Cor | $23,250 | .21 |
| 6764 A-1 | 18R Terr Int | $18,950 | .16 |
| 6766 B-1 | 28R Balc Int | $22,950 | .19 |
| 6766 B-2 | 28R Balc Int | $22,950 | .19 |
| 6766 C-1 | 28R Balc Int | $22,950 | .19 |
| 6766 C-2 | 28R Balc Int | $22,950 | .19 |
| 6760 A-1 | 18R Terr Int | $18,950 | .16 |
| 6768 A-2 | 18R Terr Int | $18,950 | .16 |
| 6768 B-1 | 28R Balc Int | $22,250 | .19 |
| 6768 B-2 | 28R Balc Int | $22,950 | .19 |
| 6768 C-1 | 28R Balc Int | $22,950 | .19 |
| 6770 A-1 | 18R Terr Int | $18,950 | .16 |
| 6770 A-2 | 18R Terr Int | $18,950 | .16 |
| 6770 B-1 | 28R Balc Int | $22,950 | .19 |
| 6770 C-1 | 18R Balc Int | $19,500 | .16 |
| 6770 C-2 | 28R Balc Int | $22,950 | .19 |
| 6752 A-1 | 28R Terr Int | $21,250 | .19 |
| 6752 A-2 | 18R Terr Int | $18,950 | .16 |
| 6752 B-1 | 28R Balc Cor | $23,250 | .19 |
| 6752 C-1 | 28R Balc Int | $22,050 | .19 |
| 6752 C-2 | 38R Balc Int | $25,950 | .21 |

**Bldg. No. 10**

| 6703 A-1 | 28R Terr Cor | $23,250 | .19 |
| 6703 A-2 | 18R Terr Int | $18,950 | .16 |
| 6701 B-1 | 28R Balc Int | $22,950 | .19 |
| 6701 B-2 | 38R Balc Int | $25,950 | .21 |
| 6705 C-1 | 28R Balc Int | $22,950 | .19 |
| 6705 C-2 | 38R Balc Int | $25,950 | .21 |
| 6705 A-1 | 18R Terr Int | $18,950 | .16 |
| 6705 A-2 | 18R Balc Int | $19,500 | .16 |
| 6705 B-1 | 28R Balc Int | $22,950 | .19 |
| 6705 B-2 | 18R Balc Int | $19,500 | .22 |
| 6705 C-1 | 18R Balc Int | $19,500 | .16 |
| 6705 C-2 | 28R Balc Int | $22,950 | .19 |

4156  747

| UNIT NO. | UNIT TYPE | UNIT VALUE | PERCENT OWNERSHIP OF COMMON ELEMENTS |
|---|---|---|---|
| Bldg. No. 10 | 6707 A-1 | 1BR Terr Int | $18,950 | .16 |
| | 6707 A-2 | 3UR Terr Cor | $21,240 | .19 |
| | 6707 B-1 | 3UR Balc Int | $22,950 | .19 |
| | 6707 B-2 | 3A Balc Cnr | $21,250 | .19 |
| | 6707 C-1 | 3BR Balc Int | $22,950 | .19 |
| | 6707 C-2 | 3BR Balc Cor | $23,150 | .19 |

| UNIT NO. | UNIT TYPE | UNIT VALUE | PERCENT OWNERSHIP OF COMMON ELEMENTS |
|---|---|---|---|
| Bldg. No. 15 | 6737 A-1 | 1BR Terr Cor | $18,950 | .16 |
| | 6737 A-2 | 1BR Terr Int | $18,950 | .16 |
| | 6737 B-1 | 3BR Balc Cor | $21,250 | .19 |
| | 6737 B-2 | 3BR Balc Int | $20,950 | .21 |
| | 6737 C-1 | 3BR Balc Cor | $23,250 | .19 |
| | 6737 C-2 | 3CR Balc Int | $20,950 | .21 |
| | 6737 D-1 | 3AR Balc Cor | $23,750 | .19 |
| | 6737 D-2 | 3BR Balc Int | $25,950 | .19 |

| UNIT NO. | UNIT TYPE | UNIT VALUE | PERCENT OWNERSHIP OF COMMON ELEMENTS |
|---|---|---|---|
| Bldg. No. 11 | 6709 A-1 | 2BR Terr Cor | $23,350 | .19 |
| | 6709 A-2 | 1BR Terr Int | $18,950 | .16 |
| | 6709 B-1 | 3CR Balc Cor | $23,750 | .19 |
| | 6709 B-2 | 3CR Balc Int | $23,150 | .19 |
| | 6709 C-1 | 2ot Balc Cor | $21,150 | .18 |
| | 6709 C-2 | 3AR Balc Int | $23,950 | .21 |
| | 6711 A-1 | 1UR Terr Int | $18,950 | .16 |
| | 6711 A-2 | 1BR Terr Int | $18,950 | .16 |
| | 6711 B-1 | 1BR Balc Int | $19,500 | .16 |
| | 6711 B-2 | 2BR Balc Int | $21,950 | .19 |
| | 6711 C-1 | 3BR Balc Cor | $23,950 | .19 |
| | 6711 C-2 | 3AR Balc Int | $21,950 | .19 |
| | 6711 D-1 | 3BR Balc Int | $18,950 | .16 |
| | 6713 A-1 | 2BR Terr Int | $23,250 | .19 |
| | 6713 A-2 | 2ot Terr Cor | $21,950 | .19 |
| | 6713 B-1 | 3BR Balc Int | $23,250 | .19 |
| | 6713 C-1 | 2BR Balc Int | $21,950 | .19 |
| | 6713 C-2 | 3CR Balc Cor | $21,750 | .19 |

| UNIT NO. | UNIT TYPE | UNIT VALUE | PERCENT OWNERSHIP OF COMMON ELEMENTS |
|---|---|---|---|
| Bldg. No. 16 | 6739 A-1 | 1BR Terr Int | $18,950 | .16 |
| | 6739 A-2 | 1BR Terr Cor | $18,950 | .16 |
| | 6739 B-1 | 3BR Balc Int | $23,150 | .19 |
| | 6739 B-2 | 2BR Balc Cor | $21,150 | .19 |
| | 6739 C-1 | 2BR Balc Int | $20,950 | .19 |
| | 6739 C-2 | 2BR Balc Cor | $23,250 | .19 |
| | 6739 D-1 | 2BR Balc Int | $21,950 | .19 |
| | 6739 D-2 | 3BR Balc Int | $23,150 | .19 |
| | 6741 A-1 | 1BR Terr Int | $18,950 | .16 |
| | 6741 A-2 | 3BR Balc Int | $23,500 | .16 |
| | 6741 B-1 | 3UR Terr Cor | $19,950 | .16 |
| | 6741 B-2 | 2BR Balc Int | $13,500 | .16 |
| | 6741 C-1 | 2BR Balc Int | $20,950 | .19 |
| | 6741 C-2 | 3BR Balc Cor | $21,950 | .19 |
| | 6741 D-1 | 2BR Balc Int | $22,950 | .19 |
| | 6741 D-2 | 2UR Balc Int | $19,500 | .16 |
| | 6743 A-1 | 1BR Terr Cor | $18,950 | .16 |
| | 6743 A-2 | 1BR Terr Int | $18,950 | .16 |
| | 6743 B-1 | 3BR Balc Cor | $23,250 | .19 |
| | 6743 B-2 | 3BR Balc Int | $20,950 | .21 |
| | 6743 C-1 | 3BR Balc Cor | $23,250 | .19 |
| | 6743 C-2 | 3BR Balc Int | $20,950 | .21 |
| | 6743 D-1 | 3AR Balc Cor | $25,950 | .19 |
| | 6743 D-2 | 3BR Balc Int | $20,950 | .21 |

| UNIT NO. | UNIT TYPE | UNIT VALUE | PERCENT OWNERSHIP OF COMMON ELEMENTS |
|---|---|---|---|
| Bldg. No. 12 | 6715 A-1 | 1BR Terr Int | $18,950 | .16 |
| | 6715 A-2 | 1BR Terr Cor | $18,950 | .16 |
| | 6715 B-1 | 1UR Balc Int | $21,950 | .19 |
| | 6715 B-2 | 3UR Balc Cor | $22,950 | .19 |
| | 6715 C-1 | 3BR Balc Int | $23,250 | .19 |
| | 6715 C-2 | 2BR Balc Int | $22,950 | .19 |
| | 6715 D-1 | 2ot Balc Cor | $23,250 | .19 |
| | 6715 D-2 | 2ot Balc Int | $18,950 | .16 |
| | 6717 A-1 | 1BR Terr Int | $18,950 | .16 |
| | 6717 A-2 | 1BR Balc Cor | $19,500 | .14 |
| | 6717 B-1 | 2BR Balc Int | $19,500 | .16 |
| | 6717 B-2 | 2BR Balc Int | $24,500 | .16 |
| | 6717 C-1 | 1BR Balc Int | $28,950 | .16 |
| | 6717 C-2 | 2ot Balc Cor | $21,650 | .18 |
| | 6719 A-1 | 1BR Terr Cor | $18,950 | .16 |
| | 6719 A-2 | 1UR Terr Int | $18,950 | .16 |
| | 6719 B-1 | 2BR Balc Int | $23,500 | .19 |
| | 6719 B-2 | 3BR Balc Int | $21,150 | .21 |
| | 6719 C-1 | 2AA Balc Cor | $23,250 | .19 |
| | 6719 C-2 | 3CR Balc Int | $25,950 | .21 |

| UNIT NO. | UNIT TYPE | UNIT VALUE | PERCENT OWNERSHIP OF COMMON ELEMENTS |
|---|---|---|---|
| Bldg. No. 17 | 6745 A-1 | 1BR Terr Int | $18,950 | .16 |
| | 6745 A-2 | 1BR Terr Cor | $15,950 | .16 |
| | 6745 B-1 | 2BR Balc Int | $23,150 | .19 |
| | 6745 B-2 | 2BR Balc Cor | $20,950 | .19 |
| | 6745 C-1 | 2BR Balc Int | $23,250 | .19 |
| | 6745 C-2 | 2BR Balc Cor | $23,150 | .19 |
| | 6745 D-1 | 2BR Balc Int | $20,950 | .19 |
| | 6747 A-1 | 1BR Terr Int | $18,950 | .16 |
| | 6747 A-2 | 1BR Terr Cor | $18,950 | .16 |
| | 6747 B-1 | 3BR Balc Int | $23,600 | .19 |
| | 6747 B-2 | 2BR Balc Int | $22,950 | .16 |
| | 6747 C-1 | 2BR Balc Cor | $23,500 | .19 |
| | 6747 C-2 | 2BR Balc Int | $19,900 | .16 |
| | 6747 D-1 | 2BR Balc Int | $22,950 | .19 |
| | 6749 A-1 | 1UR Terr Int | $18,950 | .16 |
| | 6749 A-2 | 1BR Terr Int | $18,950 | .16 |
| | 6749 B-1 | 2BR Balc Int | $23,250 | .18 |
| | 6749 B-2 | 3BR Balc Int | $23,250 | .19 |
| | 6749 C-1 | 3BR Balc Int | $19,500 | .16 |
| | 6749 C-2 | 2AB Balc Int | $22,950 | .19 |
| | 6749 D-1 | 1BR Balc Int | $18,950 | .16 |

| UNIT NO. | UNIT TYPE | UNIT VALUE | PERCENT OWNERSHIP OF COMMON ELEMENTS |
|---|---|---|---|
| Bldg. No. 13 | 6721 A-1 | 1BR Terr Int | $18,950 | .16 |
| | 6721 A-2 | 1UR Terr Int | $18,950 | .16 |
| | 6721 B-1 | 3BR Balc Int | $23,950 | .19 |
| | 6721 B-2 | 2CR Balc Cor | $21,150 | .19 |
| | 6721 C-1 | 2BR Balc Int | $23,150 | .19 |
| | 6721 C-2 | 3BR Balc Int | $22,950 | .19 |
| | 6721 D-1 | 2BR Balc Int | $23,150 | .19 |
| | 6721 D-2 | 2BR Balc Cor | $23,100 | .19 |

