IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LESTER LEE,
    Plaintiff Pro Se,

v.                      Case No. 8:24-cv-01205-ABA

BROOKSIDE PARK CONDOMINIUM, INC.,
METROPOLIS (aka MCM, INC.),
RAMMY AZOULAY, and
LAMONT SAVOY,
    Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL

### INTRODUCTION

This motion arises from repeated, serious ethical violations and coordinated litigation misconduct by attorney Anthony D. Dwyer and the law firms Eckert Seamans Cherin & Mellott, LLC and Eccleston and Wolf, P.C., warranting immediate disqualification. Counsel has acted in bad faith, coordinated false testimony, abused the discovery process, and actively undermined the integrity of these proceedings. Dwyer is not merely counsel—he is a witness to multiple events at issue and has engaged in improper ex parte communications, fabricated affidavits, and intimidation of witnesses, all of which make continued representation untenable under Maryland Rules of Professional Conduct.

Further, the need for disqualification is compounded by undisclosed coordination between counsel and third parties, including agency personnel. Deposition testimony confirms that DPIE Inspector McLaurin was not assigned to investigate Plaintiff's complaint but was instead dispatched at the direction of his supervisor, Ronald Waters, who appeared at the deposition without explanation. McLaurin testified that the case had originally been assigned to a different inspector, yet he was instructed by Mr. Waters to respond instead—an instruction that coincided with ongoing interference by Brookside Park Condominium's president, Robert Haddad. This circumstantial chain of conduct suggests improper collaboration between Defendants, their counsel, and government personnel to circumvent formal process, retaliate against Plaintiff, and fabricate enforcement actions in support of the Defendants' narrative. These actions align with the August 2024 email from Robert Haddad in which he vowed to "take matters into our own hands" after Plaintiff filed this lawsuit.

Additionally, the retaliation was further evidenced by the manner in which the inspection was orchestrated. Plaintiff originally contacted DPIE in October 2024 strictly because he had no heat during hypothermia season and was suffering from carbon monoxide poisoning while using a stove to heat his apartment. The unit was ultimately condemned—not because of the issue Plaintiff reported, but as a result of an overreach by McLaurin, who was neither HVAC-certified nor authorized to inspect such systems. Despite testifying that Plaintiff's complaint was about the HVAC system, McLaurin acknowledged under oath that HVAC was not his area of expertise. The record indicates that he was instead focused on evaluating the condition of unrelated items, including

furniture, toiletries, and flooring—all outside the scope of a legitimate housing code inspection.

When asked in his deposition whether the unit had been re-inspected, McLaurin testified that he did not know. However, Plaintiff received a 311 system update on January 22, 2025, indicating that the inspection case had been marked as resolved and passed—even though no repairs had been completed. Compounding this, Plaintiff's earlier 2023 complaint—filed after the death of his service dog due to extreme heat—was later removed from the system and labeled "duplicative." This suggests a coordinated attempt to sanitize the record after Plaintiff had been forced out of the unit, undermining Plaintiff's credibility and concealing agency missteps.

The pattern of concealment also includes the installation of a double-keyed lock that trapped Plaintiff inside his unit, necessitating a 911 call and emergency police response. The retaliatory nature of Defendants' conduct, supported by Haddad's August 2024 email and Dwyer's repeated involvement, represents a campaign of coordinated harassment.

Plaintiff further asserts that this campaign began as retaliation for his whistleblower complaint regarding the outdated Federal Pacific breaker boxes still powering common-area systems in the condominium complex. Plaintiff's prior electrical shock and complaint prompted insurance-mandated inspections and replacements—many of which were conducted fraudulently or incompletely by then-property manager Stuart Rogel, who was subsequently represented by Anthony Dwyer. Despite visual inspections,

key infrastructure in the attic and basement was never updated. DPIE has refused to inspect the remaining hazardous installations, despite Plaintiff's repeated complaints.

Finally, Plaintiff draws the Court's attention to the deceptive nature of Defendants' lease addendum, which functions as a de facto power of attorney. This clause is used to bypass court oversight and justify unauthorized entry into tenants' units. Plaintiff believes the reason Defendants pressured tenants to sign such an addendum was to avoid the very barriers that otherwise require lawful process. In Plaintiff's case, refusal to comply led to elaborate pretexts—including the weaponization of agency inspectors—to invade Plaintiff's privacy and fabricate violations.

As further detailed in the accompanying Declaration, this record establishes compelling grounds for immediate disqualification.

### I. CONFLICTS OF INTEREST AND MULTIPLE REPRESENTATION

Under Maryland Rule of Professional Conduct 1.7, a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. Rule 1.9(a) bars representation adverse to a former client in the same or a substantially related matter. Here, Anthony D. Dwyer previously represented Stuart Rogel in litigation involving Brookside Park Condominium. Now, Dwyer represents the Condominium itself, creating a non-waivable conflict under Rule 1.9.

