IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LESTER LEE,
    *Plaintiff,*

v.                                              Civil Case No. 8:24-cv-01205-ABA

BROOKSIDE PARK CONDOMINIUM, INC.,
METROPOLIS (aka MCM, INC.),
RAMMY AZOULAY, and
LAMONT SAVOY,
    *Defendants.*

## REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE ABUSIVE DISCOVERY RESPONSES AND INTERROGATORIES

**Plaintiff Lester Lee,** proceeding pro se, respectfully submits this Reply in further support of his Motion to Strike Abusive Discovery Responses and Interrogatories, and in response to Defendants' Opposition (ECF No. 65). For the reasons set forth below, Defendants' Opposition fails to rebut the key legal, procedural, and ethical defects raised in Plaintiff's original motion.

## **I. DEFENDANTS FAILED TO REBUT THE RULE 33 VIOLATION**

Defendants sidestep the crux of Plaintiff's argument: that jointly represented or coordinated parties may not circumvent Rule 33(a)(1) by issuing discovery in aggregate excess of 25 interrogatories. Plaintiff cited directly controlling authority on this point (*Safeco of Am. v. Rawstrom*, 183 F.R.D. 668 (C.D. Cal. 1998)), which Defendants ignore.

Instead, Defendants argue Plaintiff "waived" his objections by allowing former counsel to serve unsigned draft responses. This argument is both factually and legally baseless. The May 14 draft responses were:

- Not signed by Plaintiff;
- Not authorized for submission;
- Expressly objected to in Plaintiff's Declaration (ECF No. 59-3);
- Misused in bad faith by Defense in subsequent filings.

Serving unsigned, unexecuted drafts without consent does not waive objections to abusive discovery.

Furthermore, upon being granted leave to proceed pro se and having had time to review the interrogatories, motions, and related exhibits, Plaintiff identified numerous ethical violations, mischaracterizations, and discrepancies that were not reflected in the initial draft responses. Plaintiff was not made aware of the Rule 33(a)(1) limit of 25 interrogatories until assuming pro se control of the case. Had this limitation been known earlier, Plaintiff would have objected and requested clarification from the Court regarding which interrogatories should be answered. The notion that a seasoned attorney would not be aware of this well-established rule strains

credibility. Unfortunately, Plaintiff's prior attorney failed to assert this rule or protect Plaintiff's rights.

## II. DEFENSE IGNORES THE UNIFIED REPRESENTATION ETHICAL CONFLICT

Defendants' Opposition does not address Plaintiff's argument that defense counsel's joint representation of three co-defendants has created an ethical and procedural conflict.

By asserting a single, undifferentiated defense narrative across Brookside Park Condominium, Metropolis, and Rammy Azoulay, counsel Anthony D. Dwyer denies each client an individual voice and potentially suppresses divergent facts. This violates basic ethical duties under ABA Model Rule 1.7 and Maryland Rule 19-301.7.

This silence is telling. Where potential intra-client conflicts exist, counsel must obtain informed written consent or withdraw. No such disclosure has been made.

Dwyer is not a novice attorney. According to filings, he has decades of experience as a litigator. The errors and ethical violations at issue here are not the product of inexperience or oversight. Rather, they reflect deliberate strategic decisions made by a seasoned attorney who should have known better. Courts have held that ethical violations committed by experienced counsel are especially troubling, as they implicate intentional misconduct rather than excusable neglect. See *In re Snyder*, 472 U.S. 634, 645 (1985).

Moreover, Defendants have not acted in good faith. The affidavit submitted by Robert Haddad, signed after Plaintiff's and David McLaurin's depositions, was clearly timed to control

or rebut Plaintiff's sworn testimony and to fill evidentiary gaps left by Inspector McLaurin's limited and contradictory deposition. This post-deposition affidavit, submitted by Attorney Dwyer, is fundamentally flawed. It relies not on firsthand knowledge but on speculative and secondhand information, violating the foundational requirement that affidavits must be based on personal knowledge, not hearsay. See *Patterson v. County of Oneida, NY*, 375 F.3d 206, 219 (2d Cir. 2004); Fed. R. Civ. P. 56(c)(4).

### III. DEFENSE FAILS TO REBUT COERCIVE AND DISCRIMINATORY DEPOSITION CONDUCT

During Plaintiff's deposition, defense counsel berated prior counsel with the comment: "You have nerve to object when you haven't even submitted any of the requested documents or the discovery packet."

Defendants' sanitized summary omits this language and fails to address its coercive impact on Plaintiff, a disabled pro se litigant.

Furthermore, when Plaintiff directly asked Dwyer whether his prior representation of Stuart Rogal—who had adverse interests to Brookside—constituted a conflict of interest, Dwyer refused to answer, deflecting with "Let me ask the questions." This violates Maryland Rule 19-301.9 and standard conflict disclosure obligations.

