IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

LESTER LEE
      Plaintiff, Pro Se


v.                          Case No. 8:24-cv-01205-ABA


BROOKSIDE PARK CONDOMINIUM, INC.,
METROPOLIS (MCM, INC.),
RAMMY AZOULAY,
LAMONT SAVOY
      Defendants


## PLAINTIFF'S SUPPLEMENTAL REBUTTAL IN FURTHER SUPPORT OF MOTION TO DISQUALIFY COUNSEL


### I. INTRODUCTION

Plaintiff Lester Lee respectfully submits this Supplemental Rebuttal in Further Support of his Motion to Disqualify Counsel (ECF 58-1), in response to Defendants' Opposition (ECF 66). This filing is necessary to correct factual misrepresentations, highlight unrebutted ethical violations, and restore integrity to these proceedings. Defense counsel Anthony D. Dwyer and his affiliated law firms have crossed boundaries that warrant disqualification under the Maryland Attorneys' Rules of Professional Conduct (MARPC).

The record now includes multiple exhibits confirming direct surveillance coordination, improper witness contact, conflict-ridden representation, and strategic concealment of material facts. Mr. Dwyer's defense is not grounded in law or fact, but rather in coordinated silence and procedural overreach designed to exhaust and intimidate a disabled pro se litigant.

## II. PRIOR REPRESENTATION AND CONFLICT OF INTEREST

Mr. Dwyer previously represented Brookside's former property manager, Stuart Rogel, in Brookside Park Condominium v. Rogel, Case No. CAL21-04545. That case settled on March 5, 2024, less than two months before this action commenced. Mr. Dwyer had access to confidential board communications, internal grievances, and enforcement strategies now directly implicated in this matter (**Exhibit 62-4**).

Despite this, Mr. Dwyer now represents Brookside, Metropolis, and Rammy Azoulay in a joint defense. These parties occupy legally distinct roles and possess differing exposure. Yet Mr. Dwyer submitted identical interrogatories on behalf of all three defendants, showing no individualized advocacy. No conflict waivers have been produced. No affidavits or declarations have been submitted by Metropolis, Azoulay, or Brookside to validate the joint strategy (**Exhibit 62-8**).

The only sworn opposition came from Robert Haddad, who is not a party to the lawsuit and who is himself implicated in retaliatory surveillance (**Exhibit 5**). Mr. Dwyer's refusal to address these conflicts violates MARPC Rules 1.7 and 1.9.

## III. SURVEILLANCE COORDINATION AND RETALIATION

Surveillance of Plaintiff was not speculative. It was explicitly authorized by Brookside President Robert Haddad in a May 24, 2024 email to Mr. Dwyer, copying Latresa Hicks and other board members. Haddad wrote:

"We are proceeding with the purchase and installation of a doorbell video camera at her unit, so we will be collecting video evidence." (**Exhibit 5**)

This email followed a meeting between Hicks and Dwyer. Haddad referred to Plaintiff as "an absolute terror" and declared the FHA lawsuit "a sham," further stating: "We need to vigorously defend and file counterclaims." Dwyer never challenged this language, nor did he advise his clients against illegal surveillance.

Photographic evidence confirms the Ring camera and peephole camera were installed to surveil Plaintiff's front door and interior space (**Exhibits 6 and 7**). AI-powered license plate readers and additional cameras followed shortly thereafter (**Exhibit 62-7**). These devices were concealed, unregulated, and aimed directly at Plaintiff's unit and parking area.

Plaintiff's requests for disclosure about these devices have gone unanswered. No deposition or affidavit from Latresa Hicks has been offered, despite her central role. Mr. Dwyer's admitted contact with her, without disclosure or supervision, violates MARPC Rules 3.7 and 8.4(d).

## IV. ABUSIVE DISCOVERY AND LITIGATION TACTICS

After Plaintiff proceeded pro se, Defendants served over 80 interrogatories using cut-and-paste language, contrary to Rule 33(a)(1)'s 25-interrogatory limit. These interrogatories were designed to exhaust Plaintiff's capacity, provoke default, and avoid defending the merits (**Exhibit 62-8**).

Defendants have falsely portrayed Plaintiff's objections as incomplete. In fact, Plaintiff served full responses and signed a draft under protest, withholding only until the Court rules on pending discovery abuse and disqualification motions. This abuse of discovery is compounded by Mr. Dwyer's aggressive behavior during Plaintiff's deposition, including his outburst at former counsel Richard Rosenthal for asserting valid objections (**Exhibit 62-9**).