| UNIT NO. | UNIT TYPE | UNIT VALUE | PERCENT OWNERSHIP OF COMMON ELEMENTS |
|---|---|---|---|
| Bldg. No. 18 | 6751 A-1 | 1BR Terr Int | $18,950 | .16 |
| | 6751 A-2 | 1BR Terr Cor | $18,950 | .16 |
| | 6751 B-1 | 2BR Balc Int | $23,250 | .19 |
| | 6751 B-2 | 2BR Balc Int | $23,150 | .19 |
| | 6751 C-1 | 2BR Balc Cor | $23,250 | .19 |
| | 6751 C-2 | 2BR Balc Int | $23,150 | .19 |
| | 6751 D-1 | 2BR Balc Int | $23,150 | .19 |
| | 6753 A-1 | 1BR Terr Int | $18,950 | .16 |
| | 6753 A-2 | 1UR Terr Int | $18,950 | .16 |
| | 6753 B-1 | 1BR Balc Int | $18,950 | .16 |
| | 6753 B-2 | 2BR Balc Cor | $23,250 | .19 |
| | 6753 C-1 | 2BR Balc Int | $23,150 | .19 |
| | 6753 C-2 | 2BR Balc Int | $23,150 | .16 |
| | 6755 A-1 | 1BR Terr Int | $18,950 | .16 |
| | 6755 A-2 | 1BR Terr Int | $18,950 | .16 |
| | 6755 B-1 | 2BR Balc Cor | $23,250 | .19 |
| | 6755 B-2 | 2BR Balc Int | $23,150 | .21 |
| | 6755 C-1 | 2PA Balc Cor | $23,250 | .19 |
| | 6755 C-2 | 3BR Balc Int | $23,150 | .21 |
| | 6755 D-1 | 2AR Balc Cor | $25,950 | .19 |
| | 6755 D-2 | 3BR Balc Int | $25,950 | .21 |

| UNIT NO. | UNIT TYPE | UNIT VALUE | PERCENT OWNERSHIP OF COMMON ELEMENTS |
|---|---|---|---|
| Bldg. No. 13 | 6723 A-1 | 1BR Terr Int | $18,950 | .16 |
| | 6723 A-2 | 1UR Terr Int | $18,950 | .16 |
| | 6723 B-1 | 3BR Balc Int | $19,500 | .16 |
| | 6723 B-2 | 2BR Balc Int | $23,150 | .19 |
| | 6723 C-1 | 1UR Balc Int | $19,500 | .16 |
| | 6723 C-2 | 3BR Balc Int | $22,950 | .19 |
| | 6723 D-1 | 1BR Balc Int | $19,500 | .16 |
| | 6723 D-2 | 1BR Balc Int | $22,950 | .16 |
| | 6725 A-1 | 1BR Terr Cor | $18,950 | .16 |
| | 6725 A-2 | 1BR Terr Int | $18,950 | .16 |
| | 6725 B-1 | 3BR Balc Int | $23,150 | .19 |
| | 6725 B-2 | 3BR Balc Cor | $25,950 | .19 |
| | 6725 C-1 | 2BR Balc Int | $23,250 | .19 |
| | 6725 C-2 | 3AR Balc Cor | $25,950 | .19 |
| | 6725 D-1 | 2BR Balc Int | $21,150 | .19 |
| | 6725 D-2 | 3AR Balc Int | $21,950 | .21 |

| UNIT NO. | UNIT TYPE | UNIT VALUE | PERCENT OWNERSHIP OF COMMON ELEMENTS |
|---|---|---|---|
| Bldg. No. 19 | 6757 A-1 | 1BR Terr Int | $18,950 | .16 |
| | 6757 A-2 | 1BR Terr Cor | $18,950 | .16 |
| | 6757 B-1 | 2BR Balc Int | $23,250 | .19 |
| | 6757 B-2 | 2CR Balc Cor | $23,250 | .19 |
| | 6757 C-1 | 2CR Balc Int | $21,150 | .19 |
| | 6757 C-2 | 2BR Balc Cor | $23,150 | .19 |
| | 6759 A-1 | 1UR Terr Int | $18,950 | .16 |
| | 6759 A-2 | 1BR Terr Cor | $18,950 | .16 |
| | 6759 B-1 | 3BR Balc Int | $18,950 | .16 |
| | 6759 B-2 | 2BR Balc Int | $21,150 | .19 |
| | 6759 C-1 | 2BR Balc Int | $21,150 | .16 |
| | 6759 C-2 | 2BR Balc Int | $22,950 | .16 |

| UNIT NO. | UNIT TYPE | UNIT VALUE | PERCENT OWNERSHIP OF COMMON ELEMENTS |
|---|---|---|---|
| Bldg. No. 14 | 6727 A-1 | 1BR Terr Int | $19,950 | .16 |
| | 6727 A-2 | 1UR Terr Int | $18,950 | .16 |
| | 6727 B-1 | 2BR Balc Int | $22,950 | .19 |
| | 6727 B-2 | 1BR Balc Int | $21,650 | .16 |
| | 6727 C-1 | 2BR Balc Int | $23,150 | .19 |
| | 6727 C-2 | 3BR Balc Int | $22,950 | .19 |
| | 6727 D-1 | 3BR Balc Cor | $23,750 | .19 |
| | 6727 D-2 | 2BR Balc Int | $18,950 | .16 |
| | 6729 A-1 | 1BR Terr Int | $19,950 | .16 |
| | 6729 A-2 | 1BR Terr Int | $18,950 | .16 |
| | 6729 B-1 | 3BR Balc Int | $19,500 | .16 |
| | 6729 B-2 | 2BR Balc Int | $27,950 | .16 |
| | 6729 C-1 | 3BR Balc Int | $19,500 | .16 |
| | 6729 C-2 | 2BR Balc Int | $22,950 | .19 |
| | 6729 D-1 | 1BR Balc Int | $19,950 | .16 |
| | 6729 D-2 | 2BR Balc Int | $22,950 | .19 |
| | 6731 A-1 | 1BR Terr Cor | $18,950 | .16 |
| | 6731 A-2 | 1BR Terr Int | $18,950 | .16 |
| | 6731 B-1 | 3BR Balc Cor | $23,250 | .19 |
| | 6731 B-2 | 3BR Balc Int | $23,150 | .19 |
| | 6731 C-1 | 1AR Balc Cor | $23,250 | .19 |
| | 6731 C-2 | 3BR Balc Int | $25,950 | .19 |
| | 6731 D-1 | 2BR Balc Cor | $25,950 | .19 |
| | 6731 D-2 | 3BR Balc Int | $25,950 | .21 |

| UNIT NO. | UNIT TYPE | UNIT VALUE | PERCENT OWNERSHIP OF COMMON ELEMENTS |
|---|---|---|---|
| Bldg. No. 20 | 6763 A-1 | 1BR Terr Int | $18,950 | .16 |
| | 6763 A-2 | 1BR Terr Cor | $18,950 | .16 |
| | 6763 B-1 | 2BR Balc Int | $22,950 | .19 |
| | 6763 B-2 | 2BR Balc Int | $22,950 | .19 |
| | 6763 C-1 | 2BR Balc Cor | $23,750 | .19 |
| | 6763 C-2 | 3BR Balc Int | $23,150 | .19 |

| UNIT NO. | UNIT TYPE | UNIT VALUE | PERCENT OWNERSHIP OF COMMON ELEMENTS |
|---|---|---|---|
| Bldg. No. 15 | 6733 A-1 | 1BR Terr Int | $18,950 | .16 |
| | 6733 A-2 | 1BR Terr Cor | $18,950 | .16 |
| | 6733 B-1 | 2BR Balc Int | $23,250 | .19 |
| | 6733 B-2 | 2BR Balc Int | $23,150 | .19 |
| | 6733 C-1 | 2BR Balc Cor | $23,250 | .19 |
| | 6733 C-2 | 3BR Balc Int | $23,150 | .19 |
| | 6733 D-1 | 1BR Terr Int | $18,950 | .16 |
| | 6735 A-1 | 1BR Balc Int | $18,950 | .16 |
| | 6735 A-2 | 1BR Balc Int | $18,500 | .16 |
| | 6735 B-1 | 2BR Balc Int | $22,950 | .19 |
| | 6735 B-2 | 3BR Balc Int | $22,600 | .19 |
| | 6735 C-1 | 1BR Balc Int | $18,950 | .16 |
| | 6735 C-2 | 2BR Balc Int | $22,950 | .19 |

62

4156   753

**Bldg. No. 20**

| UNIT NO. | UNIT TYPE | UNIT VALUE | PERCENT OWNERSHIP OF COMMON ELEMENTS |
|---|---|---|---|
| 6765 A-1 | 1BR Terr Int | $18,950 | .16 |
| 6765 A-2 | 1BR Terr Int | $18,950 | .16 |
| 6765 B-1 | 2BR Balc Int | $22,950 | .19 |
| 6765 B-2 | 2BR Balc Int | $22,950 | .19 |
| 6765 C-1 | 2BR Balc Int | $22,950 | .19 |
| 6765 C-2 | 2BR Balc Int | $22,950 | .19 |
| 6765 D-1 | 2BR Balc Cor | $23,250 | .19 |
| 6765 D-2 | 2BR Balc Cor | $23,250 | .19 |
| 6767 A-1 | 1BR Terr Int | $18,950 | .16 |
| 6767 A-2 | 1BR Terr Int | $18,950 | .16 |
| 6767 B-1 | 2BR Balc Int | $22,950 | .19 |
| 6767 B-2 | 2BR Balc Int | $22,950 | .19 |
| 6767 C-1 | 2BR Balc Int | $22,950 | .19 |
| 6767 C-2 | 2BR Balc Int | $22,950 | .19 |
| 6767 D-1 | 2BR Balc Cor | $23,250 | .19 |
| 6767 D-2 | 2BR Balc Cor | $23,250 | .19 |
| 6769 A-1 | 1BR Terr Cor | $18,950 | .16 |
| 6769 A-2 | 1BR Terr Cor | $18,950 | .16 |
| 6769 B-1 | 2BR Balc Int | $22,950 | .19 |
| 6769 B-2 | 2BR Balc Int | $22,950 | .19 |
| 6769 C-1 | 2BR Balc Int | $22,950 | .19 |
| 6769 C-2 | 2BR Balc Int | $22,950 | .19 |
| 6769 D-1 | 2BR Balc Cor | $23,250 | .19 |
| 6769 D-2 | 2BR Balc Cor | $23,250 | .19 |
| 6771 A-1 | 1BR Terr Int | $18,950 | .16 |
| 6771 A-2 | 1BR Terr Int | $18,950 | .16 |
| 6771 B-1 | 2BR Balc Int | $22,950 | .19 |
| 6771 B-2 | 2BR Balc Int | $22,950 | .19 |
| 6771 C-1 | 2BR Balc Int | $22,950 | .19 |
| 6771 C-2 | 2BR Balc Int | $22,950 | .19 |
| 6771 D-1 | 2BR Balc Cor | $23,250 | .19 |
| 6771 D-2 | 2BR Balc Cor | $23,250 | .19 |
| 6773 A-1 | 1BR Terr Int | $18,950 | .16 |
| 6773 A-2 | 1BR Terr Int | $18,950 | .16 |
| 6773 B-1 | 2BR Balc Int | $22,950 | .19 |
| 6773 B-2 | 2BR Balc Int | $22,950 | .19 |
| 6773 C-1 | 2BR Balc Int | $22,950 | .19 |
| 6773 C-2 | 2BR Balc Int | $22,950 | .19 |
| 6773 D-1 | 2BR Balc Cor | $23,250 | .19 |
| 6773 D-2 | 2BR Balc Cor | $23,250 | .19 |
| 6775 A-1 | 1BR Terr Cor | $18,950 | .16 |
| 6775 A-2 | 1BR Terr Cor | $18,950 | .16 |
| 6775 B-1 | 2BR Balc Int | $22,950 | .19 |
| 6775 B-2 | 2BR Balc Int | $22,950 | .19 |
| 6775 C-1 | 2BR Balc Int | $22,950 | .19 |
| 6775 C-2 | 2BR Balc Int | $22,950 | .19 |
| 6775 D-1 | 2BR Balc Cor | $23,250 | .19 |
| 6775 D-2 | 2BR Balc Cor | $23,250 | .19 |
| 6777 A-1 | 1BR Terr Cor | $18,950 | .16 |
| 6777 A-2 | 1BR Terr Cor | $18,950 | .16 |
| 6777 B-1 | 2BR Balc Int | $22,950 | .19 |
| 6777 B-2 | 2BR Balc Int | $22,950 | .19 |
| 6777 C-1 | 2BR Balc Int | $22,950 | .19 |
| 6777 C-2 | 2BR Balc Int | $22,950 | .19 |
| 6777 D-1 | 2BR Balc Cor | $23,250 | .19 |
| 6777 D-2 | 2BR Balc Cor | $23,250 | .19 |