Additionally, by jointly representing Brookside Park Condominium, Metropolis (MCM), and Rammy Azoulay, Dwyer has locked all Defendants into a single narrative, depriving them of independent legal judgment and the ability to present conflicting or

corrective testimony. This is a violation of Rule 1.7(a)(2), as the representation is materially limited by the attorney's responsibility to each client.

## II. MISUSE OF DISCOVERY MATERIALS AND RULE 26(g) VIOLATION

Federal Rule of Civil Procedure 26(g)(1) requires that every discovery response be signed by the attorney or party certifying that, to the best of their knowledge, it is complete and correct. Despite this, Dwyer submitted and relied on interrogatory responses in a dispositive motion that were never signed, finalized, or authorized for release by Plaintiff. This conduct violates Rule 26(g), misleads the Court, and unfairly prejudices Plaintiff.

## III. COORDINATED DISCOVERY ABUSE AND RULE 33 VIOLATION

Federal Rule of Civil Procedure 33(a)(1) limits each party to 25 interrogatories unless leave of court is granted. Here, Dwyer coordinated across three defendants to issue well over the 25-question limit in total, in an effort to overwhelm and harass Plaintiff—a disabled pro se litigant—in retaliation for asserting his federal housing rights. This conduct supports sanctions and disqualification.

## IV. ETHICAL VIOLATIONS AND LAWYER-AS-WITNESS RULE (RULE 3.7)

Maryland Rule 3.7(a) prohibits a lawyer from acting as an advocate at a trial in which the lawyer is likely to be a necessary witness. Dwyer's conduct in coordinating surveillance, meeting with non-party witness Latrinda Hicks, and handling disputed discovery places him at the center of factual matters in dispute. Plaintiff intends to call Dwyer and potentially his supervisors as witnesses, triggering Rule 3.7 and requiring disqualification.

## V. REQUEST FOR JUDICIAL REFERRAL UNDER SUPERVISORY AUTHORITY

The Court has inherent authority to refer attorneys for investigation where conduct falls below the ethical standards of practice. Given the pattern of misrepresentation, surveillance, retaliatory discovery, and conflict concealment, Plaintiff respectfully requests that the Court refer Dwyer and any associated counsel or supervising attorneys for disciplinary review.

## VI. MISAPPLICATION OF SCOGGINS CASE AND MISREPRESENTATION OF CONTROLLING AUTHORITY

Defendants, through counsel Anthony D. Dwyer, have relied upon or cited Scoggins v. Lee's Crossing Homeowners Association, 718 F.3d 262 (4th Cir. 2013) in a misleading manner, falsely suggesting that the case supports denial of Plaintiff's FHA/ADA claims related to service animals and accommodations.

In truth, Scoggins reinforces Plaintiff's position. The Fourth Circuit in Scoggins:
- Held that HOA denial of a reasonable accommodation involving a service animal was potentially unlawful under federal disability law;
- Affirmed that the accommodation process must be individualized and meaningful;
- Rejected awarding attorneys' fees to the HOA, signaling strong public policy support for disability rights even when plaintiffs did not prevail on all claims.

Dwyer's misuse of Scoggins as precedent to justify Defendants' rigid enforcement of rules against Plaintiff's federally protected service dogs constitutes a violation of Rule 3.3(a)(1) (knowingly false statements of law) and further supports judicial sanction or referral.

Moreover, the procedural posture in Scoggins—focused on ripeness and the opportunity for the accommodation process to play out—directly undermines Dwyer's attempts to dismiss Plaintiff's claims on purely technical or preemptive grounds.

## VIII. REQUEST FOR FORMAL REFERRAL TO DISCIPLINARY AUTHORITY

Given the totality of misconduct—including witness intimidation, discovery abuse, ethical conflicts, misrepresentation of legal authority, and coordination with non-party witnesses—Plaintiff respectfully requests that this Court refer Mr. Dwyer's conduct for formal investigation. Referral is warranted either to the Maryland Attorney Grievance Commission or under this Court's own supervisory authority. This referral should include potential violations of Maryland Rules of Professional Conduct 1.7 (conflict of interest), 1.9 (former client), 3.3 (candor toward the tribunal), 3.7 (lawyer as witness), and 8.4 (professional misconduct).