Additionally, defense counsel pursued a line of questioning that was explicitly discriminatory. On page 87 of the transcript, counsel asked:

"Why did you feel you needed a pit bull as a service dog?"

This question was objected to as improper by Plaintiff's former attorney and rightfully so—it is biased, discriminatory, and irrelevant under the ADA. The question presumes that certain breeds are inherently unacceptable, violating principles of equal treatment under federal law. See *U.S. Dep't of Justice, ADA Requirements: Service Animals*.

Rather than accept the objection, Dwyer debated it, saying:

"You have no basis to instruct him not to answer."

This adversarial and dismissive attitude reveals a disregard for ADA protections and an intent to provoke anxiety and confusion.

### IV. DISCOVERY WAS SERVED DURING PROCEDURAL LIMBO

Defendants ignore that the abusive interrogatories were served while Plaintiff's Motion to Proceed Pro Se and Motion to Disqualify Counsel were both pending. Defense proceeded with discovery knowing Plaintiff was unrepresented and disadvantaged.

This was not mere procedural oversight—it was a strategic exploitation of procedural limbo. See *Chambers v. NASCO*, 501 U.S. 32 (1991).

### V. SCROGGINS AND SCALES CASES SUPPORT SANCTIONS

Defendants misrepresented the applicability of *Scroggins v. Lee's Crossing HOA*, 718 F.3d 262 (4th Cir. 2013), falsely suggesting it favors the defense. In fact, *Scroggins* affirms Plaintiff's

position: the Fourth Circuit upheld that denial of a service-animal-related accommodation can violate federal law.

Likewise, in *Scales v. HOA* (D. Nev. 2019), a homeowner was awarded $635,000 in damages after her HOA harassed her for using a service dog in the clubhouse. This case mirrors the present facts and highlights why the Court must scrutinize defense behavior.

## VI. DEFENDANTS FAILED TO RESPOND TO PLAINTIFF'S CLAIMS

As shown in Exhibit I, Defendants entirely ignored many of Plaintiff's central allegations, including:

- Improper affidavit from Robert Haddad;
- Improper presence of Ronald Waters at McLaurin's deposition;
- Retaliatory nature of discovery;
- Failure to address ADA and FHA violations;
- Ethical implications of ex parte communications.

These omissions speak volumes. They reflect a defense strategy of stonewalling and deflection rather than honest engagement with Plaintiff's claims.

## VII. FINAL NOTE ON COUNSEL'S INTENTIONAL MISCONDUCT

Mr. Dwyer is a seasoned litigator. There is no plausible explanation for the repeated ethical lapses in this case other than deliberate misconduct. A lawyer of his experience cannot claim ignorance:

- He knowingly met with Latresa Hicks, the author of initial complaints and a potential witness, outside the presence of counsel or notice—violating ethical boundaries and prejudicing the Plaintiff;
- He submitted an affidavit from Robert Haddad that plainly relies on hearsay—violating the requirement that affidavits be based on personal knowledge under Fed. R. Civ. P. 56(c)(4);
- He received and did not disavow or report an email describing surveillance activities in potential violation of the Maryland Wiretap Act, despite being copied on it;
- He permitted Ronald Waters, a key DPIE official, to attend the deposition of McLaurin even though Waters is himself a potential witness in this case, irreparably tainting both McLaurin's testimony and Plaintiff's ability to examine Waters later without prior contamination.

There is no way Mr. Dwyer was unaware of the impropriety of these actions. These are not honest mistakes or marginal calls—they are part of a deliberate litigation strategy designed to overwhelm, silence, and discredit the Plaintiff rather than confront the facts or the law.

As the saying goes:

"If you don't have the facts, argue the law. If you don't have the law, argue the facts. If you have neither, attack the credibility."

This appears to be the strategy at play—an effort not to litigate the claims, but to destroy the Plaintiff's credibility through harassment, baiting, and procedural exploitation. It is precisely this behavior that the Rules of Professional Conduct, the ADA, and the FHA were designed to prevent.

VIII. PRAYER FOR RELIEF

For the foregoing reasons, and those set forth in Plaintiff's Motion, Memorandum, Declaration, and Exhibits A through I, Plaintiff respectfully requests that this Court:

1. Strike all interrogatories and discovery responses in violation of Rule 33;
2. Bar Defendants from issuing further interrogatories absent Court approval;
3. Sanction Defendants or their counsel for discovery abuse;
4. Refer counsel Anthony D. Dwyer for ethics review concerning multi-client conflict, ADA violations, and coercive deposition conduct;
5. Grant any further relief this Court deems just.

Respectfully submitted,

**Lester Lee**
Plaintiff Pro Se
Email: llee.documents@gmail.com
Date: June 20, 2025