## V. MANIPULATION OF EVIDENCE AND TESTIMONY

Rather than submit testimony from any of the actual decision-makers—Metropolis, Azoulay, or board officers—Defendants offered only one carefully selected deposition from a DPIE inspector with no authority over HVAC enforcement. This witness admitted he appeared under his supervisor's instruction, not Plaintiff's complaint. That supervisor, who was physically present during the deposition, has been previously implicated in retaliatory inspections (**Exhibit 62-6**).

This carefully curated record of non-testimony is a hallmark of strategic obfuscation. Defendants cannot rebut the allegations because to do so would confirm them. Instead, Mr. Dwyer uses his own unsworn narrative as the sole voice for three defendants and several non-parties. That is both unethical and disqualifying.

## VI. FEDERAL PREEMPTION AND DISABILITY RIGHTS

Defendants and Mr. Dwyer continue to cite Prince George's County breed ordinances as justification for denying Plaintiff's service dog accommodations. These arguments are baseless.

Federal law is clear:

"Municipalities that prohibit specific breeds of dogs must make an exception for a service animal of a prohibited breed." (DOJ ADA FAQ, https://www.ada.gov/resources/service-animals-2010/#faq, Q24)

"A public entity shall not impose breed restrictions on a service animal." (28 C.F.R. § 35.136(f))

"Discrimination includes a refusal to make reasonable accommodations..." (42 U.S.C. § 3604(f)(3)(B))

Mr. Dwyer's attempt to elevate local codes above federal disability law is not just incorrect—it is professionally irresponsible.

## VII. RETALIATORY SURVEILLANCE COORDINATED THROUGHCOUNSEL

On May 24, 2024, Robert Haddad sent an email directly to attorney Anthony D. Dwyer, copying attorney Charles Gormley, Latresa Hicks, Rammy Azoulay, and several Brookside board members. The subject: coordinated surveillance of Plaintiff using concealed monitoring devices. Haddad stated:

"We are proceeding with the purchase and installation of a doorbell video camera  at her unit, so we will be collecting video evidence." (Exhibit 5)

This camera was aimed at Plaintiff's door and living space. A separate peephole camera had already been installed. These devices were authorized after a private meeting between Hicks and the defense attorneys, including Dwyer. Neither Dwyer nor Gormley objected, advised against the plan, or reported the surveillance to the Court.

No affidavit, deposition, or testimony has been submitted from Hicks or Gormley. Defense counsel has not denied the meeting or the chain of coordination.

## VIII. SANCTIONS AND SUPERVISORY LIABILITY

Dwyer's behavior across discovery, deposition, affidavit use, and surveillance coordination violates:

- Rule 26(g) – Discovery abuse

- Rule 56(c)(4) – Inadmissible affidavits

- MARPC 1.7, 1.9, 3.3, 3.4, 3.7, and 8.4

Under MARPC 5.1 and 5.3, senior attorneys such as Henry Carkhuff and Charles Gormley bear direct supervisory responsibility. Both were either copied on or present for misconduct involving witness coaching, improper surveillance, or coordinated intimidation.

Gormley, as a recipient of Exhibit 5 and an officer of the court, had an affirmative duty to intervene when a non-party witness (Latresa Hicks) was authorized to install a camera targeting Plaintiff's front door. His silence and failure to object compound the violations of primary counsel.

Additionally, emails show that Dwyer participated in a campaign with Robert Haddad to pressure Plaintiff's new landlord into signing an unconstitutional lease

addendum functioning as a de facto power of attorney, authorizing retaliatory eviction

and surveillance (Exhibit 62-5).


This pattern of retaliatory coordination—ignored by supervising attorneys—

demands not only disqualification but judicial referral for further disciplinary review.


## IX.  RELIEF REQUESTED

Plaintiff respectfully requests:

1. Disqualification of Anthony D. Dwyer and his affiliated firms under MARPC 1.7, 1.9, 3.3, 3.4, 3.7, and 8.4(d)

2. Referral to bar authorities for investigation of ethical violations

3. Sanctions under Rule 26(g) for coordinated discovery abuse

4. Protective Order barring future surveillance or harassing discovery

5. Injunction against any further AI surveillance, retaliatory monitoring, or witness coordination

6. Preservation and Disclosure of all surveillance records and metadata

7. Costs Awarded to the Check-6 Foundation in lieu of personal damages (Exhibit 12)

8. Formal Recognition of this Rebuttal as part of the record

9. Further Relief as the Court deems appropriate

Plaintiff asks this Court not only to restore balance in this case, but to affirm that civil rights, once invoked, must be protected—not punished. Mr. Dwyer's representation strategy has undermined the integrity of these proceedings. It must not be permitted to continue.

Respectfully submitted,

Lester Lee
Plaintiff, Pro Se
535 Wilson Bridge Drive, B1
Oxon Hill, MD 20745
LLEE.DOCUMENTS@gmail.com
Date: July 8, 2025