**Bldg. No. 21**

| UNIT NO. | UNIT TYPE | UNIT VALUE | PERCENT OWNERSHIP OF COMMON ELEMENTS |
|---|---|---|---|
| 6779 A-1 | 1BR Terr Int | $18,950 | .16 |
| 6779 A-2 | 1BR Terr Int | $18,950 | .16 |
| 6779 B-1 | 2BR Balc Int | $22,950 | .19 |
| 6779 B-2 | 2BR Balc Int | $22,950 | .19 |
| 6779 C-1 | 2BR Balc Int | $22,950 | .19 |
| 6779 C-2 | 2BR Balc Int | $22,950 | .19 |
| 6779 D-1 | 2BR Balc Cor | $23,250 | .19 |
| 6779 D-2 | 2BR Balc Cor | $23,250 | .19 |
| 6781 A-1 | 1BR Terr Int | $18,950 | .16 |
| 6781 A-2 | 1BR Terr Int | $18,950 | .16 |
| 6781 B-1 | 2BR Balc Int | $22,950 | .19 |
| 6781 B-2 | 2BR Balc Int | $22,950 | .19 |
| 6781 C-1 | 2BR Balc Int | $22,950 | .19 |
| 6781 C-2 | 2BR Balc Int | $22,950 | .19 |
| 6781 D-1 | 2BR Balc Cor | $23,250 | .19 |
| 6781 D-2 | 2BR Balc Cor | $23,250 | .19 |
| 6783 A-1 | 1BR Terr Int | $18,950 | .16 |
| 6783 A-2 | 1BR Terr Int | $18,950 | .16 |
| 6783 B-1 | 2BR Balc Int | $22,950 | .19 |
| 6783 B-2 | 2BR Balc Int | $22,950 | .19 |
| 6783 C-1 | 2BR Balc Int | $22,950 | .19 |
| 6783 C-2 | 2BR Balc Int | $22,950 | .19 |
| 6783 D-1 | 2BR Balc Cor | $23,250 | .19 |
| 6783 D-2 | 2BR Balc Cor | $23,250 | .19 |
| 6785 A-1 | 1BR Terr Cor | $18,950 | .16 |
| 6785 A-2 | 1BR Terr Cor | $18,950 | .16 |
| 6785 B-1 | 2BR Balc Int | $22,950 | .19 |
| 6785 B-2 | 2BR Balc Int | $22,950 | .19 |
| 6785 C-1 | 2BR Balc Int | $22,950 | .19 |
| 6785 C-2 | 2BR Balc Int | $22,950 | .19 |
| 6785 D-1 | 2BR Balc Cor | $23,250 | .19 |
| 6785 D-2 | 2BR Balc Cor | $23,250 | .19 |

TOTAL VALUE   $12,132,400   100.3

LEGEND:

| | |
|---|---|
| 1BR Terr Int | - One bedroom, interior unit with terrace |
| 1BR Terr Cor | - One bedroom, corner unit with terrace |
| 1BR Balc Int | - One bedroom, interior unit with balcony |
| 1BR Balc Cor | - One bedroom, corner unit with balcony |
| 2BR Terr Int | - Two bedroom, interior unit with terrace |
| 2BR Terr Cor | - Two bedroom, corner unit with terrace |
| 2BR Balc Int | - Two bedroom, interior unit with balcony |
| 2BR Balc Cor | - Two bedroom, corner unit with balcony |
| 3BR Balc Int | - Three bedroom, interior unit with balcony |

NOTE:   Percentage ownership in the common elements is stated to the nearest one-hundredth of one percent. These percentages are to be used as a basis for voting according to the by-laws and for assessing of charges as provided for in Article III of the By-laws of Wilson Bridge Condominium, Inc. In the event of a partition or other distribution of the property, percentages shall be recalculated to the nearest ten-thousandth of one per-cent according to the basic values stated herein.

4156   759

1U5U1. 8/8

Dec 12  3 37 PM '95

CLERK OF THE
CIRCUIT COURT

WILSON BRIDGE CONDOMINIUM

SECOND AMENDED & RE-STATED

BY-LAWS

OF

BROOKSIDE PARK CONDOMINIUM, INC.

(FORMERLY KNOWN AS THE
WILSON BRIDGE CONDOMINIUM, INC. and

BROOKSIDE PARK COUNCIL OF
CONDOMINIUM CO-OWNERS, INC.)

IMP FD SURE $        2.00
RECORDING FEE       75.00
TOTAL               77.00
Rest FG02   Rcpt # 13694
VJ    DLK    Blk # 2956
Dec 12: 1995        03:35 PM

10501. 879

1    SECOND AMENDED & RE-STATED

2    BY-LAWS

3    BROOKSIDE PARK CONDOMINIUM, INC.

4    ARTICLE I

5    <u>NAME AND LOCATION</u>

6    <u>Section 1</u>.    <u>Name and Location</u>.    The name of this Corporation is BROOKSIDE PARK

7    CONDOMINIUM, INC., having originally been incorporated as Wilson Bridge Condominiums,

8    Inc., and having changed its incorporated name within the State of Maryland, to

9    Brookside Park Council of Condominium Co-Owners, Inc., and to current name to Brookside

10   Park Condominium, Inc.    Its principal office is located at 500 Wilson Bridge Drive,

11   Oxon Hill, Maryland   20745.

12   ARTICLE II

13   <u>DEFINITIONS</u>

14   <u>Section 1</u>.    <u>Master Deed</u>.    "Master Deed" as used herein means that certain Master Deed

15   made the 7th day of November 1972, by RAJO, INC., a Maryland corporation, pursuant to

16   <u>Real Property, Title II, Section 124 "Rules of Construction", Annotated Code of</u>

17   <u>Maryland</u>, by which certain described premises (including land) are submitted to a

18   condominium property regime and which Master Deed is recorded among the Land Records of

19   Prince George's County, Maryland, immediately prior hereto and to which these By-Laws

20   are appended as Exhibit "B".

21   <u>Section 2</u>.    <u>Name</u>.    Wilson Bridge Condominium, Inc., and Brookside Park Council of

22   Condominium Co-Owners, Inc., and Brookside Park Condominium, Inc., shall be synonymous

23   in their usage throughout these By-Laws and may be hereinafter referred to as 'the

24   Condominium' or 'the Corporation'.

10501. 880

2

25 <u>Section 3.</u>  <u>Management Agency</u>.  Management Agency and Management Agent shall be
26 synonymous in their usage throughout these By-Laws.  Either term shall refer to a
27 licensed professional Management Agency.  (Reference:  Section 2A, Article V, these By-
28 Laws).

29 <u>Section 4.</u>  <u>Other Definitions</u>.  Unless it is plainly evident from the context that a
30 different meaning is intended, all other terms used herein shall have the same meaning
31 as they are defined to have in the Master Deed or in <u>Real Property Annotated Code of</u>
32 <u>Maryland</u>.

33                                       ARTICLE III

34                                       <u>MEMBERSHIP</u>

35 <u>Section 1.</u>  <u>Members.</u>

36        A.    Every person, group of persons, corporation, trust or other legal
37 entity, or any combination thereof, which owns a condominium unit within the
38 condominium project shall be a member of the Corporation.  Every unit owner shall be a
39 member of the Council of Unit Owners.  Unit owner means the person or combination of
40 persons, who hold legal title to a unit.  A mortgagee or a trustee designated under a
41 Deed of Trust, as such, may not be deemed a unit owner.

42        B.    Each member shall be entitled to cast one (1) vote for each
43 condominium unit owned.  If two or more persons own a unit, they will decide among
44 themselves how to vote the one (1) vote attributable to that unit.  Percentage
45 interests in ownership of Common Elements shall not be determinative of votes to be
46 cast by unit owners.

47        C.    The Corporation shall maintain a current roster of names and
48 addresses of each unit owner to which notice of owners meetings and of meetings of the
49 Board of Directors shall be sent at least annually.

50      D.    Each unit owner shall furnish the council of unit owners with his
51  name and current mailing address.  A unit owner may not vote at meetings of the unit
52  owners until this information is furnished.

53      E.    The right of a unit owner to sell, transfer or otherwise convey his
54  or her unit in a condominium shall not be subject to any right of first refusal or
55  similar restriction.

56  **Section 2.**  **Lien.**  The Corporation shall have liens on the outstanding regular
57  memberships in order to secure payment of any sums which may become due from the
58  holders thereof to the Corporation for any reason whatsoever.

59  **Section 3.**  **Liquidation Rights.**  In the event of any voluntary or involuntary
60  dissolution of the Corporation, each member of the Corporation shall be entitled to
61  receive out of the assets of the Corporation available for distribution to the members
62  an amount equal to that proportion of such assets which the value of his condominium
63  unit bears to the value of the entire project, said values to be those set forth on
64  Exhibit "C" attached to the Master Deed.

65                          ARTICLE IV

66                        MEETING OF MEMBERS

67  **Section 1.**  **Place of Meeting.**  Meetings of the membership shall be held at the
68  principal office or place of business of the Corporation or at such other suitable
69  place convenient to the membership as may be designated by the Board of Directors.

70  **Section 2.**  **Annual Meetings.**  The Annual Meeting of the Corporation shall be held the
71  3rd Wednesday of April each year or at such other time as soon thereafter as is
72  practicable, to be scheduled by the Board of Directors.  At such meeting there shall be
73  elected by the ballot of the members eligible to vote a Board of Directors in
74  accordance with the requirements of Section 4 of Article V of these By-Laws.  The
75  members may also transact such other business of the Corporation as may properly come
76  before them.

10501. 882

4

77  **Section 3.   Special Meetings.**  It shall be the duty of the President to call a Special
78  Meeting of the members as directed by resolution of the Board of Directors or upon a
79  petition signed by members representing at least twenty five percent (25%) of the total
80  votes entitled to be cast from the total membership having been presented to the
81  Secretary.   The notice of any Special Meeting shall state the time and place of such
82  meeting and purpose thereof.   No business shall be transacted at a Special Meeting
83  except as stated in the notice.

84  **Section 4.   Notice of Meetings.**  It shall be the duty of the Secretary to mail a notice
85  of each annual or special meeting, stating the purpose thereof as well as the time and
86  place where it is to be held, to each member of record, at their address as it appears
87  on the membership books of the Corporation, or if no such address appears, at his last
88  known place of address, not less then ten (10), but not more then ninety (90) days,
89  prior to such meeting.   Service may also be accomplished by the delivery of any such
90  notice to the member at his dwelling unit or last known address.   Notice by either such
91  method shall be considered as notice served.

92  **Section 5.   Quorum.**  The presence, either in person or by proxy, of members
93  representing at least twenty-five percent (25%) of the total votes eligible to be cast
94  (computed in accordance with the provisions of Section 7 of this Article IV), shall
95  constitute a quorum for the transaction of business at all meetings of members.   If the
96  number of votes present at a meeting drops below the quorum and question of a lack of a
97  quorum is raised, no business may be transacted thereafter.

98  **Section 6.   Adjourned Meetings.**

99         A.   If any meeting of members cannot be organized because a quorum has
100 not attended, the members who are present either in person or by proxy, may, except as
101 otherwise provided by Law, adjourn the meeting to a time not less than ten (10) days
102 notice, and not more then ninety (90) days from the time the original meeting was
103 called.   Notice of the meeting will be provided to the unit owners pursuant to the
104 Maryland Condominium Act, Section 11-109 (c)(4).

105        B.   If at any Meeting, of the Council Of Unit Owners, a quorum is not
106 established, Section 5-206 of the Corporations and Associations Article of the Maryland

5

107  Code, may be invoked.  These authorities allow a continuation of the Annual Meeting to
108  be called at a later date, and to hold the Meeting of the Council of Unit Owners with
109  owners present in person or by PROXY being accepted as a quorum., provided that the
110  provisions of this section are complied with.

111          C.    If at any Meeting of the Council of Unit Owners, a quorum is not
112  established, therefore, Directors cannot be elected, Members of the Board of Directors
113  serving at that time, shall continue to manage the business and affairs of the
114  corporation until such time as their successors are elected and qualify.

115  **Section 7.    Votes.**

116          A.    To establish a quorum (Section 5 this Article), twenty five percent
117  (25%) of the total eligible votes (one vote per unit) shall constitute a quorum for all
118  voting purposes, except as authorized by Article IV, Section 6. Titled: Adjourned
119  Meetings, of these By-Laws.

120          B.    The vote of the members representing the majority of the eligible
121  votes present in person or by proxy and entitled to be cast shall decide any question
122  brought before any meeting, unless the question pertains to By-Law changes or Special
123  Assessments.  Unless the Secretary of the corporation is given written notice to the
124  contrary, votes by members shall be counted as follows:

125          (a)    If only one member votes in person or by proxy, his vote binds
126  all members, and if more than one vote, the vote of the majority binds all.

127          (b)    If more than one person votes and the vote is evenly split on
128  any particular matter:

129          (i)    Each faction may vote the membership in question
130  proportionally or;

131          (ii)  Any person voting the membership or any beneficiary may
132  apply to a court of competent jurisdiction to appoint an additional person to act with
133  the person voting the membership and the membership shall then be voted as determined
134  by a majority of those persons and the person appointed by the court.

10501. 884

6

135       C.   **Eligible Votes**.  Only those members who are not more than thirty (30)
136 days delinquent in any payment due the Corporation shall be eligible to vote and are
137 considered votes entitled to be cast.

138 **Section 8**.  **Proxies**.  A member may appoint any other member, who is an eligible voter,
139 as his proxy.  Any proxy must be filed with the Secretary (or designated
140 representative) before the appointed time and/or at time at which the meeting is
141 actually called to order by the presiding officer.