## IV. ETHICAL MISCONDUCT AND FABRICATED EVIDENCE

Plaintiff submits that the affidavit signed by Robert Haddad, dated March 12, 2025, was fabricated and submitted after Plaintiff's deposition concluded on February 28, 2025. The affidavit's claims align directly with deposition questions, suggesting it was crafted to fill gaps left by the testimony of witness McLaurin, who did not confirm Defendants' narrative. Attorney Anthony D. Dwyer, who coordinated the discovery and deposition proceedings, failed to correct the record despite knowledge of the affidavit's falsehoods. This conduct raises serious ethical concerns under Maryland Attorneys' Rules of Professional Conduct 3.3 (Candor Toward the Tribunal) and Rule 8.4 (Misconduct), and justifies disqualification. Plaintiff's declaration attesting to these facts is included in the record and supports this Court's authority to act.

Respectfully submitted,

Lester Aubrey Lee, Jr.
Plaintiff Pro Se
lee.documents@gmail.com

# ADDENDUM A
# SURVEILLANCE AND PRIVACY VIOLATIONS

Defendants, acting through the condominium association and its counsel, installed and operated AI-powered surveillance systems—including license plate reader (LPR) cameras and facial recognition-enabled devices—without providing any notice, consent, or disclosure to Plaintiff or other residents. This conduct implicates numerous violations of Maryland and federal law:

### 1. Violation of Maryland Wiretap Act (Md. Code, Cts. & Jud. Proc. § 10-402)

It is unlawful under Maryland law to record private audio communications without consent from at least one party. To the extent any of the surveillance devices included audio recording capability, or were installed in locations where residents had a reasonable expectation of privacy—such as directly outside a residential unit—such recordings may constitute a criminal wiretap violation under Maryland law.

### 2. Violation of Maryland Personal Information Protection Act (Md. Code, Com. Law § 14-3501 et seq.)

To the extent Defendants collected, stored, or transmitted personally identifiable information, such as:

- License plate numbers
- Facial biometric data
- Metadata tracking entry/exit times tied to individual units

they triggered obligations under the Maryland Personal Information Protection Act

(PIPA), including the duty to safeguard such data and notify residents in the event of unauthorized access or use. No such notice has been provided.

### 3. Violation of Maryland Consumer Protection Act (Md. Code, Com. Law § 13-301 et seq.)

The installation of AI surveillance systems without transparency, notification, or consent may constitute a deceptive and unfair trade practice, particularly when used to monitor, target, or chill the rights of a disabled resident. The concealment of such invasive technology raises substantial issues of fraudulent concealment and breach of duty under state law.

### 4. Violation of the Fair Housing Act and ADA (42 U.S.C. § 3617)

To the extent these systems were installed, coordinated, or used:

- To track Plaintiff's movements,
- To document alleged lease violations tied to disability-related conduct (e.g., service animal usage), or
- In retaliation for the assertion of ADA/FHA rights,

Defendants violated 42 U.S.C. § 3617, which prohibits any person from coercing, intimidating, threatening, or interfering with any individual on account of their exercise of rights under the Fair Housing Act. Surveillance that targets a disabled individual or is used as a tool of retaliation, interference, or harassment is per se unlawful under federal civil rights law.

**5. Breach of Fiduciary Duty Under the Maryland Condominium Act (Md. Code, Real Prop. § 11-109**

The condominium association owes a fiduciary duty to act transparently and in the best interest of unit owners and residents. Installing surveillance systems that collect sensitive biometric and location data—without unit owner vote, resident notification, or policy disclosure—constitutes a breach of fiduciary duty and a violation of state statutory requirements governing community governance.

Failure of Defendants and Counsel to Act in Good Faith Regarding Surveillance Defendants Robert Haddad and Attorney Anthony D. Dwyer cannot credibly claim to have operated in good faith regarding surveillance practices when the record already reflects multiple unlawful, targeted, and retaliatory surveillance incidents. Specifically:

- A peephole camera was installed directly across from Plaintiff's unit, pointed at Plaintiff's front door. Plaintiff was told this camera was "legal," despite its clear violation of privacy rights and state law.

- A Ring doorbell camera was installed by or under the authorization of Board President Robert Haddad, and was used specifically to track Plaintiff's movements, including the comings and goings of his service dog.

- Plaintiff has produced evidence that the Ring camera was coordinated between Latresa Hicks and Robert Haddad, and that attorney Anthony D. Dwyer was included on communications authorizing or facilitating this surveillance.

If the Court or opposing counsel asserts that the new AI-powered surveillance

(e.g., facial recognition or license plate readers) will be used responsibly, Plaintiff respectfully points to these prior abuses as conclusive evidence to the contrary.

Such conduct speaks not only to a pattern of retaliation and abuse, but also to a total lack of credibility, ethical restraint, or lawful justification by both counsel and the Board. These actors have repeatedly used surveillance technology not for safety, but to harass and intimidate a disabled resident in violation of both state privacy laws and the Fair Housing Act.

Respectfully submitted,

Lester Aubrey Lee, Jr.
Plaintiff Pro Se
lee.documents@gmail.com