142       A.   A proxy is effective only for a maximum period of 180 days following
143 its issuance.

144       B.   Any proxy may be revoked, in writing, at any time at the pleasure of
145 the unit owner or unit owners executing the proxy.  Request to revoke a proxy must be
146 addressed to the Corporate Secretary.

147       C.   Any proxy not appointed to vote as directed by a unit owner may only
148 be appointed for purposes of meeting quorums and to vote for matters of business before
149 the council of unit owners, other than an election of officers and members of the Board
150 of Directors.

151       D.   Only a unit owner voting in person or a proxy voting for candidates
152 designated by a unit owner may vote for members of the Board of Directors.

153                         ARTICLE V

154                         **DIRECTORS**

155 **Section 1**.  **Number and Qualifications**.  The affairs of the Corporation shall be
156 governed by the Board of Directors composed of five (5) members.  Members shall be
157 eligible voters, as defined in Section 7 of Article IV of these By-Laws, to be elected
158 to the Board of Directors, and shall maintain this status during their tenure in order
159 to be considered a Director in good standing and eligible to vote as a Director on any
160 and all business coming before the Board of Directors.

TW501. 885

7

161 **Section 2.**  **Powers and Duties.**  The Board of Directors shall have all the powers and
162 duties necessary for the administration of the affairs of the Corporation and may do
163 all such acts and things as are not by law or by these By-Laws directed to be exercised
164 and done by the members.  The powers and duties of the Board of Directors shall
165 include, but not be limited to the following:

166           A.   To provide for the care, upkeep and surveillance of the project and
167 its Common Elements and services in a manner consistent with the provisions of these
168 By-Laws and the Master Deed;

169           B.   To establish and provide for the collection of assessments and/or
170 carrying charges from the members and for the assessment and/or enforcement of liens
171 therefor in a manner consistent with provision of the By-Laws and the Master Deed;

172           C.   To provide for the designation, hiring and/or dismissal of the
173 personel necessary for the good working order of the project and for the proper care of
174 the Common Elements and to provide services for the project in a manner consistent with
175 the provisions of these By-Laws and the Master Deed;

176           D.   To promulgate the enforcement of such rules and regulations and such
177 restrictions or requirements as may be deemed proper respecting the use, occupancy and
178 maintenance of the project and the use of the Common Elements as are designated to
179 prevent unreasonable interference with the use and occupancy of the project and of the
180 Common Elements by the members, all of which shall be consistent with the provisions of
181 these By-Laws and the Master Deed; and

182           E.   To authorize, at their discretion, the payment of patronage refunds
183 from residual receipts when and as reflected in the annual report.

184 **Section 3.**  **Management Agency.**  The Board of Directors shall employ for the Corporation
185 a licensed professional Management Agency (the "Management Agent") at a rate of
186 compensation established by the Board of Directors to perform such duties and services
187 as the Board of Directors shall from time to time authorize in writing.  The
188 Corporation (Board of Directors) shall not employ any new Management Agency without
189 thirty (30) days prior written notice to the Corporation members (owners).

10501. 886

8

190 <u>Section 4</u>.    <u>Election and Term of Office</u>.

191            A.    Directors shall be elected for terms of three (3) years.  However, if
192 at any time it is necessary to replace (or elect) the entire five member Board, the
193 following formula for terms of office will apply:

194            One Director            Highest Number of Votes will be elected for a
195                                     term of three (3) years.

196            Two Directors           Next two highest number of votes will be
197                                     elected for a term of two (2) years.

198            Two Directors           Next two highest number of votes will be
199                                     elected for a term of one (1) year.

200            B.    The utilization of the above formula is for the express purpose of
201 establishing and maintaining a rotation of Directors serving staggered terms so as to
202 maintain continuity and experience on the Board of Directors.

203            C.    A unit owner may nominate himself or any other person to be an
204 officer or member of the Board of Directors.  A call for nominations shall be sent to
205 all unit owners not less than 45 days before notice of an election is sent.  Only
206 nominations made at least 15 days before notice of an election shall be listed on the
207 election ballot.  Candidates shall be listed on the ballot in alphabetical order, with
208 no indicated candidate preference.  Nominations may be made from the floor at the
209 meeting at which the election to the board is held.

210            D.    If at any Annual meeting, a quorum is not established, therefore,
211 Directors cannot be elected, Members of the Board of Directors serving at that time,
212 regardless of expiration of term, will continue to serve until such time as
213 replacements are elected.

214 <u>Section 5</u>.    <u>Vacancies</u>.  Vacancies in the Board of Directors caused by any reason other
215 than the removal of a Director by a vote of the membership shall be filled by vote of
216 the majority of the remaining directors, even though they may constitute less than a

9

217 quorum; and each person so elected shall be a Director until a successor is elected by
218 the members at the next annual meeting to serve out the unexpired portion of the term.

219 **Section 6.** <u>Removal of Directors</u>.

220         A.    At a regular or special meeting of the owners, duly called, any
221 director may be removed, with cause or without cause, by an affirmative vote of a
222 majority of those votes eligible to be cast (as determined by Section 7 of Article IV
223 these By-Laws) and a successor(s) may then and there be elected to fill the vacancy
224 thus created by the affirmative majority vote of those votes eligible to be cast.  The
225 entire Board of Directors shall resign within 30 days upon receipt of a petition
226 representing thirty five percent (35%) of the total votes eligible to be cast of the
227 total membership, eligible to cast votes, requesting this action and a Special Meeting
228 will be duly called coinciding with the resignations to elect a new Board.

229 **Section 7.** <u>Compensation</u>.  No compensation shall be paid to Directors for their
230 services as Directors.  However, Directors may be reimbursed for expenses incurred in
231 the performance of their duties.

232 **Section 8.** <u>Organization Meeting</u>.  The first meeting of a newly elected Board of
233 Directors shall be held within ten (10) days of election at such place as shall be
234 fixed by the Directors at the meeting at which such Directors were elected, and no
235 notice shall be necessary to the newly elected Directors in order legally to constitute
236 such meeting, provided a majority of the whole Board of Directors shall be present.

237 **Section 9.** <u>Regular Meetings</u>.  Regular meeting of the Board of Directors may be held at
238 such time and place as shall be determined, from time to time, by a majority of the
239 Directors, but at least four (4) such meetings shall be held during each fiscal year.
240 Notice of regular meetings of the Board of Directors shall be given to each Director,
241 personally or by mail, telephone or telegraph, at least three (3) days prior to the day
242 named for such meeting.

243 **Section 10.** <u>Special Meetings</u>.  Special meetings of the Board of Directors may be called
244 by the President or by any two (2) Directors on three (3) days notice to each Director,

IUJUI. DOO

10

245 given personally or by mail, telephone or telegraph, which notice shall state the time,
246 place (as hereinabove provided) and purpose of the meeting.

247 <u>Section 11</u>. <u>Executive Meetings</u>.

248        A.    Executive Meetings of the Board of Directors shall be closed to the
249 general public, and shall be called by the President only for the following purposes:

250              (a)    Discussion of matters pertaining to employees and personnel;

251              (b)    Protection of the privacy or reputation of individual in
252 matters not related to the council of unit owners' business;

253              (c)    Consultation with legal counsel;

254              (d)    Consultation with staff personnel, consultants, attorneys, or
255 other persons in connection with pending or potential litigation;

256              (e)    Investigative proceedings concerning possible or actual
257 criminal misconduct;

258              (f)    Complying with a specific constitutional, statutory, or
259 judicially imposed requirement protecting particular proceedings or matters from public
260 disclosure; or

261              (g)    On an individually recorded affirmative vote of two-thirds of
262 the board members present, for some other exceptional reason so compelling as to
263 override the general public policy in favor of open meetings.

264        B.    If a meeting is held in closed session under this Section:

265              (a)    An action may not be taken and a matter may not be discussed if
266 it is not permitted by this section; and

10301. 007

11

267    (b)    A statement of the time, place and purpose of any closed
268 meeting, the record of the vote of each board member by which any meeting was closed,
269 and the authority under this section for closing any meeting shall be included in the
270 minutes of the next meeting of the Board of Directors.

271 <u>Section 12</u>. <u>Waiver of Meetings</u>. Before or at any meeting of the Board of Directors,
272 any Director may, in writing, waiver notice of such meeting and such waiver shall be
273 deemed equivalent to the giving of such notice.    Attendance by a Director at any
274 meeting of the Board of Directors shall be a waiver of notice by him of the time and
275 place thereof.    If all the Directors are present at any meeting of the Board of
276 Directors, no notice shall be required and any business may be transacted at such
277 meeting.

278 <u>Section 13</u>. <u>Quorum</u>.    At all meetings of the Board of Directors a majority of the
279 Directors shall constitute a quorum for the transaction of business, and the acts of
280 the majority of the Directors present at a meeting at which a quorum is present shall
281 be the acts of the Board of Directors.    If at any meeting of the Board of Directors
282 there is less than a quorum present, the majority of those present may adjourn the
283 meeting from time to time.    At such adjourned meeting, any business which might have
284 been transacted at the meeting as originally called may be transacted without further
285 notice.

286                                    ARTICLE VI

287                                    <u>OFFICERS</u>

288 <u>Section 1</u>.    <u>Designation</u>.    The principal officers of the Corporation shall be a
289 President, a Vice President, a Secretary, and a Treasurer, all of whom shall be members
290 of the Board of Directors, and elected by the members of the Board of Directors.    The
291 Directors may appoint assistant secretaries and assistant treasurers and such other
292 officers as in their judgement may be necessary for the efficient operation of the
293 Corporation.    Such appointed officers must be eligible to vote as required in Section 7

IU501. 890

12

294  of Article II of these By-Laws and must remain so for the duration of the term of their
295  appointment and need not be elected Directors.


296  **Section 2.   Election of Officers.**   The Officers of the Corporation shall be elected
297  annually by the Board of Directors at the first meeting of the Board following the
298  Annual Meeting of the membership by the majority vote and shall hold office at the
299  pleasure of the Board of Directors.   However, the Board will not be reorganized between
300  Annual Meetings except by affirmative vote of at least eighty percent (80%) of the
301  Board.


302  **Section 3.   Removal of Officer.**   Upon an affirmative majority vote of the Board of
303  Directors any officer may be removed either with or without cause, and his successor
304  elected at any regular meeting of the Board of Directors.


305  **Section 4.   President.**   The President shall be the Chief Executive Officer of the
306  Corporation.   He shall preside at all meetings of the members and of the Board of
307  Directors.   He shall have all of the general powers and duties which are usually vested
308  in the office of president of a Corporation, including, but not limited to the power to
309  appoint committees, with the concurrence of the Board, from among the membership from
310  time to time as he may, in his discretion, decide is appropriate to assist in the
311  conduct of affairs of the Corporation.


312  **Section 5.   Vice President.**   The Vice President shall take the place of the President
313  and perform his duties whenever the President shall be absent or unable to act.   If
314  neither the President nor the Vice President is able to act, the Board shall appoint
315  some other member of the Board to do so on an interim basis.   The Vice President shall
316  also perform such other duties as shall from time to time be imposed upon him by the
317  Board of Directors.


318  **Section 6.   Secretary.**   The Secretary shall keep the minutes of all meetings of the
319  Board of Directors and the minutes of all meetings of the members of the Corporation;
320  he shall have custody of the seal of the Corporation; he shall have charge of the
321  membership transfer books and of such other books and papers as the Board of Directors
322  may direct; and he shall, in general, perform all duties incident to the office of
323  Secretary.

13

324 <u>Section 7</u>.   <u>Treasurer</u>.   The Treasurer shall have responsibility for corporate funds and
325 securities and shall be responsible for keeping full and accurate accounts of all
326 receipts and disbursements in books belonging to the Corporation.   The Treasurer shall
327 further be responsible for the deposit of all monies and other valuable effects in the
328 name, and to the credit, of the Corporation in such depositories as may from time to
329 time be designated by the Board of Directors.   The Treasurer shall be bonded under
330 fidelity bond in such amount as may be determined by the Board of Directors, and must
331 be one of the three individuals authorized to sign/execute Corporate Checks.

332                                 ARTICLE VII

333                                 <u>MANAGEMENT</u>

334 <u>Section 1</u>.   <u>Management and Common Expenses</u>.   The Corporation shall manage, operate and
335 maintain the condominium project and, for the benefit of the condominium units and the
336 owners thereof, shall enforce the provisions hereof and may pay out of the common
337 expense fund the following:

338             A.   The cost of providing water, sewer, garbage and trash collection,
339 electricity, gas and other necessary utility services for the Common Elements,
340 including any swimming pool or other recreational facilities used by the condominium
341 project, and for the condominium units;

342             B.   The cost of fire and extended coverage insurance and public liability
343 insurance on the project, the cost of such other insurance as the Corporation may elect
344 and the cost of the any fidelity bonds;

345             C.   The cost of the services of a firm to manage the project to the
346 extent deemed advisable by the Corporation together with services of such other
347 personnel as the Board of Directors of the Corporation shall consider necessary for the
348 operation of the project;

349             D.   The cost of providing such legal and accounting services as may be
350 considered necessary to the operation of the project;

10501. 892

14

351        E.    The cost of painting, maintaining, repairing and snow removal of the
352  Common Elements and such furnishing and equipment for the Common Elements as the Board
353  of Directors shall determine are necessary and proper, and the Board of Directors shall
354  have the exclusive right and duty to contract for such services and to acquire such
355  equipment; provided, however, that nothing herein contained shall require the
356  Corporation to paint, repair or otherwise maintain the interior of any condominium unit
357  or any fixtures or equipment located therein;

358        F.    The cost of any and all other materials, supplies, labor, services,
359  maintenance, repairs, taxes and assessments, or the like, which the Corporation is
360  required to secure or pay for by law, or otherwise, or which in the discretion of the
361  Board of Directors shall be necessary or proper for the operation of the Common
362  Elements; provided, however, that if any of the aforementioned are provided or paid for
363  the benefit of a particular condominium unit or units, the cost thereof may be
364  specially assessed to the owner or owners thereof.

365        G.    The cost of the maintenance or repair of any condominium unit except
366  those costs described in subparagraph (i), hereinbelow, in the event such maintenance
367  or repair is reasonably necessary in the discretion of the Board of Directors to
368  protect the Common Elements or to preserve the appearance or value of the project or is
369  otherwise in the interest of the general welfare of all owners of the condominium
370  units; provided, however, that no such maintenance or notice of repair shall be
371  undertaken without a resolution of the Board of Directors and not without reasonable
372  written notice to the owner of the condominium unit proposed to be maintained and
373  provided, further, that the cost thereof shall be assessed against the condominium unit
374  on which such maintenance or repair is performed and, when so assessed, a statement for
375  the amount thereof shall be rendered to the then owner of said condominium unit, at
376  which time the assessment shall be come due and payable and a continuing lien and
377  obligation of said owner in all respects as provided in Article VIII of these By-Laws;

378        H.    Any amount necessary to discharge any lien or encumbrance levied
379  against the project, or any portion thereof, which may, in the opinion of the Board of
380  Directors, constitute a lien against any of the Common Elements rather then the
381  interest of the owner of an individual condominium unit; and

382         I.    The cost of all material and labor incident to the maintenance and/or
383 repair of all exterior paint and/or stain, roofs, exterior doors, and other items of
384 exterior trim of all condominium units.

385 **Section 2.**    **Management Agency.**   The Corporation may delegate any of its duties, powers
386 or functions to the Management Agency.   The Corporation and the Board of Directors
387 shall not be liable for any omission or improper exercise by the Management Agency of
388 any such duty, power or function so delegated.

389 **Section 3.**   **Duty to Maintain.**

390         A.    It shall be the sole obligation and exclusive right of the
391 Corporation to perform the exterior maintenance and/or repair set forth in Section 1(i)
392 above.   Except for those specific requirements imposed upon the Corporation, the owner
393 of any condominium unit shall, at his own expense, maintain his condominium unit and
394 any and all equipment therein situated, and its other appurtenances in good order,
395 condition and repair and in a clean and sanitary condition, and shall do all
396 redecorating, painting and the like which may at any time be necessary to maintain the
397 good appearance of his condominium unit.

398         B.    In addition to the foregoing, The owner of any condominium unit
399 shall, at his own expense maintain, repair or replace any plumbing fixtures, heating
400 and air conditioning equipment, lighting fixtures, refrigerators (with and without ice-
401 maker), freezers, dishwashers, disposals, ranges and/or other equipment that may be in
402 or appurtenant to such condominium unit.   The owner of any condominium unit shall also,
403 at his own expense, maintain in a clean, orderly and sanitary condition the Limited
404 Common Elements designated as "Limited Common Elements" and shown as patios and
405 balconies on the Master Plat reserved for exclusive use of the owner of the condominium
406 unit to which the patio and balcony attaches as set forth in Section Third "Common
407 Element", Subsection (a) (duplicate) of the Master Deed.

408         C.    The owner(s) of any condominium unit shall be responsible for the
409 cost of repair for any damages to any and all other units and/or Common Elements
410 resulting from negligence, accidents, failure to maintain, or malfunctioning of
411 plumbing fixtures, heating and air conditioning equipment, lighting fixtures,

16

412 refrigerators (with or without icemakers), freezers, dishwashers, disposals, ranges,
413 and/or other equipment and appliances that may be in or appurtenant to such condominium
414 unit, except when two or more units are affected by a common malfunction.

415 **Section 4.  Access at Reasonable Time**.    The corporate owners or its authorized
416 designee shall have an irrevocable right and an easement to enter units to make repairs
417 when the repairs reasonably appear necessary for public safety or to prevent damage to
418 other portions of the condominium.   Except in cases involving manifest danger to public
419 safety or property, the council of unit owners shall make a reasonable effort to give
420 notice to the owner of any unit to be entered for the purpose of repair.   If damage is
421 inflicted on the common elements or any unit through which access is taken, the council
422 of unit owners is liable for the prompt repair.   An entry by the council of unit owners
423 for the purposes specified in this subsection may not be considered a trespass.

424 **Section 5.  Easements for Utilities and Related Purposes**.   The Corporation is
425 authorized and empowered to grant such licenses, easements and/or rights of way for
426 sewer lines, water lines, electrical cables, telephone cables, gas lines, storm drains,
427 underground conduits and/or such other purposes related to the provision of public
428 utilities to the project or other similar projects as may be considered necessary and
429 appropriate by the Board of Directors for the orderly maintenance, preservation of the
430 health, safety, convenience and/or welfare of the owners of the condominium units.   The
431 same may be granted only over those portions of the Common Elements upon which no
432 building or structure has been erected.

433 **Section 6.  Limitation of Liability**.

434         A.    The Corporation shall not be liable for any failure of water supply
435 or other services to be obtained by the Corporation or paid for out of the common
436 expense funds, or for injury or damage to person or property caused by the elements or
437 from any pipe, drain conduit, appliance or equipment.   The Corporation shall not be
438 liable to the owner of any condominium unit for loss or damage, by theft or otherwise,
439 of articles which may be stored upon any of the Common Elements.   No diminution or
440 abatement of Common Expense assessments, as herein elsewhere provided, shall be claimed

I0501. 895

17

441 or allowed for inconvenience or discomfort arising from the making of repairs or
442 improvements to the Common Elements or from any action taken by the Corporation to
443 comply with any law, ordinance or with the order or directive of any municipal or other
444 governmental authority.


445                          ARTICLE VIII

446                ASSESSMENTS AND CARRYING CHARGES

447 Section 1.    Annual Assessments and Carrying Charges.

448        A.    Each member shall pay to the Corporation a monthly sum (hereinafter
449 sometimes referred to as "carrying charges" and/or "Condominium Fees") equal to one-
450 twelfth )1/12) of the member's proportionate share, rounded to the nearest dollar, of
451 the sum required by the Corporation, based on a budget prepared by a Certified Public
452 Accountant (CPA), with the aid of the Management Agent, taking the previous years
453 actual operating expenses into consideration, under the guidance of the Board of
454 Directors, to meet its annual expenses including, but in no way limited to, the
455 following:

456            (a)    The cost of all operating expenses of the project and services
457 furnished, including charges by the Corporation for facilities and services furnished
458 by it.

459            (b)    The cost of necessary management and administration, including
460 fees paid to any Management Agent.

461            (c)    The amount of all taxes and assessments levied against the
462 Corporation or upon any property which it may own or which it is otherwise required to
463 pay, if any.

10501·896

18

464    (d)  The cost of fire and extended coverage insurance public

465 liability insurance on the project and the cost of such other insurance as the

466 Corporation may effect.

467    (e)  The cost of furnishing water, sewer, electricity, heat, and gas

468 to the individual units and Common Elements; and garbage and trash collection and/or

469 other utilities.

470    (f)  The cost of funding all reserves established by the

471 Corporation, including, when appropriate, a general operating reserve and/or a reserve

472 for replacement.

473    (g)  The estimated cost of repairs, maintenance and replacements of

474 the project to be made by the Corporation.

475   B.  The Board of Directors shall determine the amount of the assessment

476 annually, but may do so at more frequent intervals should circumstances so require.

477   C.  The Board of Directors of the Corporation shall make reasonable

478 efforts to fix the amount of the assessments against each member for each assessment

479 period at least thirty (30) days in advance of such date or period, and shall, at that

480 time, prepare a roster of the membership and assessments applicable thereto which shall

481 abe kept at the office of the Corporation and shall be open to inspection by any owner

482 upon reasonable notice to the Board.  Written notice of the assessments shall thereupon

483 be sent to the members.  The failure of the Board of Directors to fix the said

484 assessment or to notify the members thereof before the expiration of any assessment

485 period, shall not be deemed a waiver or modification in any respect of the provisions

486 of this Article, or a release of any member from the obligation to pay the assessment,

487 or any installment thereof, for that or any subsequent assessment period, but the

488 assessment fixed for the preceding period shall continue until a new assessment is

489 fixed.  No member may exempt himself from liability for assessments or carrying charges

490 by a waiver of the use or enjoyment of any of the Common Elements or by abandonment of

491 the condominium unit belonging to him.  The proportionate share of each member of the

492 sum required by the Corporation to meet its annual expenses, as mentioned in the first

493 sentance of this Section 1 of this Article VIII, shall be computed by multiplying that

10501. 897

19

494 member's percentage of undivided ownership in the Common Elements by the total annual
495 expenses of the Corporation, as estimated by its Board of Directors.

496 **Section 2.  Special Assessments.**  In addition to the regular assessments authorized by
497 this Article, the Corporation may levy in any assessment year a special assessment or
498 assessments, applicable to that year only, for the purpose of defraying, in whole or in
499 part, the cost of any construction or reconstruction, unexpected repair or replacement
500 of a described capital improvement located upon the project, including the necessary
501 fixtures and personal property related thereto, or for such other purpose as the Board
502 of Directions may consider appropriate, provided that any such assessment shall have
503 the assent of the members representing three fourth (3/4) of the total votes of all
504 members of the Corporation.  A meeting shall be duly called for this purpose, written
505 notice of which shall be sent to all members at least fifteen (15) but not more than
506 sixty (60) days in advance of such meeting, such meeting, which notice shall set forth
507 the purpose of the meeting, as required for a Special Meeting.

508 **Section 3.  Reserve for Replacements.**  The corporation shall establish and maintain a
509 reserve fund for replacement by the allocation and payment monthly to such reserve fund
510 of an amount to be designated from time to time by the Board of Directors.  Such fund
511 shall be conclusively deemed to be a common expense.  Such fund shall be deposited in a
512 special account with a lending institution, the accounts of which are insured by an
513 agency of the United States of America or may, in the discretion of the Board of
514 Directors, be invested in obligations of, or fully guaranteed as to principal by, the
515 United States of America.  The reserve for replacements may be expended only for the
516 purpose of effecting the replacement of the Common Elements and equipment of the
517 project and operating contingencies of a non-recurring nature.  The amounts required to
518 be allocated to the reserve for replacements may be reduced or suspended by appropriate
519 resolution of the Board of Directors, upon the accumulation in such reserve for
520 replacements of a sum equal to ten percent (10%) of the full replacement value of the
521 condominium project ass such full replacement.  Value is annually determined by the
522 Board of Directors for casualty insurance purposes.  The proportionate interest of any
523 owner in any reserve for replacement shall be considered an appurtenance of his
524 condominium unit and shall not be separately withdrawn, assigned or transferred or
525 otherwise separated from the condominium unit to which it appertains and shall be
526 deemed to be transferred with such condominium unit.

10501. 898

20

527 <u>Section 4</u>.  <u>Deposit of Annual Assessments and Carrying Charges</u>.  The Corporation shall
528 deposit the sums collected pursuant to Section 1, of this Article VIII, in a bank
529 located in Maryland and insured by the Federal Deposit Insurance Corporation (FDIC).

530 <u>Section 5</u>.  <u>Non-Payment of Assessment</u>.

531        A.    Any assessment, until paid, together with interest, late charges, if
532 any, and actual costs of collection, and reasonable attorney's fees, constitutes a lien
533 on the unit on which it is assessed if a statement of lien is recorded within two years
534 after the date the assessment becomes due, as provided in <u>Real Property, Annotated Code</u>
535 <u>of Maryland</u>.  The personal obligation of the member to pay such assessment shall,
536 however, remain his personal obligation for the statutory period and suit to recover a
537 money judgment for non-payment of any assessment levied pursuant to these By-Laws, or
538 any installment thereof, may be maintained without foreclosing or waiving the lien
539 herein and by the aforesaid statue created in securing the same.

540        B.    The personal obligation for delinquent assessments shall not pass to
541 successors in title or interest unless assumed by them, or required by applicable law.

542        C.    Any assessment levied pursuant to these By-Laws, or any installment
543 thereof, which is not paid within ten (10) days after it is due shall bear interest at
544 the rate of twelve percent (12%) per annum, and the Corporation may bring an action at
545 law against the member personally obligated to pay the same, or foreclose the lien
546 against the condominium unit or units then belong to said member, in either of which
547 events interest, costs and reasonable attorney's fees of not less than fifteen percent
548 (15%) of the sum claimed shall be added to the amount of each assessment.

549        D.    The Board of Directors may notify the holder of the first mortgage on
550 any condominium unit for which any assessment levied pursuant to these By-Laws becomes
551 delinquent for a period in excess of sixty(60) days and in any other case where the
552 owner of such condominium unit is in default with respect to the performance of any
553 other obligation hereunder for a period in excess of thirty (3) days, but any failure
554 to give such notice shall not affect the validity of the lien for assessment levied
555 pursuant to these By-Laws.

10501. 899

21

556          E.     The Board of Directors shall discontinue all services provided units,
557 including, but not limited to, utilities, swimming pool privileges, etc., and all
558 others, the cost of which is included in the Annual Assessments levied pursuant to
559 these By-Laws at such time as any assessment payment or periodic installment payment
560 becomes delinquent in excess of sixty (60) days, an in any other case where the owner
561 of such condominium unit is in default with respect to the performance of obligation
562 hereunder for a period in excess of sixty (60) days, but any failure to discontinue the
563 services shall not affect the validity of the lien for any assessment levied pursuant
564 to these By-Laws.

565 **Section 6.**   **Assessment Certificates**   The Corporation shall upon demand at any time
566 furnish to any member liable for any assessment levied pursuant to these By-Laws (or
567 any other party legitimately interested in the same) a certificate in writing signed by
568 an officer of the Corporation, setting forth the status of said assessment, i.e.,
569 whether the same is paid or unpaid. Such certificate shall be conclusive evidence of
570 the payment of any assessment thereto stated to have been paid.

571 **Section 7.**   **Acceleration of Installments.**   Upon default in the payment of any one or
572 more monthly installments of any assessment levied pursuant to these By-Laws, or any
573 other installment thereof, the entire balance of said assessment may be accelerated at
574 the option of the Board of Directors and be declared due and payable in full.

575 **Section 8.**   **Priority of Lien.**   The lien established by this Article and **Real Property,**
576 **Section 11-110, Annotated Code of Maryland,** shall have preference over any assessments,
577 liens, judgments, or charges of whatever nature, except the following:

578         A.     General and Special assessments for real estate taxes on the
579 Condominium unit; and

580         B.     The liens of any deeds of trust, mortgage instruments or encumbrances
581 duly recorded on the condominium unit prior to the assessment of the lien thereon or
582 duly recorded on said unit after receipt of a written statement from the Board of
583 Directors reflection that payments on said lien were current as of the date of
584 recordation of said deed of trust, mortgage instrument or encumbrance, or as
585 hereinabove specifically provided.

10501.900

22

586 <u>Section 9</u>.   <u>Subordination and Mortgage Protection</u>.

587         A.   Notwithstanding any other provisions hereof to the contrary, the lien
588 of any assessment levied pursuant to these By-Laws upon any condominium unit in the
589 project shall be subordinate to, and shall in no way affect the rights of the holder of
590 any indebtedness secured by any recorded mortgage or Deed of Trust upon such interest
591 made in good faith, and for value received; provided, however, that such subordination
592 shall apply only to assessments which have become due and payable prior to a sale or
593 transfer of such condominium unit pursuant to a decree of foreclosure, or any other
594 proceeding in lieu of foreclosure.   Such sale or transfer shall not relieve the
595 purchaser at such sale or the condominium unit from liability for any assessments
596 thereafter becoming due, nor from the lien of any such subsequent assessment, which
597 said lien, if any, shall have the same effect and be enforced in the same manner as
598 provided herein.

599         B.   No amendment to this Section shall affect the rights of the holder of
600 any such mortgage (or the indebtedness secured thereby) recorded prior to recordation
601 of such amendment unless the holder thereof (or of the indebtedness secured thereby)
602 shall join in the execution of such amendment.

603 <u>Section 10</u>. <u>Additional Default</u>.   Any recorded first mortgage secured on a condominium
604 unit in the project shall provide that any default by the mortgagor in the payment of
605 any assessment levied pursuant to these By-Laws, or any installment thereof, shall
606 likewise be a default in such mortgage or the indebtedness secured thereby but failure
607 to include such provision in any such mortgage shall not affect the validity or
608 priority thereof and the protection extended to the holder of such mortgage or the
609 indebtedness secured thereby by reason of the provisions of this Article shall not be
610 altered, modified, or diminished by reason of such failure.

611                                  ARTICLE IX

612                        <u>SUPPLEMENTAL ENFORCEMENT OF LIEN</u>

IUJUI. YUI

23

613 **Section 1.**   In addition to proceeding at law for a judgment against delinquent unit
614 owners or to proceed in equity for foreclosure and enforcement of a lien established
615 pursuant to Real Property, Section 11-110, Annotated Code of Maryland, all of the
616 owners of condominium units in the condominium project may be required by the Grantor
617 of the Board of Directors to execute bonds conditioned upon the faithful performance
618 and payment of the installments of the lien established thereby and may likewise to
619 required to secure the payment of such obligations by a Declaration in Trust recorded
620 among the land records of Prince George's County, Maryland, granting unto a Trustee or
621 Trustees appropriate powers to the end that, upon default in the performance of such
622 bond said Declaration in Trust may be foreclosed by said Trustee or Trustees, action at
623 the direction of the Management Agent or the Board of Directors.   In the event any such
624 bonds have been executed and such Declaration in Trust is recorded then any subsequent
625 purchaser of a condominium unit in the condominium project shall take title subject
626 thereto and shall assume the obligations therein provided for.

627                                         ARTICLE X

628                                     USE RESTRICTIONS

629 **Section 1.**  Residential Use.

630                A.   All condominium units shall be used for private residential purposes
631 exclusively, except for such temporary non-residential uses as may be permitted by the
632 Board of Directors from time to time, and on individual unit cases.

633                B.   All leases shall be in writing and shall state that they are subject
634 to the Declaration and By-Laws and rules and regulations enacted by the Board of
635 Directors.   No transient leases shall be executed for any unit at the  Condominium.
636 Leases must be for a duration of at least six (6) months, which may thereafter be
637 renewable on a month-to-month basis."  The Board of Directors may enact reasonable rules
638 and regulations that affect residential leases within the Condominium.  A copy of the
639 Lease and any Addenda, modifications or renewals thereto must be provided to the Board
640 of Directors.  Owners must provide the names of all tenants and occupants to the Board
641 of Directors.

IUSUI. 902

24

642 <u>Section 2.    Prohibited Uses and Nuisances</u>.

643         A.    No noxious or offensive trade or activity shall be carried on within
644 the project or within any condominium unit situated thereon, nor shall any be done
645 therein or thereon which may be or become an annoyance to the neighborhood of the other
646 owners.

647         B.    There shall be no obstruction of any Common Elements.  Nothing shall
648 be stored upon any Common Elements without the approval of the Board of Directions.
649 Vehicular parking upon Common Elements shall be regulated by the Board of Directors.

650         C.    Nothing shall be done or maintained in any condominium unit or upon
651 any Common Elements which will increase the rate of insurance on any condominium unit
652 or Common Elements, or result in the cancellation thereof.  Nothing shall be done or
653 maintained in any condominium unit or upon Common Elements which would be in violation
654 of any law.  No waste shall be committed upon any Common Elements.

655         D.    No structural alteration, construction, addition or removal of any
656 condominium unit or Common Elements shall be commenced or conducted except in strict
657 accordance with the provisions of these By-Laws.

658         E.    The maintenance, keeping, boarding and/or raising of
659 animals,livestock or poultry of any kind, regardless of number shall be and is hereby
660 prohibited within any condominium unit or upon any Common Elements, except that this
661 shall not prohibit the keeping of dogs or cats and/or caged birds as domestic pets
662 provided they are not kept, or maintained for commercial purposes.  All domestic pets
663 shall be under the control of the owner at all times, shall not be allowed outside of
664 the units unleashed, and shall not become a nuisance to other residents, either because
665 of cleanliness, sanitation, or lack of control.  The owners are responsible for
666 complying with all existing Maryland and Prince George's County Laws, statutes and
667 regulations regulating the keeping of domestic pets.

668         F.    No signs of any character shall be erected, posted or displayed upon,
669 in, from or about any condominium unit or Common Elements, provided, however, that one
670 temporary real estate sign of customary and reasonable dimensions may be displayed

10501. 903

25

671 upon, in or from any condominium unit placed on the market for sale or rent.  The
672 provisions of this subsection shall not be applicable to the institutional holder of
673 any first mortgage which comes into possession of any condominium unit by reasons of
674 any remedies proved for in the mortgage, foreclosure of any mortgage or any deed of
675 trust or other proceeding in lieu of foreclosure.

676        G.    Except as herein elsewhere provided, no junk vehicle or other vehicle
677 on which current registration plates are not displayed, trailer, truck, camper, camp
678 truck, house trailer, boat or the like, shall be kept upon any Common Elements, nor
679 shall the repair or extraordinary maintenance of automobile or other vehicles be
680 carried out thereon.  The Corporation may, in the discretion of its Board of Directors,
681 provide and maintain a suitable area designated for the parking of such vehicles or the
682 like.

683        H.    No part of the Common Elements shall be used for commercial
684 activities and any character, except as authorized by the Board of Directors and in
685 compliance with law.

686        I.    No clothes dryers or washing machines will be installed or used
687 within any of the units.

688        J.    No structure of a temporary character, trailer, tent, shack, barn or
689 other outbuilding shall be maintained upon any Common Elements or Limited Common
690 Elements at any time.  Outdoor clothes dryers, clothes lines or animal runs (or pens)
691 shall not be maintained upon any Common Element or Limited Common Element at any time.

692        K.    No outside television or radio aerial or antenna, or other aerial or
693 antenna, for reception of transmission, shall be maintained upon any condominium unit
694 or upon any Common Elements without the prior written consent of the Board of
695 Directors.

696        L.    There shall be no violation of any rules for the use of the Common
697 Elements which may from time to time be adopted by the Board of Directors and
698 promulgated among the membership by them in writing and the Board of Directors is
699 hereby elsewhere in these By-Laws authorized to adopt such rules.

10501. 904

26

700                                    ARTICLE XI

701                            ARCHITECTURAL CONTROL

702 Section 1. Except for the original construction of the condominium units situated
703 within the project and any improvements in any Common Elements accomplished
704 concurrently with said construction, and except for purposes of proper maintenance and
705 repair of as otherwise in these By-Laws provided, it shall be prohibited to install,
706 erect, attach, apply, paste hinge, screw, nail, build, alter, remove or construction
707 any lights, shades, screens, awnings, patio covers, decorations, aerials, antennas,
708 radio or television broadcasting or receiving devices, slabs, sidewalks, curbs,
709 gutters, patios, porches, driveways, fences, walls, or to make any change or otherwise
710 alter (including any alteration in color) in any manner whatsoever to the exterior of
711 any condominium unit or upon any of the Common Elements within the project.

712                                    ARTICLE XII

713                                     INSURANCE

714 Section 1.   Insurance.  The Board of Directors shall obtain and maintain the following:

715          A.    Casualty or physical damage insurance in an amount equal to the full
716 replacement value of the condominium project (as determined annually by the Board of
717 Directors with the assistance of the insurance company affording coverage), including
718 the common areas such coverage to afford protection against at least the following :

719          (a)    Loss or damage by fire and other hazards covered by the "agreed
720                 amount endorsement" and "condominium replacement cost
721                 endorsement" together with coverage for common expenses with
722                 respect to condominium units during any period of
723                 reconstruction;

10501. 905

27

724         (b)    Such other risks as shall customarily be covered with respect

725                to projects similar in construction, location, and use,

726                including, but not limited to, vandalism, malicious mischief,

727                plate glass and such other insurance as the Board of Directors

728                may determine.

729        B.   The Board of Directors shall obtain and maintain a master or blanket-

730 type of insurance policy covering all of the common elements and limited common

731 elements (except land, foundation, excavation and other items normally excluded from

732 coverage) including fixtures, to the extent that they are part of the common elements

733 of the Condominium, building service equipment and supplies, and other common personal

734 property belonging to the owners association. The insurance shall also cover fixtures,

735 equipment or other property contained within the units which may be financed by a

736 mortgage to be purchased by F.N.M.A. or F.H.L.M.C. The insurance shall contain at

737 least the following:

738        A.   Casualty or physical damage insurance in an amount equal to the full

739 replacement cost of the Condominium project (as determined annually by the Board of

740 Directors with the assistance of the insurance company affording coverage), exclusive

741 of land, foundation, excavation and other items normally excluded from coverage. The

742 coverage shall afford protection against at least the following:

743         (a)   Property insurance on the common and limited common elements

744 and units, exclusive of improvements and betterments installed in units by unit owners,

745 insuring against those risks of direct physical loss commonly insured against;

746         (b)   Loss or damage by fire and other hazards covered by the "agreed

747 amount endorsement" and "condominium replacement cost endorsement", together with

748 coverage for common expenses with respect to condominium units during any period of

749 reconstruction and other perils normally covered by the standard coverage endorsement;

750         (c)   Such other risks as shall customarily be covered with respect

751 to projects similar in construction, location and use, including, but not limited to,

752 vandalism, malicious mischief, plate glass and such other perils normally covered by

753 standard "all-risk" endorsement, where such is available.

10501. 906

28

754        B.    Public Liability insurance in such amounts and in such forms as may
755 be considered appropriate by the Board of Directors, including, but not limited to,
756 water damage, legal liability, hired automobile, non-owned automobile, off premises
757 employee coverage and any and all other liability incident to the ownership and/or use
758 of the condominium project or any portion thereof.

759        C.    Comprehensive General Liability Insurance. Coverage shall cover all
760 of the common elements and limited common elements, commercial space owned and leased
761 by the owners association and public ways of the Condominium project.  Coverage limits
762 shall be in the amounts generally required by private institutional mortgage investors
763 for condominium projects, and shall be for at least $1,000,000.00 for bodily injury,
764 including deaths of and medical payments to, persons and property damage arising out of
765 a single occurrence.  Coverage under this Policy shall include, without limitation,
766 legal liability of the insureds for property damage, bodily injuries and deaths of
767 persons in connection with the operation, maintenance or use of the common elements,
768 and legal liability arising out of lawsuits related to employment contracts of the
769 owners association.  Such policies must provide that they may not be canceled or
770 substantially modified, by any party, without at least ten (10) days' prior written
771 notice to the owners association and to each holder of a first mortgage on any unit in
772 the Condominium which is listed as a scheduled holder of a first mortgage in the
773 insurance policy.

774        D.    Workmen's Compensation insurance to the extent necessary to comply
775 with applicable law..

776        E.    Such policies as required by law, including, but not limited to, all
777 required workmen's compensation policies.

778        F.    Such other policies of insurance, including insurance for other risks
779 of a similar or dissimilar nature, as are or shall hereafter be considered appropriate
780 by the Board of Directors.

781        G.    Fidelity Bond covering the Treasurer, and all other individuals
782 authorized to sign checks (Reference:  Section 5, Article XIV, these By-Laws).

783    H.    Fidelity Bond covering the Treasurer, or officers, directors and
784 employees of the Condominium, and all other persons handling or responsible for,
785 handling or administering funds of the Condominium.  If the Management Agent has
786 responsibility for handling or administering funds of the Condominium, the Management
787 Agent shall be required to maintain Fidelity Bond coverage for its officers, employees
788 and agent handling or responsible for funds of, or administered on behalf of, the
789 Condominium.  Such Fidelity Bonds shall name the Condominium as the Obligee and shall
790 not be less than the estimated maximum of funds, including reserve funds, in the
791 custody of the Condominium or the Management Agent, as the case may be, at any given
792 time during the term of each Bond.  However, in no event may the aggregate amount of
793 such Bonds be less than a sum equal to three (3) months' aggregate assessments for all
794 units, plus the reserve funds.

795    I.    The name of the Insured under such insurance policies shall be the
796 "Brookside Park Condominium, Inc.", for the use and benefit of the individual owners.

797    J.    Certificate of Insurance shall be issued to each unit owner and
798 mortgagee upon request.

799    K.    All policies of property insurance must contain or have attached the
800 standard mortgagee clause commonly acceded by private institutions as mortgage
801 investors in the area in which the mortgaged premises are located, and name as
802 mortgagees either the FNMA and FHLMC, if such corporations are holders of first
803 mortgages on units within the Condominium.  The following endorsements are also
804 required:  (i) an Inflation Guard Endorsement (if reasonably available); (ii) a
805 Construction Code Endorsement if the Condominium is subject to a construction code
806 provision which would become operative and require changes to undamaged portions of any
807 buildings, even when only part of a building is destroyed by an insured hazard or
808 peril; (iii) a Steam Boiler and Machinery Coverage Endorsement if the Condominium has
809 central heating or cooling, which should provide for the insurer's minimum liability
810 per accident per location to be at least equal to the lesser of Two Million Dollars
811 ($2,000,000.00) or the insurable value of the structure(s) housing the boiler or
812 machinery; and (iv) a Special Condominium Endorsement which provides that any Insurance
813 Trust Agreement will be recognized, the right of subrogation against unit owners will
814 be waived, the insurance will not be prejudiced by any acts or omissions of individual

815 unit owners that are not under the control of the Association, and that the policy will
816 be primary, even if a unit owner has other insurance that covers the same loss.

817        L.    The Association shall use generally acceptable insurance carriers.

818 Section 2.    Limitations.    Any insurance obtained pursuant to the requirements of
819 this Article shall be subject to the following provisions:

820        A.    All policies shall be written with a company or companies licenses to
821 do business in the State of Maryland.

822        B.    Exclusive authority to adjust losses under said policies shall be
823 vested in the Board of Directors or its authorized representative.

824        C.    In no event shall the insurance coverage obtained and maintained
825 pursuant to the requirements of this Article be brought into contribution, with
826 insurance purchased by the owners of the condominium units or their mortgagees, as
827 herein permitted, and any "no other insurance" or similar clause in any policy obtained
828 by the Corporation pursuant to the requirements of this Article shall exclude such
829 policies from consideration.

830        D.    All policies shall provide that such policies may not be canceled or
831 substantially modified without at least thirty (30) days prior written notice to the
832 insured.

833        E.    All policies of casualty insurance shall provide that, not
834 withstanding any provisions thereof which give the carrier the right to elect to
835 restore damage in lieu of making a cash settlement, such option shall not be
836 exercisable without the prior written approval of the Board of Directors or when in
837 conflict with the provisions of these By-Laws.

838        F.    All policies shall contain a waiver of subrogation by the insurer as
839 to any and all claims against the Corporation, the Board of Directors, the owner of any
840 condominium unit and/or their respective agents, employees or invitees, and of any
841 defense based upon co-insurance or invalidity arising from the acts of the insured.

842 **Section 3**.  <u>Individual Policies</u>.  The owner of any condominium unit (including the
843 holder of any mortgage thereon) may obtain additional insurance at his own expense.
844 Such insurance shall be written by the same carrier as that purchased by the Board of
845 Directors pursuant to this Article or shall provide that it shall be without
846 contribution as against the same.  Such insurance shall contain the same waiver of
847 subrogation provision as that set forth in Section 2 (f) of this Article.

848 **Section 4**.  <u>Insurance Trustee</u>.  The policies may also be issued in the name of an
849 authorized representative of the owners association, including any insurance trustee
850 with whom the association has entered into an Insurance Trust Agreement, or any
851 successor trustee, as insured, for the use and benefit of the individual owners.  Loss
852 payable shall be in favor of the owners association (or Insurance Trustee), as a
853 trustee, for each unit owner and each unit owner's mortgagee.  The owners association
854 or insurance trustee, if any, must be required to hold any proceeds of insurance in
855 trust for unit owners and their first mortgage holders, as their interests may appear.
856 Each unit owner and each unit owner's mortgagee, if any, shall be beneficiaries of the
857 policy in the percentage of common ownership or in an amount determined pursuant to a
858 reasonable formula prescribed in the declaration or appropriate exhibit thereto.
859 Certificates of insurance shall be issued to each unit owner and mortgagee upon
860 request.

861 Notwithstanding any of the foregoing provisions and requirements relating to property
862 or liability insurance, there may be named as an insured, on behalf of the owners
863 association, the owner association's authorized representative, including any trustee
864 with whom such owners association may enter into any Insurance Trust Agreement or any
865 successor to such trustee (each of whom shall be referred to herein as the 'Insurance
866 Trustee'), who shall have exclusive authority to negotiate losses under any policy
867 providing such property or liability insurance and to perform such other functions as
868 are necessary to accomplish this purpose.

869 Each unit owner appoints the owners association, or any Insurance Trustee or substitute
870 Insurance Trustee designated by the owners association, as attorney-in-fact for the
871 purpose of purchasing and maintaining such insurance, including:  the collection and
872 appropriate disposition of the proceeds thereof; the negotiation of losses and

10501. 910

32

873 execution of releases of liability; the execution of all documents, and the performance
874 of all other acts necessary to accomplish such purpose.


875                                    ARTICLE XIII


876            CASUALTY DAMAGE - RECONSTRUCTION OR REPAIR


877 **Section 1.  Use of Insurance Proceeds.**  In the event of damage or destruction by fire
878 or other casualty the same shall be promptly repaired or reconstructed in substantial
879 conformity with the original plans and specifications with the proceeds of insurance
880 available for that purpose, if any.


881 **Section 2.  Proceeds Insufficient.**  In the event that the proceeds of insurance are not
882 sufficient to repair damage or destruction by fire or other casualty, or in the event
883 such damage or destruction is caused by any casualty not herein required to be insured
884 against, then the repair or reconstruction of the damaged Common Elements shall be
885 accomplished promptly by the Corporation at its common expense and the repair or
886 reconstruction of any condominium unit shall be accomplished promptly by the
887 Corporation at the expense of the owner of the affected condominium unit.  The ratable
888 share of the expense of such repairs or reconstruction may be assessed and the lien for
889 the same shall have all the priorities provided for in Article VIII of these By-Laws.


890 **Section 3.  Restoration Not Required.**  In the event more than two-thirds (2/3) of the
891 entire project is substantially damaged or destroyed by fire or other casualty and
892 members do not unanimously promptly resolve to proceed with repair or reconstruction,
893 then and in that event the project shall be deemed to be owned in common by the owners
894 of all of the condominium units in the same proportions as that previously established
895 for ownership of appurtenant undivided interest in the Common Elements and the project
896 shall be subject to an action for partition at the suit of the owner of any condominium
897 unit or the holder of any lien thereon, in which event the net proceeds of the sale,
898 together with the net proceeds of any insurance paid to the Corporation or its members
899 in common, shall be considered as one fund and shall be divided among the owners of all
900 condominium units in the same proportion as that previously established for ownership
901 of appurtenant undivided interests in the Common Elements, after first paying out of

10501. 911

33

902 the share of the owner of any condominium unit, to the extent such share is sufficient

903 for the purpose, all liens upon said condominium unit, in the order of their priority.

904 Section 4.  Rights of Holders of First Mortgages - Insurable Hazard or Partial

905 Condemnation.

906        A.    Any restoration or repair of the Condominium after a partial

907 condemnation or damage due to an insurable hazard shall be substantially in accordance

908 with the Declaration and the original plans and specifications, unless the approval of

909 the eligible holders of first mortgages on units to which at least 51% of the votes of

910 units subject to mortgages held by such eligible holders are allocated, is obtained, in

911 addition to any other limitations or requirements contained in these By-Laws.

912        B.    Any election to terminate the Condominium regime after substantial

913 destruction or a substantial taking in condemnation of the Condominium property must

914 require the approval of the eligible holders of first mortgages on units to which at

915 least 51% of the votes of units subject to mortgages held by such eligible holders are

916 allocated, in addition to any other limitations or requirements contained in these By-

917 Laws.

918        C.    Unless the formula for reallocation of interests in the common

919 elements after a partial condemnation or partial destruction of the Condominium project

920 is fixed in advance by the Declaration or by applicable law, no reallocation of

921 interests in the common elements resulting from a partial condemnation or partial

922 destruction of the Condominium project may be effected without the approval of the

923 eligible holders of first mortgages on units to which at least 51% of the votes of

924 units subject to mortgages held by such eligible holders are allocated.

925                         ARTICLE XIV

926                         FISCAL MANAGEMENT

927 Section 1.  Fiscal Year.  The fiscal year of the Corporation shall begin on the first

928 day of January every year.  The commencement date of the fiscal year herein established

10501.912

34

929 shall be subject to change by the Board of Directors should corporate practice
930 subsequently dictate.

931 <u>Section 2</u>.  <u>Books and Accounts</u>.Books and Accounts of the Corporation shall be kept
932 under the direction of the Treasurer in accordance with good accounting practices.  The
933 same shall include books with detailed accounts, in chronological order, of receipts
934 and of the expenditures affecting the project and its administration and shall specify
935 the maintenance and repair expenses of the Common Elements and services and other
936 expenses incurred.  That amount of any assessment required for payment on any capital
937 expenditures of the Corporation shall be credited upon the books of the Corporation to
938 the "Paid-in-Surplus" account as a capital contribution by the members.

939 <u>Section 3</u>.  <u>Auditing</u>.  At the close of each fiscal year, the books and records of the
940 Corporation shall be audited by an independent Certified Public Accountant whose report
941 shall be prepared and certified in accordance with generally accepted auditing
942 standards.  Based upon such report, the Corporation shall furnish its members with an
943 annual financial statement including the income and disbursements of the Corporation.

944 <u>Section 4</u>.  <u>Inspection of Books</u>. a The books and accounts of the Corporation, and
945 vouchers accrediting the entries made thereupon, shall be available for examination by
946 the members of the Corporation, and/or their duly authorized agents or attorneys,
947 during normal business hours and for purposes reasonably related to their interests as
948 members.

949          A.    The unit owners, lenders, holders and insurers, and/or their agents,
950 of first mortgages of any unit, upon request, are entitled to current copies of the
951 Condominium's Declaration, By-Laws and rules and regulations established by the
952 Condominium, and may also inspect the books, records and financial statements of the
953 Condominium.  Prospective purchasers of any unit shall be entitled to receive a copy of
954 the Declaration, By-Laws and the rules and regulations governing the Condominium and
955 the most recent annual audit and financial statement, if such has been prepared and is
956 available.  The term 'available' shall mean to be available for inspection, upon
957 request, during normal business hours, and for other reasonable circumstances.  The
958 Condominium may charge a reasonable fee commensurate with the time and expense for its
959 staff to make available for inspection and copy the aforesaid records.

960        B.    Agencies or corporations that have an interest or a prospective
961  interest in the Condominium, shall be entitled to receive, upon reasonable request, a
962  copy of an audit and/or financial statement of the Condominium for the immediately
963  preceding fiscal year.

964  <u>Section 5</u>.   <u>Execution of Corporate Documents</u>.  With the prior authorization of the
965  Board of Directors, all notes and contracts shall be executed on behalf of the
966  Corporation by the President, and all checks shall be executed on behalf of the
967  Corporation by such officers, agents or other persons as are from time to time so
968  authorized by the Board of Directors.  The Board of Directors shall designate three (3)
969  individuals, one of whom will be the Treasurer, one of whom shall be a member of the
970  Board of Directors, and one individual who may or may not be a member of the Board,
971  authorized to sign checks on behalf of the Corporation.  All checks issued on Corporate
972  Accounts (with the exception of the Payroll Account) shall require the signature of two
973  out of the three individuals authorized to sign checks.  The Payroll Account shall
974  require the signature of any on of the authorized individuals.  All Corporate Officers
975  or other individuals authorized to sign checks shall be bonded as required of the
976  Treasurer in Article VI, Section 7, these By-Laws.

977                          ARTICLE XV

978                          <u>AMENDMENT</u>

979  <u>Section 1</u>.  These By-Laws may be amended by the affirmative vote of members
980  representing sixty-seven percent (67%) of the total value of the project at any meeting
981  of the members duly called for such purpose, effective only upon the recordation among
982  the Land Records of Prince George's County, Maryland, of an amendment to the Master
983  Deed setting forth such amendment to these By-Laws.  Members against who a lien has
984  been filed among the Land Records of Prince George's County in accordance with <u>Real</u>
985  <u>Property, Section 11-110, Annotate Code of Maryland</u>, wherein the amount necessary to
986  release the lien has not been paid at the time of the vote will be ineligible to vote
987  on amendments to these By-Laws.  Amendments may be proposed by the Board of Directors
988  or by petition signed by members representing at least twenty percent (20%) of the

10501. 914

36

989 total value of the project.  A description of any proposed amendment shall accompany
990 the notice of any regular or special meeting at which such proposed amendment is to be
991 voted upon.

992 Section 2.  The approval of eligible holders of first mortgages on units to which at
993 least 51 percent of the votes of units subject to a mortgage appertain, shall be
994 required to materially amend any provisions of the Declaration, By-Laws or equivalent
995 documents of the Condominium, or to add any material provisions thereto, which
996 establish, provide for, govern or regulate any of the following:

997          A.     Voting;

998          B.     Assessments, assessment liens or subordination of such liens;

999          C.     Reserves for maintenance, repair and replacement of the common
1000 elements;

1001          D.     Insurance or Fidelity Bonds;

1002          E.     Rights to use of the common elements;

1003          F.     Responsibility for maintenance and repair of the several portions of
1004 the Condominium;

1005          G.     Expansion or contraction of the Condominium regime or the addition,
1006 annexation or withdrawal of property to or from the regime;

1007          H.     Boundaries of any unit;

1008          I.     The interests in the general or limited common elements;

1009          J.     Convertibility of units into common elements or of common elements
1010 into units;

1011          K.     Leasing of units;

fad1cc... 915

37

1012        L.    Imposition of any right of first refusal or similar restriction on

1013 the right of a unit owner to sell, transfer, or otherwise convey his or her unit in the

1014 Condominium;

1015        M.    Establishment of self-management by the Condominium association where

1016 professional management has otherwise been required.

1017        N.    Any provisions included in the Declaration, By-Laws or equivalent

1018 documents of the Condominium which are for the express benefit of holders or insurers

1019 of first mortgages on units in the Condominium.

1020 Section 3.  First Mortgagees to be eligible holders under Section 2 of this Article

1021 must provide the Corporation with the name and address of such holder, insurer or

1022 guarantor, and the unit number of the Condominium.  The information must be timely

1023 received at the Management Office of the Condominium prior to any notice being mailed

1024 or delivered to the unit owners, giving notice of proposed amendments to the

1025 Condominium's By-Laws.

—

1026                                **ARTICLE XVI**

1027           **Rights of Holders of First Mortgages - Generally**

1028 Section 1.- Notice of Action   A holder, insurer or guarantor of a first mortgage, upon

1029 written request to the Owners Association, (such request to state the name and address

1030 of such holder, insurer or guarantor, and the unit number of the Condominium) will be

1031 entitled to timely written notice of:

1032        A.    Any proposed amendment of the Condominium instruments effecting a change in

1033 (i) the boundaries of any unit or the exclusive easement rights appertaining thereto;

1034 (ii) the interests in the general or limited common elements appertaining to any unit

1035 or the liability for common expenses appertaining thereto; (iii) the number of votes in

10501. 916

38

1036 the owners association appertaining to any unit; or (iv) the purposes to which any unit
1037 or the common elements are restricted.

1038    B.    Any proposed termination of the Condominium regime.

1039    C.    Any condemnation loss or any casualty loss which affects a material portion
1040 of the Condominium or which affects any unit on which there is a first mortgage held,
1041 insured or guaranteed by such eligible holder.

1042    D.    Any delinquency in the payment of assessments or charges owed by an owner
1043 of a unit subject to the mortgage of such eligible holder, insurer or guarantor, where
1044 such delinquency has continued for a period of 60 days.

1045    E.    Any lapse, cancellation or material modification of any insurance policy
1046 maintained by the owners association.

1047                                ARTICLE XVII

1048                        TERMINATION OF CONDOMINIUM

1049 Except that which may otherwise be provided for in the Maryland Horizontal Property
1050 Act, the consent of owners of units to which at least 67 percent of the votes in the
1051 owners association are allocated and the approval of the eligible holders of first
1052 mortgages on units to which at least 67 percent of the votes of units subject to a
1053 mortgage appertain, shall be required to terminate the Condominium regime.

1054                                ARTICLE XVIII

1055              CONDEMNATION IN TOTAL OR PARTIAL LOSS OR DESTRUCTION

1056 Each unit owner appoints the owners association as attorney-in-fact to negotiate and/or
1057 pursue any claims or obtain any settlement with any public agency or other entity in
1058 respect to any condemnation, be it total or partial, proceedings that in any way

10501.917

39

1059 involve the Condominium.  The owners association may appoint a trustee to act on behalf
1060 of all unit owners in carrying out these functions in lieu of the owners association.

1061 In the event of a taking or acquisition of part or all of the common elements by a
1062 condemning authority, the award or proceeds of settlement shall be payable to the
1063 owners association, or any Trustee, to be held in trust for unit owners and their first
1064 mortgage holders as their interests may appear.

1065 A reasonable method for dealing with any total or partial loss or destruction of the
1066 Condominium property, and with any total or partial condemnation of such property, must
1067 be provided in the Declaration or other appropriate constituent document of the
1068 Condominium or by applicable law.

1069                                        ARTICLE XIV

1070                      COMPLIANCE - INTERPRETATION - MISCELLANEOUS

1071 **Section 1**.  **Compliance**.  These By-Laws are set forth in compliance with the
1072 requirements of Real Property, Title 11, Section 104, Annotated Code of Maryland.

1073 **Section 2**.  **Conflict**.  These By-Laws are subordinate and subject to all provisions of
1074 the Master Deed and to the provisions of Real Property, Title 11, Section 104 "Rules of
1075 Construction", Annotated Code of Maryland.  All of the terms hereof, except where
1076 clearly repugnant to the context, shall have the same meaning as in the Master Deed or
1077 the aforesaid statute.

1078 **Section 3**.  **Resident Agent**.  The Corporate Attorney, duly appointed by the Board of
1079 Directors, shall be designated as the person authorized to accept service in any action
1080 relating to two or more condominium units or to the common elements as authorized under
1081 Real Property, Title 11-119, Annotated Code of Maryland.

1082 **Section 4**.  **Severability**.  In the event any provision or provisions of these By-Laws
1083 shall be determined top be invalid, void or unenforceable, such determination shall not

10501. 918

40

1084 render invalid, void or unenforceable any other provisions hereof which can be given
1085 effect.

1086 **Section 5.**  **Waiver**.  No restriction, condition, obligation or provision of these By-
1087 Laws shall be deemed to have been abrogated or waived by reason of any failure or
1088 failures to enforce the same.

1089 **Section 6.**   **Captions**.  The captions contained in these By-Laws are for convenience only
1090 and are not a part of these By-Laws and are not intended in any way to limit or enlarge
1091 the terms and provisions of these By-Laws.

1092 **Section 7.**  **Gender, etc**.  Whenever in these By-Laws the context so required, the
1093 singular number shall include the plural and the converse; and the use of any gender
1094 shall be deemed to include all genders.

1095 **Section 8.**   **Rights of Action**.

1096         The owners association and any aggrieved unit owner shall be granted a
1097 right of action against unit owners for failure to comply with the provisions of the
1098 Declaration, By-Laws or equivalent documents, or with decisions of the owners
1099 association which are made pursuant to authority granted the owners association in such
1100 documents.  Unit owners shall have similar rights of action against the owners
1101 association.


## CERTIFICATION

The undersigned President and Secretary of the aforesaid condominium certify that
on September 26, 1995, at a meeting of the unit owners, these Second Amended and
Re-Stated By-Laws were approved by unit owners having the required percentage of the
votes to amend the By-Laws.


IN WITNESS WHEREOF, the said Brookside Park Condominium, Inc., a Maryland
Corporation, by VIRGINIA L. HARICH, President, and CLEO GIANNOPOULOS, Secretary have on
this _1ˢᵗ_ day of _December_, 1995, caused this writing to be executed and
delivered in its name and on its behalf.

10501. 919

41

ATTEST:                                          BROOKSIDE PARK CONDOMINIUM, INC.
                                                 formerly known as Wilson Bridge Condominium,
                                                 Inc. and Brookside Park Council of
                                                 Condominium Co-Owners, Inc.


_Cleo Giannopoulos_                    BY:       _Virginia L. Harich_
CLEO GIANNOPOULOS, SECRETARY                     VIRGINIA L. HARICH, PRESIDENT


STATE OF MARYLAND          )
                           )        ss:
COUNTY OF _Prince Georges_ )


      On this _1st_ day of _December_____, 1995 before me the undersigned officer,
personally appeared CLEO GIANNOPOULOS, known to me (or satisfactorily proven) to be the
person whose name is subscribed to within the instrument and acknowledged that he
executed the same for the purposes therein contained.

                                                 _____
                                                 Notary Public

                                                 STUART S. ROGAL
My commission expires: _1/22/95____              NOTARY PUBLIC STATE OF MARYLAND
                                                 My Commission Expires January 22, 1996


STATE OF MARYLAND          )
                           )        ss:
COUNTY OF _Prince Georges_ )


      On this _1st_ day of _December_____, 1995 before me the undersigned officer,
personally appeared VIRGINIA L. HARICH, known to me (or satisfactorily proven) to be
the person whose name is subscribed to within the instrument and acknowledged that he
executed the same for the purposes therein contained.

                                                 _____
                                                 Notary Public   STUART S. ROGAL
                                                 NOTARY PUBLIC STATE OF MARYLAND
My commission expires: _1/22/95____              My Commission Expires January 22, 1996